**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourt.gov**

IN RE:

SIXTY ONE SIXTY, LLC                               CASE NO.: 17-23573-LMI
                                                   Chapter 11

       Debtor.

_____/

*EMERGENCY* MOTION BY SCHECHER GROUP, INC. TO (I) DISMISS CHAPTER 11
BANKRUPTCY CASE FOR "BAD FAITH" FILING PURSUANT TO 11 U.S.C. §1112(b)
AND/OR, ALTERNATIVELY (II) FOR RELIEF FROM THE AUTOMATIC STAY
"FOR CAUSE" PURSUANT TO 11 U.S.C. §362(d); AND (III) FOR SANCTIONS
<u>PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011</u>

<u>(Emergency Relief and Hearing Requested)</u>

The Movant, Schecher Group, Inc. seeks relief, on emergency basis,
dismissing the Chapter 11 bankruptcy filed by the Debtor, Sixty One Sixty,
LLC (the "Debtor") and/or, alternatively, granting relief from the automatic
stay on the grounds that, among other things, the Petition was filed in "bad
faith" to hinder, delay and defraud creditors and abuse the bankruptcy
process in connection with another Chapter 11 case currently pending before
the Honorable Robert A. Mark in the matter *In re Sixty Sixty Condominium
Association, Inc.* (the "6060 Bankruptcy Case").[1] Critically, the filing of the
Petition on November 9, 2017 (the "Petition Date") was not intended for
legitimate reorganizational purposes, but was strategically timed to delay,
impede and frustrate the legitimate efforts of the Schecher Group to proceed
with trials scheduled for <u>November 14 and 15, 2017</u> in the Miami-Dade
County Circuit Court, to foreclosure upon a group of Residential Units that
were fraudulently transferred to the Debtor by its members (the
"Foreclosures"). Importantly, the Debtor is not nor can be a party to the
Foreclosures and any rights it may have acquired in the Residential Units are
not protected from the automatic stay. Further, the filing of the Petition and
Adversary Proceeding[2] on the eve of trial seeking a temporary restraining
order to enjoin the Schecher Group from continuing to prosecute the
Foreclosures, commenced over a year before the Petition Date, was
calculated to circumvent several orders entered in the 6060 Bankruptcy Case
wherein the Bankruptcy Court expressly declined to extend the automatic
stay to the Foreclosures. These dilatory bankruptcy and litigation tactics
being employed by the Debtor, its members and principals, are causing

---

[1] *In re Sixty Sixty Condominium Association, Inc.*, Case No. 16-26187-RAM.
[2] *Sixty One Sixty, LLC, Plaintiff v. Schecher Group, Inc., Defendant,* Adversary Case No. 17-01438-LMI.

**significant financial injury to the Movant and has undermined the integrity of the Bankruptcy Court.**

**SCHECHER GROUP, INC.** ("<u>Movant</u>" or "<u>Schecher Group</u>"), by and through counsel, and pursuant to 11 U.S.C. 11 U.S.C. § 305(a)(1), §1112(b)(1) and §362, Federal Rules of Bankruptcy Procedure 1017, 2002, 9011 and 9014, and Local Rules 9013-1 and 9075-1, files this *Emergency* Motion By Schecher Group, Inc. To (I) Dismiss Chapter 11 Bankruptcy Case For "Bad Faith" Filing Pursuant To 11 U.S.C. §1112(b) (the "<u>Motion to Dismiss</u>") And/Or, Alternatively (II) For Relief From The Automatic Stay "For Cause" Pursuant To 11 U.S.C. §362(d) (the "<u>Stay Relief Motion</u>"), And (III) For Sanctions Pursuant To Federal Rule Of Bankruptcy Procedure 9011 (the "<u>Motion for Sanctions</u>") and respectfully requests that the Court enter an order granting the Motion to Dismiss, on an emergency basis, dismissing the above-referenced Chapter 11 case for cause as a "bad faith" filing for the reasons outlined below. Further, in an abundance of caution, the Movant has filed the Stay Relief Motion to the extent that the automatic stay is applicable to protect the interest, if any, of the Debtor in the Residential Units in connection with the Foreclosures. In support of the Motion to Dismiss and Stay Relief Motion (the "<u>Emergency Motions</u>"), the Schecher Group states, as follows:

## I.    <u>INTRODUCTION.</u>

This is a "bad faith" Chapter 11 bankruptcy case (the "<u>SOS Bankruptcy Case</u>") in search of an honest debtor that simply doesn't exist when considering the unusual circumstances surrounding the filing of the Petition to purposefully forestall the Foreclosures on the eve of trial. The facts of this bankruptcy reveal that the Debtor, *formed just seven (7) days prior to the Petition Date*,  is nothing more than a shell corporation with no legitimate business operations whatsoever which, admittedly, has been utilized to effectuate a series of actual intent fraudulent transfers in a desperate attempt to shield the fee simple ownership interests of its members in the

2

subject Residential Units within a hotel-condominium property located at 6060 Indian Creek Drive, Miami Beach, Florida (the "6060 Building"). Through the actions of its Manager and members, the Debtor suffers from the "*new debtor syndrome*" which provides additional cause for granting stay relief and ultimately dismissal of the SOS Bankruptcy Case. *First American Bank of Georgia v. Coastal Nursing Center, Inc*., 164 B.R. 788, 796 (Bankr. S.D. Ga. 1993).

The 6060 Building is comprised of eighty-seven (87) units consisting of (a) eighty-two (82) "Residential Units" owned by the Residential Unit Owners (the "RUOs"); (b) four (4) "Commercial Units" (the "CUO") owned by the chapter 11 debtor in the 6060 Bankruptcy Case known as the  Sixty Sixty Condominium Association, Inc. (the "6060 Debtor"), a non-profit condominium association, along with one Residential Unit (RU#505); and (c) one non-residential unit designated as the "Hotel Unit" owned by the Schecher Group (the "HUO"), that encompasses the "Shared Components"[3] of the 6060 Building defined within the Declaration of Sixty Sixty Condominium (the "Declaration"). Further, under the Declaration, both the Schecher Group and 6060 have the right and authority to impose monthly assessments against each other and the RUOs. For the past several years, however, the 6060 Debtor and RUOs have engaged in a strike over the payment of Shared Costs[4] assessed by the HUO resulting in the Schecher Group commencing state court foreclosures actions to enforce its lien rights against the RUOs (the "Schecher Liens").

Undoubtedly, the events leading up to the filing of the Petition are in reaction to various rulings by the Bankruptcy Court in the 6060 Bankruptcy Case, consistently refusing to extend

---

[3] Effectively, the Shared Components consists of all physical structures and workings (*i.e,* walls, hallways, roof, parking lot, pool, decks, electrical, utilities and other apparatuses) of the 6060 Building.

[4] Pursuant to Sec. 12 of the Declaration, the HUO budgets and assesses Unit owners for the "repair, replacement, improvement, maintenance, management, operation, ad valorem tax obligations and insurance of the Shared Components" referred to as "Shared Costs", which are reflected in the Unit Ledgers for each Unit owner.

the automatic stay to the Foreclosures, and pending adversary case between the Schecher Group and 6060 Debtor or the "Association".  Significantly, on November 1, 2017 (the "November 1st Hearings"), the 6060 Bankruptcy Court conducted hearings on several crucial motions following the failure by the Debtor to close on a previous Section 363 "bulk sale" of the Commercial Units and Residential Units in connection with a proposed Second Amended Plan of Reorganization. During the November 1st Hearings, the Bankruptcy Court heard arguments concerning the Schecher Group's renewed motion to dismiss the 6060 Bankruptcy Case and the 6060 Debtor's motion to approve an auction sale and bid procedures relating to the Commercial Units and majority of Residential Units owned by the non-debtor RUOs (the "Units"), a portion of which are the subject of this bankruptcy. For brevity, the Movant refers the Court to the lengthy 6060 Bankruptcy Case docket involving the 6060 Debtor's hotly contested Section 363 sale motions and amended plans of reorganization.

For these reasons, among others, the Debtor has filed a first day Emergency Motion to Transfer Case To The Honorable Robert A. Mark and requesting a hearing on Monday, November 13, 2017 [ECF No. 3]. Certainly, although this Court is uniquely qualified to adjudicate the merits of the Motions, nonetheless, the Movant recognizes that the 6060 Bankruptcy Case is steeped in complex litigation such that the judicial resources of the Bankruptcy Court may best be served by transferring this matter to Judge Mark, who will be intimately familiar with the underpinnings of this bankruptcy.

## II.    **JURISDICTION AND VENUE.**

1.    This Court has jurisdiction over the subject matter of this Motion to Dismiss and Stay Relief Motion pursuant to 28U.S.C. §§ 157 and 1334.

2.    This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).

3.      Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

## III.    PROCEDURAL BACKGROUND.

### i.      Filing of the SOS Bankruptcy and Adversary Case.

4.      On November 9, 2017 (the "Petition Date"), Sixty One Sixty, LLC (the "Debtor") filed a voluntary petition for relief under Chapter 11 (the "Petition") of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "SOS Bankruptcy Case") [Main Case ECF No. 1]. This was a bare bones Petition containing conflicting corporate information regarding management of the Debtor and with its "principal assets" being located at the 6060 Building.

5.      On November 9, 2017, the Debtor also filed its Emergency Motion to Transfer Case to the Honorable Robert A. Mark (the "Motion to Transfer") [Main Case ECF No. 3], along with its Corporate Ownership Statement, with no disclosures [Main Case ECF No. 2].

6.      Notably, the Debtor entity was incorporated on November 2, 2107, just one day after the November 1st Hearings and a week prior to the Petition Date. These dates are not coincidental, but was purposefully undertaken to avoid trial when the Debtor has no standing in the Foreclosures, and are important factors contributing to the bad faith filing of the Petition.

7.      Upon information and belief, the Debtor has no real business operations, no employees and no principle place of business unless, of course, the Court were to accept its "Principal place of business" as being located 909 N. Miami Beach Boulevard #201, Miami, FL 33126.  This address happens to be the law offices of Debtor's bankruptcy counsel, Michael S. Hoffman, Esq. of Hoffman, Larin & Agnetti, P.A. (the "Hoffman Law Firm").

8.      Comparing the Petition to the corporate filings with the Florida Secretary of State tells a much different story. According to these public records, an individual named Todd A. Mikles ("Mikles"), a distressed real estate investor hailing from California, is disclosed as the

Debtor's "Manager and Authorized Representative" with a principal place of business, mailing address and address for the Debtor and Mr. Mikles, located at 6750 N. Andrews Ave., Suite 200, Fort Lauderdale, FL 33309.

9.      However, in the SOS Bankruptcy Case, Mr. Mikles is disclosed as the authorized representative of the Debtor, but executed the Petition as "Todd Mikles as Managing Member of Zulu Bravo, LLC, manager of the Debtor." There is no corporation information concerning Zulu Bravo listed with the Florida Secretary of State.

10.     In addition, on November 9, 2017, the Debtor filed the Complaint for Injunctive Relief, Including Temporary Restraining Order and Preliminary Injunction (the "Adversary Complaint") [ECF No. 4] against Schecher Group, Inc. ("Schecher Group" or "Defendant") in the matter styled *Sixty One Sixty, LLC, Plaintiff v. Schecher Group, Inc., Defendant,* Adversary Case No. 17-01438-LMI (the "SOS Adversary Case").

11.     On November 9, 2017, the Debtor filed its Emergency Motion for Injunctive Relief, Including Temporary Restraining Order and Preliminary Injunction Against Schecher Group, Inc. (the "Emergency Motion for Injunctive Relief") [Adversary Case ECF No. 2].

12.     The Schecher Group has not yet been served with the Summons and Adversary Complaint nor has counsel made an appearance in that proceeding. Nevertheless, as a matter of urgency, the Schecher Group objects to and opposes the entry of an order granting the Emergency Motion for Injunctive Relief, especially in the context of the 6060 Bankruptcy Case. Moreover, in the unlikely event that the SOS Adversary Case is not summarily dismissed, the Schecher Group views this matter as vexatious litigation sanctionable under 28 U.S.C. §1927 and other applicable law that has spilled over from the Foreclosures.

13.     Currently, given the filings in the SOS Bankruptcy Case and SOS Adversary

Case, the nature of the Debtor's interest in the Residential Units is of extremely dubious origin. That is, on the one hand, the Debtor alleges that it's an "owner of certain condominium units ("Unit" or "Units") in the 6060 Building, while on the other hand it alleges that "each member contributed their Unit to the Debtor and each member currently owns interests in the Debtor related to that contributed Unit." See, ¶3, Motion to Transfer; ¶¶8 & 9, Complaint.

14.     This carefully scripted language was seemingly constructed to create divergent, "smoke and mirror" narratives, concerning the description of what constitutes property of the Estate under 11 U.S.C. §541, while avoiding the pitfalls of violating the Declaration with respect to the Schecher Group's absolute *Right of First Refusal* ("ROFR") to purchase Units under the Declaration, as previously determined by the Bankruptcy Court in the 6060 Bankruptcy Case.

15.     On November 10, 2017, the Debtor filed an omnibus Suggestion of Bankruptcy in the Foreclosures relating to at least thirty-seven (37) pending cases set for trial as noted above on November 14-15, 2017 (the "Trials"). Fortunately, this ploy did not work, since the presiding state court judge having jurisdiction over the Foreclosures is proceeding with the Trials.

**ii.     The 6060 Bankruptcy Case.**

16.     By way of brief background, on December 5, 2016 (the "Petition Date"), the Sixty Sixty Condominium Association, Inc. ("6060 Debtor" or "Association") filed a voluntary petition for relief under Chapter 11 (the "Petition") of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Case") [ECF No. 1].

17.     Since that time, there has been rigorous motion and pleading practice by the 6060 Debtor, the Schecher Group and RUOs over a wide range of legal and procedural issues ranging from the Debtor's unsuccessful plot to change the voting rights of Unit owners as part of a reorganization which was found to violate the Declaration; approval of a §363 "bulk sale"

concept of the Association and non-debtor Units; as well as the exercise of the ROFR by the Schecher Group in the event of sale.

18.     On April 27, 2017, the 6060 Debtor filed its Complaint to Determine Validity, Priority and Extent of Liens, Setoff, Objection to Claim & Request for Declaratory Judgment against the Schecher Group [Adv. ECF No. 1] (the "Adversary Complaint") in the adversary proceeding styled *Sixty Sixty Condominium Association, Inc., Plaintiff v. Schecher Group, Inc. D/B/A SG Shared Components*, Adv. Case No. 17-01171-RAM (the "6060 Adversary Case").

19.     In the 6060 Adversary Case, which has been temporarily stayed and abated, the Bankruptcy Court is seeking to determine, among other issue, the "Baseline" amount owed by the Debtor for its portion of the Shared Costs, which would also be binding on the RUOs; provided however, that the Foreclosures have not stayed pending the 6060 Adversary Case.

20.     Significantly, during the administration of the 6060 Bankruptcy Case and 6060 Adversary Case, and after extensive briefing by the parties and numerous hearings, the Bankruptcy Court entered the following Orders (emphasis added):

   **a.**     On May 4, 2017, the Court entered its Report To State Court On Pending Matters And Collateral Estoppel Effect of Bankruptcy Court Ruling (the "Report")[ECF No. 232] finding, among other things, that:

> "The automatic stay in 11 U.S.C. §362 does not stay the continued prosecution of the   Foreclosure Cases and nothing contained in this Order acts as a stay."
> See, in ¶2.

   **b.**     On June 23, 2017, the Court entered its Order Granting Application For Administrative Expense And Granting Limited Stay Relief (the "Utility Expense Order")[ECF No. 284] which provides, in pertinent part, as follows:

> "2. The Schecher Group is granted an allowed administrative expense in the amount of $5,535.34, representing the Debtor's allocable share of $93,977.29 in postpetition utility charges paid by the Schecher Group. The total amount of Shared Costs recoverable by the Schecher Group is at issue in Adv. No. 17-1171. The Court finds that the postpetition utility charges subject of the Utility Expense

Motion should be paid by the Debtor and the residential unit owners, even though there are significant disputes on other Shared Costs." (emphasis added).

\*\*\*

"5. The Court's finding that the automatic stay is applicable to termination of electricity services is limited solely to termination of electricity services and does not amend the Court's Report to State Court on Pending Matters and Collateral Estoppel Effect of Bankruptcy Court Ruling [DE# 232], and specifically its finding that the automatic stay in §362 does not stay the Schecher Group's continued prosecution of foreclosure cases against the non-Debtor residential unit owners." (emphasis added).

    **c.**       On June 23, 2017, the Court entered its Order Reserving Ruling on Right of First Refusal (the "ROFR Order")[ECF No. 285], and on August 7, 2017, entered its Order Interpreting Right of First Refusal (the "Order Interpreting ROFR") [ECF. No. 349]. In the ROFR Order and Order Interpreting ROFR, the Bankruptcy Court determined that the Schecher Group had the right and must exercise its "right of first refusal" with respect to all Residential Units offered for sale in connection with a Court approved contract (see below).

    **d.**       On August 7, 2017, the Court entered its Order Granting Motion to Intervene With Limitations (the "Intervention Order") [Adv. ECF No. 42] in the 6060 Adversary Case. Specifically, the Intervention Order provided:

"4. The Court will not be determining any issues in the state court foreclosure cases against the Intervenors other than the Baseline amount. All defenses, offsets, or counterclaims relating to the Intervenors' individual liabilities to the Schecher Group, other than the Baseline amount, are to be determined in state court, and all discovery relating to each unit owner's liability, other than the Baseline amount, must be conducted in state court."

    21.      Meanwhile, within the past few months, the Bankruptcy Court had approved a Contract for the purchase and sale of the Units by the approved buyer MRC[5], which included a sub-set of Residential Units in which the Debtor now claims an interest. After months of due diligence by MRC, and attendance of a Judicial Settlement Conference by the Debtor, Schecher Group, RUOs and MRC, in an effort to globally settle, among other things, the Baseline number for amounts due on the Schecher Liens and Foreclosures, the parties reached an impasse.

---

[5] Marc Realty Capital, LLC.

22.      Notwithstanding this, MRC was still free to close on the transaction, but eventually served a Notice of Buyer's Termination of Contract on October 23, 2017, due to no fault of the Schecher Group [ECF No. 393]. The termination by MRC inevitably put the Debtor and RUOs in jeopardy of consummating a sale of the Units.

23.      Throughout this sale process, and during the course of the Bankruptcy Case, the RUOs have failed and refused to comply with the Utility Expense Order, which were based on undisputed amounts for Shared Costs attributable to the Residential Units. Although the Schecher Group moved to enforce the Utility Expense Order [See, Motion to Compel, ECF No. 389], the Bankruptcy Court has decided not interject itself further into these matters pertaining to the Schecher Group and RUOs. [See, Order on Motion to Compel, ECF No. 428].

24.      Thereafter, on October 25, 2017, the Schecher Group filed Secured Creditor, Schecher Group, Inc.'s Objection To Second Disclosure Statement In Support of Second Amended Plan Of Reorganization of Sixty Sixty Condominium Association, Inc. filed by the Debtor, Sixty Sixty Condominium Association, Inc. (the "Objection") [ECF No. 395] and Renewed Motion for Dismissal of Chapter 11 Case Pursuant to 11 U.S.C. §1112(b) –Expedited Relief Requested (the "Renewed Motion to Dismiss") [ECF No. 396]. The Objection and Renewed Motion to Dismiss, among other matters, were scheduled to be heard during the November 1st Hearings, referenced above.

25.      Undeterred, the Debtor and RUOs, scrambled to obtain another buyer ahead of the November 1st Hearings and, on October 26, 2017, the 6060 Debtor filed its Emergency Motion For Entry of Order Approving Bid Process (the "Motion to Approve")[ECF No. 397]. On November 2, 2017, over the objection of the Schecher Group ")[ECF No. 397], the Bankruptcy Court entered its Order Granting Motion to Approve Bid Process, Setting Deadline for Debtor to

File Sale Motion and Setting Hearing (the "Order Granting Motion to Approve")[ECF No. 415].

26.     Further, on November 2, 2017, the Bankruptcy Court entered the Order Abating Discovery and Setting Further Hearing on Motion to Set Trial and Pretrial Deadlines [Adv. Case ECF No. 100], staying abating the 6060 Adversary Case, until the next scheduled hearings on November 28, 2017 (the "November 28th Hearings").

**iii.     Kingfisher Island Enters the 6060 Bankruptcy Case.**

27.     As a prelude to the filing of the Petition, the Debtor and RUOs were negotiating with an entity known as Kingfisher Island, Inc. ("KFI"), to purchase the Units in the 6060 Bankruptcy Case. Initially, the Debtor, RUOs and MRC were negotiating for an assignment of the Contract to KFI before it was terminated.

28.     When that failed, and after it became abundantly clear during the November 1st Hearings that the Bankruptcy Court was not going to extend the automatic stay under 11 U.S.C. §362 to protect the RUOs nor issue any further directives to the Miami-Dade Circuit Court having jurisdiction over the Foreclosures (the "State Court") to derail the Trials, and would be considering the Renewed Motion to Dismiss if another contract was not approved during the November 28th Hearings, KFI and the RUOs were apparently busy hatching their ill-fated back-up plan, namely, filing the Petition.

29.     Upon information and belief, the Debtor is closely aligned, affiliated with and/or controlled by KFI, and/or its principles, through common ownership and management. According to various governmental and public records, KFI has been incorporated and/or registered in at least three different states: Florida, Delaware and California. Initially, on June 13, 2013, KFI was incorporated in the State of Delaware. On June 23, 2014, KFI filed a Statement and Designation of Foreign Corporation, and subsequently, Statements of Information on June

11

30, 2016 and August 7, 2017, with the California Secretary of State. Meanwhile, on August 4, 2014, KFI was incorporated in the State of Florida, and after a year, was voluntarily dissolved on August 5, 2015.

30.    In each instance, the corporate filings disclose Mr. Mikles, as President & CEO, and Jennifer Connolly, as Assistant Secretary, of KFI with principle offices located at 750 B Street Suite 2600-2620, San Diego, CA 92101. Furthermore, Mr. Mikles, Ms. Connolly and KFI are closely affiliated with another entity known as Professional Partners Group, LLC ("PPG"), and its Associate Counsel, Adam Kent ("Kent"). Indeed, Mr. Kent attended the November 1st Hearings and has appeared telephonically at other hearings in the 6060 Bankruptcy Case.

31.    While the SOS Bankruptcy Case was already well underway, KFI submitted a "Substitute Contract" to the Debtor by the November 1st deadline set forth in the Order Granting Motion to Approve. Not surprising, the Contract for Purchase and Sale by KFI (the "KFI Contract") was selected as the best and highest offer by the Debtor (the "KFI Offer") for reasons which are aimed at forcing the Schecher Group to sell or relinquish control of the Hotel Unit.

32.    Accordingly, on November 10, 2017, the day after the Petition Date, the Debtor filed the Debtor's Motion for Entry of an Order Authorizing Sale of Debtor's Real Property Located at 6060 Indian Creek Drive, Miami, Florida 33140 to Kingfisher Island, Inc. and Payment of Costs Association Therewith (the "Motion to Approve KFI Sale") [ECF No. 432], which matter is scheduled to be heard at the November 28th Hearings [ECF No. 434].

33.    In the Motion to Approve KFI Sale, the Debtor makes scant, half-hearted references to the SOS Bankruptcy Case, pointing to the fact that "[U]pon information and belief, approximately 37 of the participating RUOs have executed the KFI Offer and assigned and transferred the rights thereunder and their respective units to a limited liability company in which

said RUOs hold membership interest ("RUO LLC")." See, ¶38.

34.     Sadly, the Debtor has condoned this transparent scheme to hinder, delay and defraud its own creditors, including the Schecher Group and largest secured creditor, Florida Building and Supply, Inc. ("FSB"), which entity has opposed the Debtor's plan, by suggesting that the "RUO LLC filed for relief under Chapter 11…in order to….participate in and facilitate a closing of a sale contemplated herein."

35.     The last time the Schecher Group and FSB were dragged down the rabbit-hole of Section 363 with MRC, the Movant suffered substantial financial losses to due to the continued failure of the Debtor and RUOs to pay for utilities and Shared Costs at the 6060 Building. There is no reason to believe that this time will be any different since, among other things, the economics of the deal given the Schecher Liens, FSB Liens and ownership of the Hotel Unit, makes it financially unfeasible for KFI to close on the Units particularly where, as here, it has continued its efforts to wrestle control of the HU away from the Schecher Group.

**IV.     <u>LEGAL ARGUMENT</u>.**

The filing of the Petition and Adversary Case requesting the issuance of a temporary restraining order was orchestrated, among other things, to frustrate the rights of the Schecher Group in the 6060 Bankruptcy Case to foreclose on the Schecher Liens against the RUOs, while deliberately undermining the prior Orders and rulings of the Bankruptcy Court declining to extend the automatic stay to the RUOs in the pending Foreclosures. In fact, this SOS Bankruptcy Case was filed solely to hinder, delay and defraud creditors by utilizing the bankruptcy forum in a collusive manner by allowing the RUOs and KFI to place a stranglehold over the subject Residential Units and placing these assets beyond the reach of creditors. Further, the Petition was not filed in good faith to reorganize a financially distressed business with ordinary course trade

creditors, employees and operations, but was orchestrated to hide the Residential Units under the protective umbrella of the automatic stay and through the issuance of temporary restraining order to prevent the Trials from proceeding before the State Court.

To the contrary, from its inception, the Debtor was not truly indebted to the Schecher Group, or any other creditor for that matter. Instead, its sole purpose was to immediately incur millions of dollars in secured debt and then file for bankruptcy under the guise of reorganizing. Whatever property rights or interests the SOS Debtor may have in the Units, one thing is certain, it acquired them through a series of transfers effectuated by the RUOs with actual intent to hinder, delay and defraud the rights of the Schecher Group as a valid secured creditor regardless of any defenses that may exist in the Foreclosures. Here, the RUOs were each indebted to the Schecher Group for substantial amounts and other lien holders, such as FSB and banks with mortgages, which in some cases were being foreclosed. The RUOs did not want to file individual bankruptcies to avoid the Foreclosure, thereby subjecting themselves and their assets to the jurisdiction of the Bankruptcy Court. To avoid this consequence, the RUOs who are now presumptive members of the Debtor single purpose real estate entity, strategically transferred their interest in the Units to the Debtor, thus placing these assets from the reach of creditors in the hopes that KFI, an insider and/or affiliate of the Debtor, will be the successful purchaser of the Units in the 6060 Bankruptcy Case. Unfortunately, the sale process envisioned by the Motion to Approve is already tainted with misconduct.[6]

The Debtor is also holding interest in the Units with actual knowledge of the Schecher Liens and the pending Foreclosures. Yet, despite having knowledge of these secured debts, the SOS Debtor nevertheless had the RUOs "sell" and "transfer" their respective interests in the

---

[6] The Movants remains circumspect and skeptical of the 6060 Debtor's participation and influence in the filing of the SOS Bankruptcy Case.

Units in separate or bundled transfers without providing the Schecher Group and Bankruptcy Court with notice of the sale in direction violation of the ROFR Order [ECF No. 285] and Order Interpreting ROFR [ECF No. 349] and Declaration granting the Schecher Group a "right of first refusal" to purchase the Residential Units on the same terms and conditions. Because the Schecher Group does not have a copy of an Operating Agreement for the Debtor, if one even exists, the precise manner of completing the transfers remain unclear since the SOS Debtor has not filed Schedules or Statement of Financial Affairs.

Moreover, the new Debtor has no standing to intervene or stay the Foreclosures because it is not a party to the foreclosure proceedings filed by Schecher Group nor can it be. See, *Whiteside v. Sch. Bd. of Escambia Cty.*, 798 So.2d 859, 859–60 (Fla. 1st DCA 2001) ("Under the general rule, one not a party to a case has no standing to request relief from the court."); see also, *Warshaw–Seattle, Inc. v. Clark*, 85 So.2d 623, 625 (Fla.1955) ("Persons who are not parties of record to a suit have no standing therein which will enable them to take part in or control the proceedings. If they have occasion to ask relief in relation to the matters involved, they must either contrive to obtain the status of parties in such suit or they must institute an independent suit." (quoting 39 Am.Jur., Parties, § 55 (1936)). For purposes of the SOS Bankruptcy Case, 11 U.S.C. §541(a)(1) provides that "property of the estate" includes "all legal and equitable interests of the debtor in property as of the commencement of the case." While the question of whether a debtor's interest in property of the estate is a question of federal law, the nature and extent of the debtor's interest in property is determined by applicable non-bankruptcy law. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914 (1979).

It is well settled that "when property is purchased during a pending foreclosure action in which a lis pendens has been filed, the purchaser generally is not entitled to intervene in the

pending foreclosure action." *Bymel v. Bank of Am., N.A.*, 159 So.3d 345, 347 (Fla. 3d DCA 2015); see also, *Mkt. Tampa Invs., LLC v. Stobaugh,* 177 So.3d 31 (Fla. 2d DCA 2015) (affirming trial court's ruling that third-party purchaser, who had obtained the property after the bank's foreclosure complaint and lis pendens had been filed, could not intervene in the foreclosure proceeding); *U.S. Bank Nat'l Ass'n v. Bevans*, 138 So.3d 1185, 1188–89 (Fla. 3d DCA 2014) (noting two exceptions to the general rule that a legal title holder of the property would be a proper party to a bank's mortgage foreclosure action: when the legal title holder has taken the property after a lis pendens had been filed in the bank's foreclosure action or after the bank's mortgage had been duly recorded and the purchaser had actual or constructive notice of bank's litigation); *Whitburn, LLC v. Wells Fargo Bank, N.A.*, 190 So. 3d 1087, 1089–90 (Fla. 2d DCA 2015), *reh'g denied* (Apr. 29, 2016), *review denied*, SC16-945, 2016 WL 6998444 (Fla. Nov. 30, 2016). The filing of the Petition in this instance does not yield a different result nor does the automatic stay and protections under 11 U.S.C. §362 apply to the Foreclosures. Therefore, the Suggestion of Bankruptcy filed by the SOS Debtor is nullity such that the Trials may proceed to final foreclosure judgments and sale of the Residential Units.

**A.    Dismissal of the SOS Bankruptcy Case And Imposition of Sanctions Is Warranted Pursuant to 11 U.S.C. §1112(b) and Rule 9011 as a "Bad Faith" Chapter 11 Bankruptcy Filing.**

The purpose of a Chapter 11 case is to enable a financially distressed debtor to reorganize its financial affairs and develop a realistic plan of repayment. *In re: South County Realty, Inc.*, 69 B.R. 611, 615 (Bankr. N.D.Fla. 1987).  The filing of Chapter 11 case is not intended to be used simply as a means of preventing a creditor from enforcing its claims, *In re: Mildevco*, 40 B.R. 191, 193 (Bankr. S.D.Fla 1984), and the possibility of, or the wish for a successful reorganization cannot transform a bad faith chapter 11 petition into one undertaken in good faith.

Furthermore, a chapter 11 case may be dismissed for "cause" pursuant to 11 U.S.C. §1112(b)(1) if it is determined that the petition was not filed in good faith. *In re: State Street Houses, Inc.,* 356 F.3d 1345 (11th Cir. 2004); *See also, In re: Phoenix Piccadilly, Ltd.,* 849 F.2d 1393, 1394 (11th Cir. 1988); *In re: Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir. 1984); *In re: Midway Invs.*, 187 B.R. 382, 389 (Bankr. S.D.Fla. 1995); *In Re: Davis Heritage GP Holdings, LLC,* 443 B.R. 448 (Bankr. N.D.Fla. 2010). Likewise, the court may sanction a debtor, the person who signed the petition, and the debtor's attorney if the court determines that a petition was filed in bad faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation pursuant to Rule 9011, F.R.B.P.

In determining whether a chapter 11 case is a bad faith filing, the Eleventh Circuit in *In re: State Street Houses* held that a bankruptcy court may consider the following factors established in *Phoenix Piccadilly*:

a.    Whether the debtor has few unsecured creditors, whose claims are relatively small compared to the claims of the secured creditors;

b.    Whether the real property owned by the debtor is subject to a pending pre-petition foreclosure action;

c.    Whether the debtor's financial problems are essentially a dispute between the debtor and its secured creditors which can be resolved   in   a   pending state court action; and

d.    Whether the timing of the debtor's bankruptcy filing evidences the intent to delay or frustrate enforcement of a secured creditor's rights.

356 F.3d at 1347.

Additional factors to be considered by a bankruptcy court in deciding whether to dismiss a chapter 11 petition for "bad faith" pursuant to 11 U.S.C. §1112(b)(1) include:

a.    Whether there is a reasonable likelihood of reorganization;

b.    Whether there is sufficient income for the debtor to operate;

c.      Whether the pre-petition conduct of the debtor has been improper;

d.      Whether there was pressure from non-moving creditors at the time the petition was filed; and

e.      Whether the debtor filed chapter 11 to create the automatic stay.

*In re: SB Properties, Inc.*, 185 B.R. 198 (E.D. Pa. 1985).

Additionally, a bankruptcy court may also consider "any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or in particular, factors which evidence that the petition was filed to 'delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" *In re: Phoenix Piccadilly,* 849 F.2d at 1394 quoting *In re: Albany Partners, Ltd.*, 749 F.2d at 674. A bankruptcy court's finding that a chapter 11 petition was filed in "bad faith" will not be disturbed even if the debtor has possible equity in the property. *In Re: Phoenix Piccadilly,* 849 F.2d at 1395.

Now, applying the law regarding bad faith filings to the facts of the SOS Bankruptcy Case, the SOS Debtor clearly filed its chapter 11 petition in "bad faith" and for no other purpose than to create an automatic stay and frustrate the Schecher Group's rights pursuant to the Foreclosures to enforce the Schecher Liens through judgment and sale of the Residential Units, as evidenced by the following:

a.      The Debtor's only assets are the Residential Units or interests of the members therein upon which the Schecher Group holds the Schecher Liens;

b.      The Debtor has no legitimate creditors even taking into account the Schecher Group, and perhaps others;

c.      There is no equity in the Residential Units;

d.      The Debtor's manufactured financial problems are nothing more than a two party dispute between the Debtor and the Schecher Group which can and should be resolved in the pending Foreclosures;

e.     The Debtor was formed on November 2, 2017, within 7 days of the Petition Date, by Mr. Mikles, who is also a principle and insider of KFI;

f.     This bankruptcy case was commenced a few days before the scheduled Trials in the Foreclosures, and the Residential Units were transferred into the Debtor within days prior to the Petition Date;

g.     The Residential Units or the interests of the Debtor's members in the Units were transferred into the Debtor by the RUOs and KFI with actual intent to hinder, delay and defraud creditors and/or for no consideration and despite Lis Pendens already being recorded in the Foreclosures;

h.     The Debtor has no income and no source of income to operate in chapter 11, or even to pay for basic maintenance and upkeep of the Residential Units, including the Shared Costs for utilities, condo fees, HU assessments, taxes and insurance; the Debtor has no tenants or employees, and the debtor has never operated or generated any revenues.  In fact, prior to the transfers, the Debtor has never conducted business;

i.     The Debtor filed this bankruptcy for no other reason than to create the automatic stay and frustrate the Schecher Group's legitimate rights of foreclosure on the Residential Units as admitted by the Debtor; and

j.     There is no possibility of a successful reorganization based on the fact that there is no equity in the Residential Units and upon a sale of the assets the Debtor would cease to exist.

Based on the foregoing, the Court must reach the inescapable conclusion that the Debtor's sole intention in filing the Petition was to impose the automatic stay and delay the Foreclosures and foreclosure sales previously set by the State Court on some of the Residential Units in foreclosure in bad faith with knowledge that it has no business to reorganize and no ability to reorganize.  In the case of *Colonial Daytona Limited Partnership v. American Savings of Florida,* 152 B.R. 966 (M.D. Fla. 1993), the District Court in affirming the Bankruptcy Court's dismissal of the chapter 11 petition for bad faith found the following factors persuasive:

a.     The debtor's intent in filing the chapter 11 petition was to avoid an upcoming hearing in the state court foreclosure case;

b.     The debtor's inability to pay normal operating expenses and service the debt on the property reflects its inability to operate as an ongoing

concern; and

      c.     The debtor is unable to confirm a plan and reorganize.

152 B.R. at 1001-1003.  These three factors are clearly evident in this case.

In addition, courts have found that the "new debtor syndrome" is another indicator of a bad faith filing. *First American Bank of Georgia v. Coastal Nursing Center, Inc*.,  164 B.R. 788, 796 (Bankr. S.D. Ga. 1993).

> New debtor syndrome, which may be evidence of bad faith filing, is a term of art which describes set of circumstances indicating that an asset has been transferred to a newly created shell corporation immediately before the corporation files for bankruptcy for the purpose of evading creditor's rights. This tactic has the dual benefit of simultaneously shielding the asset from creditors and isolating it from healthier portions of owner's business. Creditors are prevented from pursuing their state law remedies against the asset because the new corporation files for bankruptcy soon after receiving title to the asset. At the same time, the troubled asset is isolated from the rest of an owner's business so that none of his healthier assets are subject to the burdens and intrusions of bankruptcy. Several courts have held that when a debtor has received an asset  under circumstances which are characteristic of the "new debtor syndrome", there is evidence of a bad faith filing. . . . Circumstances which are indicative of 'new debtor syndrome' include: (1) a new entity was formed for purpose of filing bankruptcy petition; (2) the only assets transferred to debtor were in imminent and substantial danger of loss by foreclosure sale; (3) only significant creditors were those seeking foreclosure; (4) filing of case was neither  precipitated by nor related to other creditor pressure; (5) debtor had no cash flow of substance or  any other means to service encumbrances on property; and (6) debtor neither conducted nor engaged in  any business activities of significance except to resist foreclosure and file bankruptcy.

*Id*.; See also, *In re Mildevco, Inc., et al*,  40 B.R. 191 (Bankr. S.D. Fla.  1984); *In re Randy Homes Corporation,* 86 B.R. 259 (Bankr. M.D. Fla 1988). This case presents a textbook case of the "new debtor syndrome". The debtor has the burden of proof to show that its bankruptcy petition was filed in good faith.  *In re Rad Properties, Inc.*, 84 B.R. 827 (Bankr. M.D.Fla. 1988);

*In re Sar-Manco, Inc.,* 70 B.R. 132 (Bankr. M.D.Fla. 1986); *In re Lotus Investments*, 16 B.R. 592, 595 (Bankr. S.D.Fla. 1981). For the reasons set forth above, the transfer of the Residential Units into the Debtor just days before the Debtor's filing of its Chapter 11 petition for no consideration, and the filing of the petition the day before the Trials in the Foreclosures, including foreclosure sales set for certain Units, cannot rationally be explained as anything but a bad faith attempt "to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights." *Phoenix Piccadilly*, 849 F.2d at 1395.

The case law addressing bad faith filings and sanctions under Rule 9011 is clear and abundant. For example, the Court in *In re Aurora Investments, Inc.*, 144 B.R. 899 (Bankr.M.D.Fla. 1992) sanctioned the debtor and its attorney, jointly and severally, for Rule 9011 sanctions as the result of a bad faith filing of a Chapter 11 petition on behalf of a business with no employees and no legitimate need to reorganize, solely for the purpose of delaying a mortgage foreclosure. *See also*, *In re Grand Hotel Ltd. Partnership,* 121 B.R. 657 (S.D.Fla.1990) (district court affirmed a sanction of approximately $27,000 in lost interest and $10,000 in attorney's fees caused by filing a bankruptcy petition in violation of F.R.B.P. 9011 on the day of the foreclosure sale); *In re Terra of America Trading, Inc.*, 109 B.R. 516 (Bankr.S.D.Fla.1989), (imposing a sanction of $5,000 for filing a bankruptcy petition in bad faith on the day of a foreclosure sale); *In re Winn*, 53 B.R. 645 (Bankr.M.D.Fla.1985) (court imposed both attorney's fees and costs for filing a bankruptcy petition in bad faith).

Given the exigency of the emergency filings in the SOS Bankruptcy Case, the Schecher Group reserves it right to assert additional grounds for the bad faith filing and to hold those accountable for the damages caused to the Schecher Group as a result of these actions. In the meantime, the Schecher Group urges the Court to consider all of the factors articulated in this

Motion to Dismiss and Motion for Sanctions, including the circumvention of the Orders entered in the 6060 Bankruptcy Case in awarding sanctions. Accordingly, the Movant respectfully requests that the Debtor as well as its principals, members and bankruptcy counsel be sanctioned pursuant to Federal Rule of Bankruptcy Procedure 9011(c), for filing the Petition herein in bad faith and with no legal basis, solely for the purposes of delay, harassment, or to increase the Schecher Group's costs of litigation, with no due diligence or investigation whatsoever, in violation of Federal Rule of Bankruptcy Procedure 9011(b). This Motion for Sanctions is served pursuant to Federal Rule of Bankruptcy Proceedure 9011(c) and, therefore, the 21 day safe harbor is not required.

**B.    <u>The Automatic Stay Does Not Apply to the Foreclosures.</u>**

Based upon the foregoing, the Schecher Group submits that the automatic stay pursuant to 11 U.S.C. § 362(a)(1)-(6) of the Bankruptcy Code does not apply to the Debtor and the continued prosecution of the Foreclosures in the State Court. The record is also unclear whether the Debtor even obtained fee simple title to the Residential Units, thus calling into question the nature and description of assets purportedly located at the 6060 Building constituting property of the estate. Indeed, if the RUOs have sold and transferred their interest in the Residential Units to the Debtor, then such property is subject to the Lis Pendens and Schecher Liens and the Debtor may not obtain any greater rights in the Units upon commencement of the Foreclosures

However, in an abundance of caution, the Schecher Group seeks an order terminating, modifying and/or annulling the automatic stay *nun pro tunc* to the Petition Date to avoid any potential stay violations (which are remote). In doing so, the Schecher Group seeks a ruling from the Court that (i) the automatic stay does not apply to the Foreclosures of the Residential Units; or alternatively, (ii) if the automatic stay does apply for whatever reason under these

circumstances, that "cause" exists to lift and/or modify the stay to allow the Schecher Group to continue prosecuting the Foreclosures through final and sale of the Units. Bankruptcy Code section 362(a) operates as a stay, applicable to all entities of, among other things, (i) commencement of proceedings to recover prepetition claims against the Debtors (ii) acts to obtain possession or exercise control over property of the estate, (iii) acts to enforce a lien against property of the estate, and (iv) acts to recover or collect a claim against the Debtor that arose before the commencement of the case. *See*, *generally*, 11 U.S.C. § 362(a)(1)-(6).

Notwithstanding the foregoing, Bankruptcy Code section 362(d) *mandates* relief from the automatic stay under section 362(a) under the following circumstances:

> On request of a party in interest and after notice and a hearing, the court **shall** grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or condition such stay –
>
> > (1)   for cause, including the lack of adequate protection of an interest in property of such party in interest;
> >
> > (2)   with respect to a stay of an act against property under subsection (a) of this section, if –
> > > (A)   the debtor does not have an equity in such property; and
> > > (B)   such property is not necessary to an effective reorganization. . .

 11 U.S.C. § 362(d) (emphasis added).

Section 362(d)(1) of the Bankruptcy Code provides that relief from stay shall be granted for cause. The term cause is not defined in the Bankruptcy Code, and whether cause exists should be determined on a case by case basis. *See In re Sonnax Indus.*, 907 F.2d 1280 (2d Cir. 1990).

Further, as explained in this Stay Relief Motion, and argued before the Bankruptcy Court in the 6060 Bankruptcy Case, the Schecher Group is entitled to relief from stay for cause pursuant to §362(d)(1) to enforce the Foreclosures and Declaration against the Debtor and its

members including, without limitation, the RUOs, in order to maintain and operate the 6060 Building. The delinquent RUOs, who are parties in pending State Court foreclosure actions, have failed to pay their fair share of Shared Costs for utilities. In addition, many Units are not generating income through the hotel rental program which may be applied to offset the rising costs of utilities to the Hotel Unit.

Moreover, should there be a determination that any issues raised in this Stay Relief Motion overlap between the jurisdiction of the Bankruptcy Court and the State Court tribunal having jurisdiction over the Foreclosure, mandatory or discretionary abstention is appropriate to allow the parties to resolve such disputes in another forum. Regardless of these factors, it is generally recognized that "[a]llowing a matter to proceed to another forum may constitute 'cause' to lift the stay". *Id.* (Citations omitted). *See also In re Bruce,* 2000 WL 968777, 2-3 (Bankr. E.D. Pa. 2000)("A desire to permit an action to proceed to completion in another tribunal may provide another cause."); *In re Philadelphia Athletic Club, Inc.,* 9 B.R. 280 (Bankr. E.D. Pa. 1981) (permitting state court action which was "almost at an end" to proceed in order to liquidate unsecured creditor's claim). Further, the Schecher Group is also entitled to relief from stay pursuant to §362(d)(2) because (i) the Debtor does not hold any equity in the Residential Units and (ii) the Units are not necessary for an effective reorganization of the Debtor even in the context of the 6060 Bankruptcy Case.

Lastly, the Schecher Group requests that, in the event that the automatic stay is lifted, modified and annulled, the Court determine that the fourteen (14) day stay provided by Bankruptcy Rule 4001(a)(3), of any order granting relief from the automatic stay, should not be applicable to this Stay Relief Motion given prior the RUO delinquencies, the bad faith filing of the Petition and the Trials set before the State Court to defray the rapidly increasing Share Costs.

**WHEREFORE**, the Schecher Group, Inc., respectfully requests that this Court enter an

Order: (i) granting the Motion to Dismiss, Motion for Sanctions and Stay Relief Motion for the

reasons stated herein; (ii) retaining jurisdiction to consider and award sanctions for the bad faith

filing of the Chapter 11 Petition pursuant to Rule 9011, Fed. R. Bankr.P.; and (iii) granting such

other and further relief as the Court deems just and proper.

**Dated this __14th__ day of November, 2017.**

GENOVESE, JOBLOVE & BATTISTA, P.A.
*Attorneys for Schecher Group, Inc.*
100 S.E. 2nd Street, Suite 4400
Miami, FL 33131
Tel: (305) 349-2300
Fax: (305) 349-2310

By:__/s/ Barry P. Gruher_____
        Barry P. Gruher, Esq.
        Fla. Bar No. 960993
        Email: bgruher@gjb-law.com

BECKER & POLIAKOFF, P.A.
*Attorneys for Schecher Group, Inc.*
121 Alhambra Plaza, 10th Floor
Coral Gables, FL  33134
(305) 262-4433 Telephone
E-mail: Sdavis@bplegal.com

By:_____
Steven M. Davis
Florida Bar # 894249

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motions have been served upon all creditors and parties in interest reflected on the attached service list via the Court's Case Management/Electronic Case Filing System on November 14, 2017 and/or via U.S. Mail on the  15th day of November, 2017.

By:/s/ Barry P. Gruher
Barry P. Gruher, Esq.

## SERVICE LIST

***Served via CM/ECF***

Barry P Gruher on behalf of Creditor Schecher Group, Inc.
bgruher@gjb-law.com, vlambdin@gjb-law.com;gjbecf@gjb-law.com;cesser@gjb-law.com;chopkins@gjb-law.com

Michael S Hoffman on behalf of Debtor Sixty One Sixty, LLC
Mshoffman@hlalaw.com,
hlaecf@gmail.com;kszolis@hlalaw.com;agarcia@hlalaw.com;mshoffman@ecf.courtdrive.com

Michael S Hoffman on behalf of Plaintiff Sixty One Sixty, LLC
Mshoffman@hlalaw.com,
 hlaecf@gmail.com;kszolis@hlalaw.com;agarcia@hlalaw.com;mshoffman@ecf.courtdrive.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

***Served Via U.S. Mail***

**To all parties on the attached creditor matrix**

```
Label Matrix for local noticing        Sixty One Sixty, LLC                 Florida Building & Supply, Inc.
113C-1                                  6750 N Andrews Ave #200              13530 NW 107 Ave #C-4
Case 17-23573-LMI                       Ft Lauderdale, FL 33309-2180         Hialeah, FL 33018-1179
Southern District of Florida
Miami
Mon Nov 13 17:38:36 EST 2017

HSBC Bank USA, N.A.                     Internal Revenue Service             JP Morgan Chase Bank
1800 Tysons Blvd                        Centralized Insolvency Operation     270 Park Ave
Mc Lean, VA 22102-4257                  POB 7346                             New York, NY 10017-2070
                                        Philadelphia, PA 19101-7346


Miami Dade County - Tax Assessor        Office of the US Trustee             Schecher Group , Inc.
200 NW 2 Ave                            51 S.W. 1st Ave.                     901 SW 9th Terrace
Miami, FL 33128-1733                    Suite 1204                          Fort Lauderdale, FL 33315-1128
                                        Miami, FL 33130-1614


Schecher Group , Inc.                   Schecher Group , Inc.                State of Florida - Department of Revenue
c/o Barry Gruher, Esq.                  c/o Gregory Elder, Registered Agent  POB 6668
200 E. Broward Blvd., Suite 1110        901 SW 9th Terrace                   Tallahassee, FL 32314-6668
Fort Lauderdale, FL 33301-3535          Fort Lauderdale, FL 33315-1128


Wells Fargo Bank, N.A.                  Michael S Hoffman
420 Montgomery Street                   909 North Miami Beach Blvd #201
San Francisco, CA 94163-0001            Miami, FL 33162-3712
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(u)Schecher Group, Inc.                 (u)Miami                             End of Label Matrix
                                                                            Mailable recipients    13
                                                                            Bypassed recipients     2
                                                                            Total                  15
```