# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

In re:

SIXTY ONE SIXTY, LLC                    Case No. 17-23573-RAM

     Debtor-in-Possession.             Chapter 11

_____/

## DEBTOR'S EXPEDITED MOTION FOR ENTRY OF AN ORDER AUTHORIZING SALE OF DEBTOR'S REAL PROPERTY LOCATED AT 6060 INDIAN CREEK DRIVE, MIAMI, FLORIDA 33140 TO KINGFISHER ISLAND, INC.

*Hearing Requested on November 28, 2017 and November 29, 2017 along with other matters in this case and the Related Proceeding (defined below).*

Sixty One Sixty, LLC, the Chapter 11 debtor and debtor-in-possession herein (the "*Debtor*"), by and through undersigned counsel, pursuant to Sections §§ 327, 330, 331, 363(b), 363 (f), 365 and 1123(b) of the United States Bankruptcy Code and Rules 2002(a)(2), 2002(c)(1), 2014 and 6004 of the Federal Rules of Bankruptcy Procedure, and Rule 6005-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida, and the November 2, 2017 *Order Granting Motion to Approve Bid Process, Setting Deadline for Debtor to File Sale Motion and Setting Hearing* in *In re*: Sixty Sixty Condominium Association, Inc., Case Number 16-26187-RAM  (the "Related Proceeding") (Related Proceeding, ECF #427) (the "*Process Approval Order*"), files this *Debtor's Motion for Entry of an Order Authorizing Sale of Debtor's Real Property Located at 6060 Indian Creek Drive, Miami, Florida 33140 to Kingfisher Island, Inc.* (the "Sale Motion"), and in support thereof states as follows:

## I.     PRELIMINARY STATEMENT

Debtor has a fair and equitable plan that is in the best interests of all constituencies; but most importantly, a proposal contemplating a bankruptcy reorganization that pays all claims 100% of what claimants are actually owed in an allowed claim; **but not more.** To do this,

1

Debtor contemplates a bulk sale in coordination with that proposed bulk sale in the Related Proceeding. The Sale Motion seeks to advance the bulk sale and orderly payment of creditors' allowed claims.

## II.   JURISDICTION AND BACKGROUND

1.      This Court has jurisdiction to consider the Sale Motion pursuant to 28 U.S.C. §§157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A), (M), (N) and (O).

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1404 and 1409.

3.      The statutory basis for the relief requested herein is 11 U.S.C. §§ 363(b) and (f).

4.      On December 5, 2016, Sixty Sixty Condominium Association, Inc. (the "*Association Debtor*") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (Related Proceeding, ECF #1).

5.      On April 27, 2017, the Association Debtor commenced an adversary proceeding[1] in the Related Proceeding by filing its *Complaint to Determine Validity, Priority and Extent of Liens, Setoff, Objection to Claim & Request for Declaratory Judgment* (the "*Complaint*") (Related Adversary Proceeding, ECF #1) against the Schecher Group, Inc. ("*Schecher*").

6.      Among other claims, the Complaint seeks a determination of the validity, extent, and priority of Schecher's liens, claims and encumbrances in the Association Debtor's property.

7.      One of the goals of the Related Adversary Proceeding is to determine a "Base Line" number of all amounts that Schecher is allowed – under the Declaration[2] and applicable law – to charge to unit owners, including the Debtor.

---

[1] Adversary Proceeding in the Related Proceeding Case No. 17-01171-RAM (the "Related Adversary Proceeding").
[2] The Declaration shall be a short reference to that certain Declaration of Sixty Sixty Condominium filed in the Related Proceeding by Schecher, Related Proceeding ECF #138.

8.      The Association Debtor and Schecher filed their *Preliminary Pretrial Stipulation* on August 28, 2017 (Related Adversary Proceeding, ECF #60) (the "*Pretrial Stipulation*").

9.      The Pretrial Stipulation identifies, among other things, several disputed legal issues regarding the propriety of Schecher's charges to unit owners, including Debtor, that must be resolved to determine the "Base Line" number (the "*Disputed Legal Issues*").

10.     On November 1, 2017, this Court held a hearing on, among other things, the process of the bulk sale, setting a November 28, 2017 hearing to approve the sale contract.

11.     On November 2, 2017, the Association Debtor selected an offer from Kingfisher Island, Inc. ("*KFI*") as the highest and best offer for the sale of its property (the "*PSA*"). Among other conditions, the PSA makes KFI's purchase contingent on a minimum number of residential unit owners selling their unit to KFI based on the proposed terms. As of the date of filing this Motion, KFI has obtained executed PSAs that meet the minimum unit requirement. Attached hereto as Exhibit A is a true and correct copy of the executed PSAs evidencing satisfaction of the minimum unit requirement.

12.     Within days of the Association Debtor's approval of the PSA as the highest and best offer, other residential unit owners accepted the PSA beginning the path to reaching the minimum number of residential unit owners agreeing to sell to KFI upon the proposed terms. To facilitate the sale of the residential units under PSA, no less than forty-six (46) residential unit owners contributed their unit to Debtor, a newly-formed entity, for the specific purpose of selling Debtor's property pursuant to the PSA.[3]

---

[3] Section 17.5 of the Declaration provides that the right of first refusal referenced in section 17.1 of the Declaration shall not apply to any conveyance of any unit by "the Unit Owner thereof to . . . [an] other entity where the Unit Owner . . . are and continue to be the sole beneficiary or equity owner" and within the Debtor, each member is the sole equity owner of their respective contributed unit within the Debtor. Each member has the unilateral right to sell the contributed unit and in contributing their unit to the Debtor, each member agreed to sell their unit under the terms of the PSA which contemplates paying all allowed creditor claims.

13.    The key terms of the PSA are:

a.  <u>Price</u>. The "*Purchase Price*" for the Condominium Property shall be as follows:

      i.  $1,0900,000.00 for the Association Debtor's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the "Association Debtor's Units").

     ii.  $90,000.00 for each residential unit which executes the KFI Offer and closes on the sale. At least 50 residential units (the "*Minimum Participation Requirement*") must execute the KFI Offer within 25 days of the Commencement Date (defined therein) and close, otherwise KFI may terminate the KFI Offer.

   iii.  $4,100,000.00 or less paid to the Schecher Group, Inc. D/B/A SG Shared Components (the "*Schecher Claim Amount*") at Closing, in full and final satisfaction of its claims asserted against all units subject to the sale under this KFI Offer, including any and all claims asserted in Case No. 16-26187-RAM, in the United States Bankruptcy Court, Southern District of Florida, Miami Division.

   iv.  $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing. *See* Exhibit A, ¶ 2.

b.  Deposit. KFI will deposit a $30,000 (Thirty Thousand Dollars) (the "*Initial Deposit*"), which amount shall be non-refundable in favor of the Association Debtor, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the "*Bankruptcy Court*") approving the KFI Offer; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, KFI shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Coastal Title of Ft. Lauderdale, Florida unless otherwise agreed, in writing, by KFI and Seller (the "Escrow Agent") with proof given to Seller's attorneys and the title company (the "*Refundable Deposit*"); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the "*Second Non-Refundable Deposit*") The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the "*Deposits*" shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to KFI.

All interest accrued or earned on the Refundable Deposit shall be paid to KFI except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions. *See*, Exhibit A, ¶ 4.

c.  Due Diligence Exception: KFI may not terminate the Agreement solely because,

as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit. *See*, Exhibit A, ¶ 7(e).

14.    Under the PSA, the Association Debtor and residential unit owners are responsible for paying their pro-rata portion of the Florida Building and Supply, Inc. allowed claim before closing or at closing through escrow.

15.    The PSA employs language with respect to Schecher's right of first refusal that the Bankruptcy Court previously approved.

16.    As of the date of filing this Motion, the required minimum number of residential unit owners agreeing to sell their unit pursuant to the terms of the PSA has been met with an approximate sixty-seven units, including but not limited to all units of Debtor presently agreeing to the PSA.

17.    Debtor's Operating Agreement permits each Member the unilateral right to sell that Member's contributed unit and instructs the Debtor, through the Manager, to facilitate such a sale. Therefore, while each Member contributed their unit to the Debtor, each Member has the authority to enter into the PSA for the sale of the contributed unit and instruct the Debtor, through the Manager, to facilitate that sale. Attached hereto as Exhibit B is the Debtor's Operating Agreement.

18.    Debtor respectfully requests that this Court approve the PSA and permit the Debtor to take any and all steps necessary to effectuate a sale in coordination with the bulk sale in the Related Proceeding.

### III.    RELIEF REQUESTED

**Sale of Debtor's Assets**

1.    Section 363(b)(1) of the Bankruptcy Code provides that a trustee, "after notice

5

and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." A debtor in possession has the authority of a trustee. 11 U.S.C. §1107.

2.     Sales of this nature are generally approved when the debtor demonstrates that the sale constitutes an exercise of sound "business judgment". *See Generally* 3 COLLIER ON BANKRUPTCY ¶ 363.02[1][f] (16th ed. 2011). *See also In re Diplomat Const., Inc.*, 2012 WL 5205792, \*(Bankr. N.D. Ga. September 18, 2012) ("[t]he business judgment test is the prevailing rubric to evaluate the proposed transaction under § 363(b)(1)"); *In re Condere Corp.*, 228 B.R. 615 (Bankr. S.D. Miss. 1998) (business judgment); *WBQ P'ship v. Virginia*, 189 B.R. 97 (Bankr. E.D. Va. 1995) (best interest of the estate); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169 (D. Del. 1991); (fair and reasonable price); *In re Phoenix Steel*, 82 B.R. 334 (Bankr. D. Del. 1987) (fair and equitable transaction).

3.     The "sound business judgment" test requires a debtor to establish: (a) that a sound business reason justifies the sale outside the ordinary course of business, (b) that accurate and reasonable notice has been provided to interested parties, (c) that the contract obtained reflects a fair and reasonable price, and (d) good faith. *Id.*; *In re Phoenix Steel Corporation*, 82 B.R. 334, 335 (Bankr. D. Del. 1987); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).

4.     These standards are met in the current matter. The proposed sale is the product of good faith negotiations, in coordination with the bulk sale process in the Related Proceeding wherein the Association Debtor and its Broker bargained for the highest and best offer and facilitated a bid process as authorized by this Court's Process Approval Order. Members of the Debtor and other residential unit owners, exceeding the minimum required number of units under the PSA, have agreed to sell their unit to KFI pursuant to the PSA.

5.     As this Court knows, the sale of the subject units has now twice gone through a

competitive process. The first round unfortunately resulted in a terminated contract on the last day of due diligence. Accordingly, the current PSA includes a non-refundable deposit that would, among other things, further commit KFI to close and provide resources to advance the sale process.

6.    The PSA is a good faith attempt to pay all allowed creditor claims at the sale in an orderly process. While the Schecher claim is disputed, in the PSA KFI commits to paying Schecher up to $4,100,000 to satisfy its claims and liens against all units sold in the bulk sale.

7.    Debtor believes that the PSA is the highest and best offer for Debtor's assets in the proposed bulk sale in coordination with the Related Proceeding.

**Free and Clear of Liens**

8.    The Debtor proposes to sell the subject condominium units free and clear of all liens, claims, and encumbrances pursuant to Section 363(f) of the Bankruptcy Code with all such liens, claims, and encumbrances attaching to certain sale proceeds. Such a sale is permitted if and when one of the following conditions is met: (1) applicable non-bankruptcy law permits sale of such property free and clear of such a lien, claim, or encumbrance; (2) the entity holding such lien, claim, or encumbrance consents to such a sale; (3) the lien, claim, or encumbrance is less than the aggregate value of all such interests; (4) such interest is in a bona fide dispute; or (5) the entity is compelled in a legal or equitable proceeding to accept a money satisfaction of such interest. *See Generally* 3 COLLIER ON BANKRUPTCY ¶ 363.06 (16th ed. 2011). The language of Section 363(f) is disjunctive so that a sale free and clear of liens, claims, and encumbrances may be approved if any one of the aforementioned conditions is met. *Id. See also In re Heine*, 141 B.R. 185, 189 (Bankr. D. S.D. 1992); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

9.    The Debtor seeks to sell the subject units free and clear of any claims of Schecher. Schecher's claim is both subject to a bonafide dispute and will be getting satisfied in full through this case.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order (i) Granting the Sale Motion; (ii) approve the PSA as the highest and best offer; (iii) authorizing the Debtor to take any and all action necessary to consummate the sale of the Debtor's assets pursuant to the PSA; (iv) find that both PSA is fair, reasonable, negotiated in good faith and that KFI is a good faith purchaser as contemplated by Section 363(m) and (n); and (v) granting such other and further relief as is just.

## Attorney's Local Rule 2090-1(A) Certification

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

HOFFMAN, LARIN & AGNETTI., P.A.
Proposed Counsel for the Debtor
909 North Miami Beach Blvd., Suite 201
North Miami Beach, FL 33162
Tel: (305) 653-5555
Fax: (305) 940-0090
Email: mshoffman@hlalaw.com

/s/ Michael S. Hoffman
Michael S. Hoffman
Florida Bar No.:  41164

# EXHIBIT A

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this "*Agreement*" or "*Contract*") is made this **1ˢᵗ** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter "*Buyer*"), and the parties listed on the attached "Schedule A" (collectively referred to as "*Sellers*").

## WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the "*Condominium Property*").

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the "*Association*") is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    <u>Purchase and Sale</u>.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    <u>Price</u>.  The "*Purchase Price*" for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the "*Association's Units*")).

Sellers _____  Buyer _____

b. $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c. $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d. $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.    Term of Contract.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.    Deposit.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.    Commencement Date. The Commencement Date is the first day on which all of the following have occurred:

a. The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____    Buyer _____

b.   The Association has executed this Contract and delivered a copy to Buyer; and

c.   The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.   <u>Right of First Refusal.</u> The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.   <u>Due Diligence Period.</u> The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will

Sellers _____   Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.
(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.   Additional Conditions.      The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers _____ Buyer _____

5

(f)     All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)     Sellers shall have complied with all of its obligations under this Contract.

(h)     The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)     This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.     Title Commitment.   Buyer has already obtained a title report for the units from First American Title Insurance Company (the "Title Company"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("Preliminary Commitment") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "Title Review Period"). Buyer, at Buyer's option, may obtain a survey ("Survey") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "Extended Closing Date"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the

Sellers _____   Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs. Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.

Sellers _____    Buyer _____

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    <u>Representations and Warranties of Seller</u>.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    <u>Representations and Warranties of Buyer</u>.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers _____    Buyer _____

(b)     There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.     <u>Broker Fee</u>.     Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.     <u>Not Contingent on Building Permits</u>. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.     <u>Possession</u>.     Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.     <u>Governing Law</u>.     This Contract is governed by the laws of Florida.

22.     <u>Default</u>.     If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.     <u>Notices</u>. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

    SELLERS:           the Notice Party is:

                       Inger M. Garcia, Esq.
                       4839 Volunteer Road, Suite 514
                       Davie, Florida 33330
                       Email: attorney@ingergarcia.com

                and

                       Brett Lieberman, Esq.
                       401 East Las Olas Boulevard, Suite 1400
                       Fort Lauderdale, Florida 33301
                       Email: blieberman@messana-law.com

Sellers _____    Buyer _____

BUYER:              KINGFISHER ISLAND, INC.
                        2150 Palomar Airport Road, Suite 205
                        Carlsbad, CA 92011
                        Attn: Todd Mikles

With a copy to:     Inger M. Garcia, Esq.
                        4839 Volunteer Road, Suite 514
                        Davie, Florida 33330
                        Email: attorney@ingergarcia.com
           and

                        Brett Lieberman, Esq.
                        401 East Las Olas Boulevard, Suite 1400
                        Fort Lauderdale, Florida 33301
                        Email: blieberman@messana-law.com
           and

                        Adam T. Kent, Esq.
                        895 Dove Street, Suite 300
                        Newport Beach, CA 92663
                        Email: adam@propartnersgroup.com

24.    <u>Successors</u>.   This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    <u>Assignability</u>. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    <u>Exclusivity</u>. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    <u>Entire Agreement</u>.   This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    <u>Counterparts</u>. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.    <u>Radon Gas</u>.   The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

      Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to

Sellers _____    Buyer _____

persons who are exposed to it over time.  Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida.  Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    <u>Saturday, Sunday and Legal Holiday</u>. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November ____/____, 2017


SELLERS:

See "Schedule A".


Ruben Lamothe

6060 Indian Creek Drive Unit #
Miami Beach, FL 33140

11/7/2017


Sellers _____    Buyer _____

# Schedule A

**Unit #** 503

**Owner Signature**                                **Owner Signature**

Ruben Lamothe

**Address:** 8730 SW 86 ct. Miami, Fla 33143

**E-Mail Address:** Tennis123544@cs.com

Unit #CU1-CU2-CU3-CU4-505

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ˢᵗ** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

### WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    Purchase and Sale.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.    This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    Price.    The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers ___MTV___  Buyer _____

b.     $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.     $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.     $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.     <u>Term of Contract.</u>     This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.     <u>Deposit.</u>     Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.     <u>Commencement Date.</u> The Commencement Date is the first day on which all of the following have occurred:

a.     The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers  M↑V     Buyer

b.  The Association has executed this Contract and delivered a copy to Buyer; and

c.  The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.  <u>Right of First Refusal.</u>  The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.  <u>Due Diligence Period.</u> The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers ___MTV___    Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    <u>Additional Conditions</u>.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the <u>allowed</u> claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers MTV    Buyer

5

(f)     All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)     Sellers shall have complied with all of its obligations under this Contract.

(h)     The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)     This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.     Title Commitment.     Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the

Sellers  Buyer

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    <u>Title Evidence</u>.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    <u>Closing Date</u>. Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "*Closing*")</u>. If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    <u>Closing Costs</u>. Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    <u>Delivery for Closing</u>. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.

Sellers  Buyer

(f)     Closing Statement.

(g)     All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.     Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.     Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.     Representations and Warranties of Seller.  Sellers represent and warrant to Buyer the following:

(a)     As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)     Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)     There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.     Representations and Warranties of Buyer.  Buyer represents and warrants to Sellers the following:

(a)     Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers  MtV    Buyer

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    Broker Fee.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    Possession.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    Governing Law.    This Contract is governed by the laws of Florida.

22.    Default.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    Notices. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

    SELLERS:            the Notice Party is:

                Inger M. Garcia, Esq.
                4839 Volunteer Road, Suite 514
                Davie, Florida 33330
                Email: attorney@ingergarcia.com

        and

                Brett Lieberman, Esq.
                401 East Las Olas Boulevard, Suite 1400
                Fort Lauderdale, Florida 33301
                Email: blieberman@messana-law.com



Sellers ___ Buyer ___

BUYER:                KINGFISHER ISLAND, INC.
                      2150 Palomar Airport Road, Suite 205
                      Carlsbad, CA 92011
                      Attn: Todd Mikles

With a copy to:       Inger M. Garcia, Esq.
                      4839 Volunteer Road, Suite 514
                      Davie, Florida 33330
                      Email: attorney@ingergarcia.com
            and
                      Brett Lieberman, Esq.
                      401 East Las Olas Boulevard, Suite 1400
                      Fort Lauderdale, Florida 33301
                      Email: blieberman@messana-law.com
            and
                      Adam T. Kent, Esq.
                      895 Dove Street, Suite 300
                      Newport Beach, CA 92663
                      Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties
hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the
property.  As a result, the purchasing entity at Closing may be different than the Buyer named in
this Contract.  Therefore, Buyer has the right to assign this Contract without Sellers' prior
consent, so long as all conditions remain the same otherwise, and the Court approval is had, if
necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale
of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties
and supersedes any prior agreements between them. Buyer may incorporate additional units into
this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be
treated as originals for all purposes, and all counterparts so executed shall constitute one
agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory
to the original or to the same counterpart.  Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the
requirements of the Florida Statutes:

        Radon Gas: Radon is a naturally occurring radioactive gas that, when it has
        accumulated in a building in sufficient quantities, may present health risks to



Sellers _____    Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

Todd A., Mikles, Managing Member

Date: November _____ , 2017

SELLERS:

See "Schedule A".

Maria T Velez
618E25DD2737453...

Name: MARIA T VELEZ, PRESIDENT 6060 ASSOCIATION

11/10/2017

Sellers MTV    Buyer

# Schedule A

**Unit #** CU1-CU2-CU3-CU4-505

DocuSigned by:

*Maria T Velez*

618E25DD2737453...

Owner Signature                                    Owner Signature

Name:MARIA T VELEZ PRESIDENT 6060 CONDO ASSOCIATION

**Address:** 6060 INDIAN CREEK DRIVE, MIAMI BEACH, FLORIDA 33141

**E-Mail Address:** VELEZMARIA@HOTMAIL.COM

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ST** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.   Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.   Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.   The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.   The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.   <u>Purchase and Sale</u>.   Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.   This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.   No personal property is included with this sale.

2.   <u>Price</u>.   The *"Purchase Price"* for the Condominium Property shall be as follows:

a.   $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _____   Buyer _____

b.    $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.    $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.    $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.    <u>Term of Contract</u>.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.    <u>Deposit</u>.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.    <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.    The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;

Sellers _____    Buyer 

b.    The Association has executed this Contract and delivered a copy to Buyer; and

c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    Right of First Refusal. The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    Due Diligence Period. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will

Sellers _____    Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8. <u>Additional Conditions.</u>    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the <u>allowed</u> claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers _____    Buyer 

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the

Sellers _____    Buyer 

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.  <u>Title Evidence.</u>  At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.  <u>Closing Date.</u>  Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "<i>Closing</i>")</u>. If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.  <u>Closing Costs.</u>  Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.  <u>Delivery for Closing.</u>  At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)  Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)  Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)  Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)  FIRPTA affidavit.

(e)  Association estoppel letter or waiver.

Sellers _____  Buyer 

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    <u>Representations and Warranties of Seller</u>.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    <u>Representations and Warranties of Buyer</u>.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers _____    Buyer 

(b)     There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.     <u>Broker Fee</u>.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.     <u>Not Contingent on Building Permits</u>. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.     <u>Possession</u>.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.     <u>Governing Law</u>.     This Contract is governed by the laws of Florida.

22.     <u>Default</u>.     If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.     <u>Notices</u>. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

> SELLERS:         the Notice Party is:
>
>                  Inger M. Garcia, Esq.
>                  4839 Volunteer Road, Suite 514
>                  Davie, Florida 33330
>                  Email: attorney@ingergarcia.com
>
>          and
>
>                  Brett Lieberman, Esq.
>                  401 East Las Olas Boulevard, Suite 1400
>                  Fort Lauderdale, Florida 33301
>                  Email: blieberman@messana-law.com

Sellers _____    Buyer _____

BUYER:             KINGFISHER ISLAND, INC.
                   2150 Palomar Airport Road, Suite 205
                   Carlsbad, CA 92011
                   Attn: Todd Mikles

With a copy to:    Inger M. Garcia, Esq.
                   4839 Volunteer Road, Suite 514
                   Davie, Florida 33330
                   Email: attorney@ingergarcia.com
          and
                   Brett Lieberman, Esq.
                   401 East Las Olas Boulevard, Suite 1400
                   Fort Lauderdale, Florida 33301
                   Email: blieberman@messana-law.com
          and
                   Adam T. Kent, Esq.
                   895 Dove Street, Suite 300
                   Newport Beach, CA 92663
                   Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

       Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to

Sellers _____   Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November _____ 1 _____, 2017


SELLERS:

See "Schedule A".


Sellers _____    Buyer _____

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1st** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.     Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.     Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.     The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.     The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.     <u>Purchase and Sale</u>.     Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.   This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.     <u>Price</u>.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.     $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _____ Buyer _____

b.    $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.    $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.    $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.    <u>Term of Contract</u>.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.    <u>Deposit</u>.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.    <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.    The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____    Buyer _____

b.    The Association has executed this Contract and delivered a copy to Buyer; and

c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u>  The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers _____    Buyer _____

DocuSign Envelope ID: D01376CZ-5A35-4CCE-A11C-44326ACF1B14

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers     Buyer

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____    Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs. Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers _____    Buyer _____

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers _____    Buyer _____

(b)     There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.     Broker Fee.     Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.     Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.     Possession.     Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.     Governing Law.     This Contract is governed by the laws of Florida.

22.     Default.     If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.     Notices. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

     SELLERS:          the Notice Party is:

                                    Inger M. Garcia, Esq.
                                    4839 Volunteer Road, Suite 514
                                    Davie, Florida 33330
                                    Email: attorney@ingergarcia.com

          and

                                      Brett Lieberman, Esq.
                                    401 East Las Olas Boulevard, Suite 1400
                                    Fort Lauderdale, Florida 33301
                                    Email: blieberman@messana-law.com

Sellers _____    Buyer _____

BUYER:  KINGFISHER ISLAND, INC.
        2150 Palomar Airport Road, Suite 205
        Carlsbad, CA 92011
        Attn: Todd Mikles

With a copy to:  Inger M. Garcia, Esq.
                4839 Volunteer Road, Suite 514
                Davie, Florida 33330
                Email: attorney@ingergarcia.com
        and
                Brett Lieberman, Esq.
                401 East Las Olas Boulevard, Suite 1400
                Fort Lauderdale, Florida 33301
                Email: blieberman@messana-law.com
        and
                Adam T. Kent, Esq.
                895 Dove Street, Suite 300
                Newport Beach, CA 92663
                Email: adam@propartnersgroup.com

24.  <u>Successors</u>.  This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.  <u>Assignability</u>. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract.  Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.  <u>Exclusivity</u>.  By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.  <u>Entire Agreement</u>.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.  <u>Counterparts</u>. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart.  Copies shall be treated as originals.

29.  <u>Radon Gas</u>.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

> Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to



Sellers _____  Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30. <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31. <u>Saturday, Sunday and Legal Holiday</u>. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November _____ 1 _____, 2017



SELLERS:

See "Schedule A".


Jorge Correa
8A788B6B8FEE41F...

Jorge Correa

6060 Indian Creek Drive Unit #
Miami Beach, FL 33140

11/7/2017


Sellers [JC]    Buyer [TC]

# Schedule A

**Unit #** 508

DocuSigned by:

*Jorge Correa*

8A788B6B8FEE41F...

**Owner Signature**                                    Owner Signature

Jorge Correa

**Address:** 7912 nw 164 terr

**E-Mail Address:** jlcorrea@msn.com

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this *1st* day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    Purchase and Sale.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    Price.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _LV_    Buyer _____

b.   $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.   $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.   $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.   <u>Term of Contract</u>.   This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.   <u>Deposit</u>.   Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.   <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.   The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _LV_____   Buyer _____

    b.    The Association has executed this Contract and delivered a copy to Buyer; and

    c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u>  The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period.</u> The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers  LV      Buyer

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers  Buyer

DocuSign Envelope ID: B82198BD-6EAD-4ADB-BD19-0ED3365FA323

5

(f)     All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)     Sellers shall have complied with all of its obligations under this Contract.

(h)     The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)     This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.     Title Commitment.   Buyer has already obtained a title report for the units from First American Title Insurance Company (the "Title Company"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("Preliminary Commitment") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment.  Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "Title Review Period"). Buyer, at Buyer's option, may obtain a survey ("Survey") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid.  If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing.  Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "Extended Closing Date").  In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _LV_____     Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs.    Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing.    At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers ___LV___    Buyer _____

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    <u>Representations and Warranties of Seller</u>.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    <u>Representations and Warranties of Buyer</u>.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _____    Buyer _____

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    Broker Fee.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    Possession.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    Governing Law.    This Contract is governed by the laws of Florida.

22.    Default.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    Notices. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:         the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com

Sellers _LV_____    Buyer _____

BUYER:                 KINGFISHER ISLAND, INC.
                       2150 Palomar Airport Road, Suite 205
                       Carlsbad, CA 92011
                       Attn: Todd Mikles

With a copy to:        Inger M. Garcia, Esq.
                       4839 Volunteer Road, Suite 514
                       Davie, Florida 33330
                       Email: attorney@ingergarcia.com
            and
                       Brett Lieberman, Esq.
                       401 East Las Olas Boulevard, Suite 1400
                       Fort Lauderdale, Florida 33301
                       Email: blieberman@messana-law.com
            and
                       Adam T. Kent, Esq.
                       895 Dove Street, Suite 300
                       Newport Beach, CA 92663
                       Email: adam@propartnersgroup.com

24.   Successors.   This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.   Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract.   Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.   Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.   Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.   Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.   Radon Gas.   The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

        Radon Gas: Radon is a naturally occurring radioactive gas that, when it has
        accumulated in a building in sufficient quantities, may present health risks to

Sellers _LV_____    Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

_____
Todd A., Mikles, Managing Member

Date: November ____/____, 2017

SELLERS:

See "Schedule A".

DocuSigned by:
**LORENA VARALES**
E9A55A8E3AE348E...

LORENA VARALES

6060 Indian Creek Drive Unit #
Miami Beach, FL 33140

11/7/2017

Sellers [ LV ]    Buyer [ TC ]

# Schedule A

## Unit # 602

DocuSigned by:

*LORENA VARALES*

E9A55A8E3AE348E...

## Owner Signature                    Owner Signature

LORENA VARALES

## Address: 2209 NE 122 ST NORTH MIAMI FL 33181

## E-Mail Address: LOREMIAMI@GMAIL.COM

DocuSign Envelope ID: 34960FC7-6CF2-4B56-BCD0-82DC21AD71CA

Unit # 605

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this "*Agreement*" or "*Contract*") is made this **1st** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter "*Buyer*"), and the parties listed on the attached "*Schedule A*" (collectively referred to as "*Sellers*").

### WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the "*Condominium Property*").

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the "*Association*") is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    Purchase and Sale.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights. This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS. No personal property is included with this sale.

2.    Price.  The "*Purchase Price*" for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the "*Association's Units*")).

Sellers ____    Buyer ____

DocuSign Envelope ID: 34960FC7-6CF2-4B56-BCD0-82DC21AD71CA

2

b.      $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the "*Minimum Participation Requirement*") must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.      $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the "*Schecher Claim Amount*") at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.      $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.      Term of Contract.      This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.      Deposit.      Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the "*Initial Deposit*"), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the "*Bankruptcy Court*") approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the "*Escrow Agent*") with proof given to the Seller's attorneys and the title company (the "*Refundable Deposit*"); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the "*Second Non-Refundable Deposit*") The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the "*Deposits*" shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.      Commencement Date. The Commencement Date is the first day on which all of the following have occurred:

a.      The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;

Sellers _____      Buyer _____

DocuSign Envelope ID: 34960FC7-6CF2-4B56-BCD0-82DC21AD71CA

3

    b.    The Association has executed this Contract and delivered a copy to Buyer; and

    c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal</u>.  The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will

Sellers _____  Buyer _____

DocuSign Envelope ID: 34960FC7-6CF2-4B56-BCD0-82DC21AD71CA

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8. _Additional Conditions_.      The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)     Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)     A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)     The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)     All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)     Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers _____      Buyer_____

DocuSign Envelope ID: 34980FC7-6CF2-4B56-BCD0-82DC21AD71CA

5

(f)     All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)     Sellers shall have complied with all of its obligations under this Contract.

(h)     The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)     This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.     Title Commitment.     Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the

Sellers _____     Buyer _____

DocuSign Envelope ID: 34960FC7-6CF2-4B56-BCD0-82DC21AD71CA

6

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs.  Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.

Sellers _____    Buyer _____

7

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers _____    Buyer _____

DocuSign Envelope ID: 34960FC7-6CF2-4B50-BCD0-82DC21AD71CA

8

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    Broker Fee.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    Possession.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    Governing Law.    This Contract is governed by the laws of Florida.

22.    Default.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages.  If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    Notices. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

> SELLERS:          the Notice Party is:
>
>                   Inger M. Garcia, Esq.
>                   4839 Volunteer Road, Suite 514
>                   Davie, Florida 33330
>                   Email: attorney@ingergarcia.com
>
>          and
>                   Brett Lieberman, Esq.
>                   401 East Las Olas Boulevard, Suite 1400
>                   Fort Lauderdale, Florida 33301
>                   Email: blieberman@messana-law.com

Sellers _____    Buyer _____

DocuSign Envelope ID: 34960FC7-6CF2-4B50-BCD0-82DC21AD7FCA · Case 17-23573-RAM · Doc 23 · Filed 11/21/17 · Page 72 of 535

9

| BUYER: | KINGFISHER ISLAND, INC.<br>2150 Palomar Airport Road, Suite 205<br>Carlsbad, CA 92011<br>Attn: Todd Mikles |
| --- | --- |
| With a copy to: | Inger M. Garcia, Esq.<br>4839 Volunteer Road, Suite 514<br>Davie, Florida 33330<br>Email: attorney@ingergarcia.com |
| and | Brett Lieberman, Esq.<br>401 East Las Olas Boulevard, Suite 1400<br>Fort Lauderdale, Florida 33301<br>Email: blieberman@messana-law.com |
| and | Adam T. Kent, Esq.<br>895 Dove Street, Suite 300<br>Newport Beach, CA 92663<br>Email: adam@propartnersgroup.com |

24. **Successors.** This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25. **Assignability.** It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26. **Exclusivity.** By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27. **Entire Agreement.** This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28. **Counterparts.** This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29. **Radon Gas.** The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

> Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to

Sellers _____  Buyer _____

10

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

KINGFISHER ISLAND, INC.
a Delaware corporation


_____
Todd A., Mikles, Managing Member

Date: November _____/_____, 2017


SELLERS:

See "Schedule A".




David D Georg

6060 Indian Creek Drive Unit #
Miami Beach, FL 33140




Sellers _____    Buyer _____

## Schedule A

Unit # *1005*

*[signature]*

Owner Signature                    Owner Signature
Davi d D Georg

Address: *3821 Houcks Rd.*
*Monkton, MD 21111*

EMail Address:
*dbeidavid@gmail.com*

*410-960-9140*

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ST** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.     Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.     Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.     The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.     The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.     <u>Purchase and Sale</u>.     Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.     <u>Price</u>.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.     $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _____   Buyer _____

b.  $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the "*Minimum Participation Requirement*") must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.  $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the "*Schecher Claim Amount*") at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.  $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.  <u>Term of Contract</u>.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.  <u>Deposit</u>.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the "*Initial Deposit*"), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the "*Bankruptcy Court*") approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the "*Escrow Agent*") with proof given to the Seller's attorneys and the title company (the "*Refundable Deposit*"); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the "*Second Non-Refundable Deposit*") The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the "*Deposits*" shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.  <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.  The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers ___    Buyer ___

b.   The Association has executed this Contract and delivered a copy to Buyer; and

c.   The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.   <u>Right of First Refusal.</u> The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.   <u>Due Diligence Period.</u> The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers _RE_____   Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers _____    Buyer _____

5

(f)     All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)     Sellers shall have complied with all of its obligations under this Contract.

(h)     The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)     This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.     Title Commitment.     Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers ___    Buyer ___

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    <u>Title Evidence</u>.      At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    <u>Closing Date</u>. Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "*Closing*")</u>. If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    <u>Closing Costs</u>. Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    <u>Delivery for Closing</u>. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.

Sellers  Buyer

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers _____    Buyer _____

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    Broker Fee.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    Possession.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    Governing Law.    This Contract is governed by the laws of Florida.

22.    Default.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages.  If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    Notices.  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:            the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com

Sellers _____    Buyer _____

BUYER:                KINGFISHER ISLAND, INC.
                      2150 Palomar Airport Road, Suite 205
                      Carlsbad, CA 92011
                      Attn: Todd Mikles

With a copy to:       Inger M. Garcia, Esq.
                      4839 Volunteer Road, Suite 514
                      Davie, Florida 33330
                      Email: attorney@ingergarcia.com
            and
                      Brett Lieberman, Esq.
                      401 East Las Olas Boulevard, Suite 1400
                      Fort Lauderdale, Florida 33301
                      Email: blieberman@messana-law.com
            and
                      Adam T. Kent, Esq.
                      895 Dove Street, Suite 300
                      Newport Beach, CA 92663
                      Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties
hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the
property.  As a result, the purchasing entity at Closing may be different than the Buyer named in
this Contract.  Therefore, Buyer has the right to assign this Contract without Sellers' prior
consent, so long as all conditions remain the same otherwise, and the Court approval is had, if
necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity.  By execution of this Contract, Sellers acknowledge their interest in the sale
of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties
and supersedes any prior agreements between them. Buyer may incorporate additional units into
this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be
treated as originals for all purposes, and all counterparts so executed shall constitute one
agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory
to the original or to the same counterpart.  Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the
requirements of the Florida Statutes:

          Radon Gas:  Radon is a naturally occurring radioactive gas that, when it has
          accumulated in a building in sufficient quantities, may present health risks to


Sellers _____    Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

Todd A., Mikles, Managing Member

Date: November ____ , 2017

SELLERS:

See "Schedule A".

Rosemarie Zambón

Rosemarie Zambón

6060 Indian Creek Drive Unit #
Miami Beach, FL 33140

11/7/2017

Sellers ____    Buyer ____

# Schedule A

Unit # 606

DocuSigned by:

*Rosemarie Zambón*

12E7FF7BC1C546D...

## Owner Signature                              Owner Signature

Rosemarie Zambón

**Address:** Calle Lautaro # 170 mod J Quilicura Zip Code 8710010 Santiago- Chile

**E-Mail Address:** rzambon@interwheels.cl

DocuSign Envelope ID: 4CA71E36-AECF-41EA-AEA9-C84733B0F04D

Unit #607

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ST** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    Purchase and Sale.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    Price.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _____    Buyer _____

b.    $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.    $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.    $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.    <u>Term of Contract</u>.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.    <u>Deposit</u>.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.    <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.    The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____    Buyer _____

b.  The Association has executed this Contract and delivered a copy to Buyer; and

c.  The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.  <u>Right of First Refusal.</u>  The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.  <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers _____    Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.        The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers _____    Buyer _____

DocuSign Envelope ID: 4CA71E36-AECF-41EA-AEA9-C84733B0F04D

5

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____    Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    <u>Title Evidence</u>.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    <u>Closing Date</u>. Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing")</u>. If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    <u>Closing Costs</u>. Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    <u>Delivery for Closing</u>. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers _____    Buyer _____

(f)     Closing Statement.

(g)     All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.     Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.     Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.     Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)     As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)     Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)     There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.     Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)     Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers       Buyer

(b)      There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.      <u>Broker Fee.</u>    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.      <u>Not Contingent on Building Permits.</u> This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.      <u>Possession.</u>    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.      <u>Governing Law.</u>      This Contract is governed by the laws of Florida.

22.      <u>Default.</u>      If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.      <u>Notices.</u>  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

      SELLERS:          the Notice Party is:

                                  Inger M. Garcia, Esq.
                                  4839 Volunteer Road, Suite 514
                                  Davie, Florida 33330
                                  Email: attorney@ingergarcia.com

          and

                                  Brett Lieberman, Esq.
                                  401 East Las Olas Boulevard, Suite 1400
                                  Fort Lauderdale, Florida 33301
                                  Email: blieberman@messana-law.com



Sellers _____    Buyer _____

BUYER:                    KINGFISHER ISLAND, INC.
                          2150 Palomar Airport Road, Suite 205
                          Carlsbad, CA 92011
                          Attn: Todd Mikles

With a copy to:           Inger M. Garcia, Esq.
                          4839 Volunteer Road, Suite 514
                          Davie, Florida 33330
                          Email: attorney@ingergarcia.com
                 and
                          Brett Lieberman, Esq.
                          401 East Las Olas Boulevard, Suite 1400
                          Fort Lauderdale, Florida 33301
                          Email: blieberman@messana-law.com
                 and
                          Adam T. Kent, Esq.
                          895 Dove Street, Suite 300
                          Newport Beach, CA 92663
                          Email: adam@propartnersgroup.com

24.    <u>Successors</u>.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    <u>Assignability</u>. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    <u>Exclusivity</u>. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    <u>Entire Agreement</u>.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    <u>Counterparts</u>. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.    <u>Radon Gas</u>.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

      Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to

Sellers _RW_    Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

Todd A., Mikles, Managing Member

Date: November _____ 1_____, 2017

SELLERS:

See "Schedule A".

DocuSigned by:

Richard Wasertein PA

FF4EC600F181426...

Richard Wasertein PA

6060 Indian Creek Drive Unit #607
Miami Beach, FL 33140

11/9/2017

Sellers [RW]    Buyer [TM]

# Schedule A

Unit # 607

*Richard Wasertein PA*

FF4EC600F181426...

Owner Signature                                    Owner Signature

Richard Wasertein PA

**Address:** 1124 Kane Concourse, Bay Harbor Islands, FL 33154

**E-Mail Address:** was913@aol.com

UNIT # 608

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ˢᵗ** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

### WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    <u>Purchase and Sale</u>.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    <u>Price</u>.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers ___TSM___  Buyer ___[signature]___

b.  $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.  $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.  $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.  <u>Term of Contract</u>.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.  <u>Deposit</u>.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.  <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.  The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____    Buyer _____

b.    The Association has executed this Contract and delivered a copy to Buyer; and

c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u> The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period.</u> The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will

Sellers ⟨TSM⟩    Buyer ⟨signature⟩

DocuSign Envelope ID: CFE32DD6-1BCC-44AE-B772-CD49A97B0EEA

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.       The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers __†SM__    Buyer _____



(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment.  Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid.  If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing.  Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*").  In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers  TSM    Buyer

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    <u>Title Evidence</u>.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    <u>Closing Date</u>. Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "*Closing*")</u>. If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    <u>Closing Costs</u>. Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    <u>Delivery for Closing</u>. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.

Sellers  Buyer

DocuSign Envelope ID: CFE32DD6-1BCC-44AE-B772-CD49A97B0EEA

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    <u>Representations and Warranties of Seller</u>.  Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    <u>Representations and Warranties of Buyer</u>.  Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers ↑SM    Buyer ___

(b)     There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.     <u>Broker Fee</u>.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.     <u>Not Contingent on Building Permits</u>. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.     <u>Possession</u>.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.     <u>Governing Law</u>.      This Contract is governed by the laws of Florida.

22.     <u>Default</u>.      If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.     <u>Notices</u>. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:            the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com



Sellers  TSM    Buyer

BUYER:           KINGFISHER ISLAND, INC.
                     2150 Palomar Airport Road, Suite 205
                     Carlsbad, CA 92011
                     Attn: Todd Mikles

With a copy to:    Inger M. Garcia, Esq.
                     4839 Volunteer Road, Suite 514
                     Davie, Florida 33330
                     Email: attorney@ingergarcia.com
       and

                     Brett Lieberman, Esq.
                     401 East Las Olas Boulevard, Suite 1400
                     Fort Lauderdale, Florida 33301
                     Email: blieberman@messana-law.com
       and

                     Adam T. Kent, Esq.
                     895 Dove Street, Suite 300
                     Newport Beach, CA 92663
                     Email: adam@propartnersgroup.com

24.    <u>Successors</u>.   This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    <u>Assignability</u>. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract.  Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    <u>Exclusivity</u>. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    <u>Entire Agreement</u>.   This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    <u>Counterparts</u>. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.    <u>Radon Gas</u>.   The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

        Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to



Sellers TSM    Buyer

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

Todd A., Mikles, Managing Member

Date: November _____/_____, 2017

SELLERS:

See "Schedule A".

DocuSigned by:
Teran San Miguel
A3D5AB251E7148D...

NAME: Norma Teran Luna

11/09/2017

Sellers    TSM    Buyer

Schedule A

Unit # 608

DocuSigned by:

*Teran San Miguel*

A3D5AB251E7148D...

Owner Signature                                        Owner Signature

Address: 10107 Forest Av Fairfax, VA 22032

E-Mail Address: jorgesm27@gmail.com

DocuSign Envelope ID: 422F73A7-0205-4D94-9029-92B23E082A38

Unit #701

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this "*Agreement*" or "*Contract*") is made this **1ˢᵗ** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter "*Buyer*"), and the parties listed on the attached "Schedule A" (collectively referred to as "*Sellers*").

## WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the "*Condominium Property*").

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the "*Association*") is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    <u>Purchase and Sale</u>.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    <u>Price</u>.  The "*Purchase Price*" for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the "*Association's Units*")).



Sellers_____    Buyer_____

b. $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c. $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d. $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3. <u>Term of Contract.</u>    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4. <u>Deposit.</u>    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5. <u>Commencement Date.</u> The Commencement Date is the first day on which all of the following have occurred:

a. The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____    Buyer _____

b.    The Association has executed this Contract and delivered a copy to Buyer; and

c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    Right of First Refusal. The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    Due Diligence Period. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers _____ Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    <u>Additional Conditions</u>.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the <u>allowed</u> claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers _____ Buyer 

(f)     All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)     Sellers shall have complied with all of its obligations under this Contract.

(h)     The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)     This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.     Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____  Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    _Title Evidence._    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    _Closing Date._ Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "_Closing_"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    _Closing Costs._ Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    _Delivery for Closing._ At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers _____    Buyer _____

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _____ Buyer _____

8

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    <u>Broker Fee</u>.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    <u>Not Contingent on Building Permits</u>. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    <u>Possession</u>.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    <u>Governing Law</u>.    This Contract is governed by the laws of Florida.

22.    <u>Default</u>.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    <u>Notices</u>.  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

        SELLERS:        the Notice Party is:

                                Inger M. Garcia, Esq.
                                4839 Volunteer Road, Suite 514
                                Davie, Florida 33330
                                Email: attorney@ingergarcia.com

           and

                                Brett Lieberman, Esq.
                                401 East Las Olas Boulevard, Suite 1400
                                Fort Lauderdale, Florida 33301
                                Email: blieberman@messana-law.com



Sellers _____ Buyer

DocuSign Envelope ID: 422F73A7-0205-4D94-9029-92B23E082A38

BUYER:                KINGFISHER ISLAND, INC.
                      2150 Palomar Airport Road, Suite 205
                      Carlsbad, CA 92011
                      Attn: Todd Mikles

With a copy to:       Inger M. Garcia, Esq.
                      4839 Volunteer Road, Suite 514
                      Davie, Florida 33330
                      Email: attorney@ingergarcia.com
           and
                      Brett Lieberman, Esq.
                      401 East Las Olas Boulevard, Suite 1400
                      Fort Lauderdale, Florida 33301
                      Email: blieberman@messana-law.com
           and
                      Adam T. Kent, Esq.
                      895 Dove Street, Suite 300
                      Newport Beach, CA 92663
                      Email: adam@propartnersgroup.com

24.    <u>Successors</u>.    This Contract is binding upon and inures to the benefit of the parties
hereto and their respective successors, heirs, administrators, and assigns.

25.    <u>Assignability</u>. It is anticipated Buyer may enter a partnership for the development of the
property. As a result, the purchasing entity at Closing may be different than the Buyer named in
this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior
consent, so long as all conditions remain the same otherwise, and the Court approval is had, if
necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    <u>Exclusivity</u>. By execution of this Contract, Sellers acknowledge their interest in the sale
of the Condominium Property to Buyer.

27.    <u>Entire Agreement</u>.    This Contract contains the entire understanding between the parties
and supersedes any prior agreements between them. Buyer may incorporate additional units into
this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    <u>Counterparts</u>. This Contract may be executed in several counterparts, which shall be
treated as originals for all purposes, and all counterparts so executed shall constitute one
agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory
to the original or to the same counterpart. Copies shall be treated as originals.

29.    <u>Radon Gas</u>.    The following notice is incorporated into this Contract pursuant to the
requirements of the Florida Statutes:

      Radon Gas: Radon is a naturally occurring radioactive gas that, when it has
      accumulated in a building in sufficient quantities, may present health risks to



Sellers _____ Buyer _____

persons who are exposed to it over time.  Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida.  Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    <u>Saturday, Sunday and Legal Holiday.</u> If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

Todd A., Mikles, Managing Member

Date: November _____/_____ , 2017

SELLERS:

See "Schedule A".

DocuSigned by:

—8D6D102B2C1A446...

Jean Francois Filion

6060 Indian Creek Drive Unit #701
Miami Beach, FL 33140

11/7/2017

Sellers [_____Buyer_____

# Schedule A

Unit # 701

Owner Signature                                    Owner Signature

Jean Francois Filion

Address: 3021 chemin ste-therese, Carignan, Quebec, Canada, J3L2b4

E-Mail Address: jff@samguk.ca

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this "*Agreement*" or "*Contract*") is made this **1ST** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter "*Buyer*"), and the parties listed on the attached "Schedule A" (collectively referred to as "*Sellers*").

### WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the "*Condominium Property*").

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the "*Association*") is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    <u>Purchase and Sale</u>.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    <u>Price</u>.  The "*Purchase Price*" for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the "*Association's Units*")).

Sellers  Buyer

b.  $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.  $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.  $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.   Term of Contract.   This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.   Deposit.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.   Commencement Date. The Commencement Date is the first day on which all of the following have occurred:

a.   The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers                     Buyer

b.    The Association has executed this Contract and delivered a copy to Buyer; and

c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u>  The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers _____    Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    <u>Additional Conditions</u>.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the <u>allowed</u> claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers _____    Buyer _____

(f)     All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)     Sellers shall have complied with all of its obligations under this Contract.

(h)     The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)     This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.     Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____    Buyer _____

DocuSign Envelope ID: EB3B138E-9C49-47FC-AD8D-9473B6D2D3B0

6

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    <u>Title Evidence.</u>    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    <u>Closing Date.</u> Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "*Closing*")</u>. If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    <u>Closing Costs.</u> Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    <u>Delivery for Closing.</u> At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.

Sellers  Buyer

DocuSign Envelope ID: EB3B138E-9C49-47FC-AD8D-9173B6D2D3B0

7

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    <u>Representations and Warranties of Seller</u>.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    <u>Representations and Warranties of Buyer</u>.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.


Sellers _____    Buyer _____

DocuSign Envelope ID: EB3B138E-9C49-47FC-AD8D-9173B6D2D3B0

8

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    _Broker Fee._    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("_Broker_") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "_Broker Fee_"). The Association agrees to pay this Broker Fee at Closing.

19.    _Not Contingent on Building Permits_. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    _Possession_.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    _Governing Law_.    This Contract is governed by the laws of Florida.

22.    _Default_.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers.  The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages.  If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    _Notices_.  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:          the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com

Sellers _____    Buyer _____

BUYER:                    KINGFISHER ISLAND, INC.
                          2150 Palomar Airport Road, Suite 205
                          Carlsbad, CA 92011
                          Attn: Todd Mikles

With a copy to:           Inger M. Garcia, Esq.
                          4839 Volunteer Road, Suite 514
                          Davie, Florida 33330
                          Email: attorney@ingergarcia.com
              and
                          Brett Lieberman, Esq.
                          401 East Las Olas Boulevard, Suite 1400
                          Fort Lauderdale, Florida 33301
                          Email: blieberman@messana-law.com
              and
                          Adam T. Kent, Esq.
                          895 Dove Street, Suite 300
                          Newport Beach, CA 92663
                          Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

    Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to



DocuSign Envelope ID: EB3B138E-9C49-47FC-AD8D-9173B6D2D3B0

10

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November _____ /_____ , 2017


SELLERS:

See "Schedule A".


Zakhia Oueis

6060 Indian Creek Drive Unit # 703
Miami Beach, FL 33140

11/8/2017


Sellers _____  Buyer _____

# Schedule A

Unit # 703

DocuSigned by:

*Zakhia Oueis*

B6D4F415157C483...

Owner Signature                              Owner Signature

Zakhia Oueis

**Address:** 296 (1) 76th avenue laval Quebec H7V2Z7

**E-Mail Address:** zoueis@hotmail.com

Unit #705 #804

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ST** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

### WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    Purchase and Sale.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    Price.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _____    Buyer _____

DocuSign Envelope ID: D74520C4-8B1B-44B0-A607-FEEED2AA8B0D

2

b.     $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.     $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.     $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.     Term of Contract.     This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.     Deposit.     Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.     Commencement Date. The Commencement Date is the first day on which all of the following have occurred:

a.     The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____    Buyer _____

   b.    The Association has executed this Contract and delivered a copy to Buyer; and

   c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.   <u>Right of First Refusal.</u> The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.   <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will

Sellers  Buyer

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.        The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers _____    Buyer _____

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____    Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs.  Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing.  At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers _____    Buyer _____

(f)     Closing Statement.

(g)     All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.     Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.     Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.     Representations and Warranties of Seller.   Sellers represent and warrant to Buyer the following:

(a)     As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)     Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)     There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.     Representations and Warranties of Buyer.   Buyer represents and warrants to Sellers the following:

(a)     Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers _____   Buyer _____

(b)     There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    _Broker Fee._     Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    _Not Contingent on Building Permits_. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    _Possession._     Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    _Governing Law._     This Contract is governed by the laws of Florida.

22.    _Default._     If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages.  If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    _Notices._  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

    SELLERS:        the Notice Party is:

                    Inger M. Garcia, Esq.
                    4839 Volunteer Road, Suite 514
                    Davie, Florida 33330
                    Email: attorney@ingergarcia.com

        and

                    Brett Lieberman, Esq.
                    401 East Las Olas Boulevard, Suite 1400
                    Fort Lauderdale, Florida 33301
                    Email: blieberman@messana-law.com

Sellers _RV_     Buyer _[signature]_

BUYER:              KINGFISHER ISLAND, INC.
                    2150 Palomar Airport Road, Suite 205
                    Carlsbad, CA 92011
                    Attn: Todd Mikles

With a copy to:     Inger M. Garcia, Esq.
                    4839 Volunteer Road, Suite 514
                    Davie, Florida 33330
                    Email: attorney@ingergarcia.com

            and
                    Brett Lieberman, Esq.
                    401 East Las Olas Boulevard, Suite 1400
                    Fort Lauderdale, Florida 33301
                    Email: blieberman@messana-law.com

            and
                    Adam T. Kent, Esq.
                    895 Dove Street, Suite 300
                    Newport Beach, CA 92663
                    Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract.  Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart.  Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

        Radon Gas: Radon is a naturally occurring radioactive gas that, when it has
        accumulated in a building in sufficient quantities, may present health risks to

Sellers _____    Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

Todd A., Mikles, Managing Member

Date: November ___/___, 2017

SELLERS:

See "Schedule A".

Richard Vasquez
F9DA5123BD894E6...

Richard Vasquez

11/09/2017

Sellers ___RV___    Buyer ___TC___

DocuSign Envelope ID: D74520C4-8B1B-44B0-A607-FFEED2AA8B0D

Schedule A

Unit # 705,804

*Richard Vasquez*

DocuSigned by:

F9DA5123BD894E6...

Owner Signature                                        Owner Signature

Address: 3400 Galt ocean Drive.Ft lauderdale FL 33308

E-Mail Address: djrichardvasquez@gmail.com

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ST** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

### WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    <u>Purchase and Sale</u>.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    <u>Price</u>.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers ___IM___    Buyer ___

b.      $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.      $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.      $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.      <u>Term of Contract</u>.      This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.      <u>Deposit</u>.      Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.      <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.      The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;


Sellers ___ Buyer ___

b.    The Association has executed this Contract and delivered a copy to Buyer; and

c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u> The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers ___    Buyer ___

DocuSign Envelope ID: 98B101E1-ADE4-4A46-BE2F-A040B658E6D4

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers ____    Buyer ____

(f)     All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)     Sellers shall have complied with all of its obligations under this Contract.

(h)     The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)     This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.     Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid.  If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing.  Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*").  In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____    Buyer _____

6

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs. Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing.  At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers ___    Buyer ___

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _____    Buyer _____

(b)      There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    Broker Fee.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    Possession.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    Governing Law.      This Contract is governed by the laws of Florida.

22.    Default.      If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages.  If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    Notices.  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

      SELLERS:          the Notice Party is:

                                 Inger M. Garcia, Esq.
                                 4839 Volunteer Road, Suite 514
                                 Davie, Florida 33330
                                 Email: attorney@ingergarcia.com

        and

                                 Brett Lieberman, Esq.
                                 401 East Las Olas Boulevard, Suite 1400
                                 Fort Lauderdale, Florida 33301
                                 Email: blieberman@messana-law.com

Sellers ___    Buyer ___

BUYER:            KINGFISHER ISLAND, INC.
                  2150 Palomar Airport Road, Suite 205
                  Carlsbad, CA 92011
                  Attn: Todd Mikles

With a copy to:   Inger M. Garcia, Esq.
                  4839 Volunteer Road, Suite 514
                  Davie, Florida 33330
                  Email: attorney@ingergarcia.com
        and
                  Brett Lieberman, Esq.
                  401 East Las Olas Boulevard, Suite 1400
                  Fort Lauderdale, Florida 33301
                  Email: blieberman@messana-law.com
        and
                  Adam T. Kent, Esq.
                  895 Dove Street, Suite 300
                  Newport Beach, CA 92663
                  Email: adam@propartnersgroup.com

24.   Successors.   This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.   Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract.   Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.   Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.   Entire Agreement.   This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.   Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart.  Copies shall be treated as originals.

29.   Radon Gas.   The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

        Radon Gas: Radon is a naturally occurring radioactive gas that, when it has
        accumulated in a building in sufficient quantities, may present health risks to

Sellers IM _____    Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

Todd A., Mikles, Managing Member

Date: November _____ , 2017

SELLERS:

See "Schedule A".

DocuSigned by:

Ivan Mahana

BC9CC64607F146B...

Ivan Mahana

6060 Indian Creek Drive Unit #
Miami Beach, FL 33140

11/7/2017

Sellers [ IM ]    Buyer

# Schedule A

## Unit # 707

DocuSigned by:

*Ivan Mahana*

BC9CC64607F146B...

## Owner Signature                    Owner Signature

Ivan Mahana

## Address: Kennedy 5757 Of.1601. Las Condes Santiago. Chile

## E-Mail Address: imahana@isudamericana.com

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1 st** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    Purchase and Sale.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights. This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS. No personal property is included with this sale.

2.    Price.    The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _____    Buyer _____

b.  $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.  $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.  $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.  <u>Term of Contract</u>.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.  <u>Deposit</u>.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.  <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.  The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____    Buyer _____

    b.    The Association has executed this Contract and delivered a copy to Buyer; and

    c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u>  The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will


Sellers _____  Buyer _____

DocuSign Envelope ID: B7792789-84E7-4ECD-86C6-F4EF9612C81C

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.
(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    <u>Additional Conditions</u>.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the <u>allowed</u> claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers _____    Buyer _____

DocuSign Envelope ID: B7792789-84E7-4ECD-86C6-F4EF9612C81C

5

(f)     All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)     Sellers shall have complied with all of its obligations under this Contract.

(h)     The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)     This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.     Title Commitment.   Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____    Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    _Title Evidence._    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    _Closing Date._ Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "_Closing_"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    _Closing Costs._ Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    _Delivery for Closing._ At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.

Sellers  Buyer

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _____    Buyer _____

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    _Broker Fee_.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("_Broker_") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "_Broker Fee_"). The Association agrees to pay this Broker Fee at Closing.

19.    _Not Contingent on Building Permits_. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    _Possession_.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    _Governing Law_.    This Contract is governed by the laws of Florida.

22.    _Default_.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    _Notices_.  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

    SELLERS:        the Notice Party is:

                Inger M. Garcia, Esq.
                4839 Volunteer Road, Suite 514
                Davie, Florida 33330
                Email: attorney@ingergarcia.com

        and

                Brett Lieberman, Esq.
                401 East Las Olas Boulevard, Suite 1400
                Fort Lauderdale, Florida 33301
                Email: blieberman@messana-law.com



Sellers _____    Buyer _____

BUYER:                KINGFISHER ISLAND, INC.
                      2150 Palomar Airport Road, Suite 205
                      Carlsbad, CA 92011
                      Attn: Todd Mikles

With a copy to:       Inger M. Garcia, Esq.
                      4839 Volunteer Road, Suite 514
                      Davie, Florida 33330
                      Email: attorney@ingergarcia.com
             and
                      Brett Lieberman, Esq.
                      401 East Las Olas Boulevard, Suite 1400
                      Fort Lauderdale, Florida 33301
                      Email: blieberman@messana-law.com
             and
                      Adam T. Kent, Esq.
                      895 Dove Street, Suite 300
                      Newport Beach, CA 92663
                      Email: adam@propartnersgroup.com

24.   <u>Successors</u>.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.   <u>Assignability</u>. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract.   Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.   <u>Exclusivity</u>. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.   <u>Entire Agreement</u>.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.   <u>Counterparts</u>. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.   <u>Radon Gas</u>.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

> Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to



Sellers _____    Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

Todd A., Mikles, Managing Member

Date: November ___/___, 2017

SELLERS:

See "Schedule A".

DocuSigned by:

9E001C1F8E89481...

Elsa Bravo

6060 Indian Creek Drive Unit #
Miami Beach, FL 33140

11/7/2017

Sellers ___    Buyer ___

# Schedule A

## Unit # 708

DocuSigned by:

9E001C1F8E89481...

## Owner Signature

Elsa Bravo

## Owner Signature

**Address:** 100 Lincoln rd * 425 Miami Beach fl. 33139

**E-Mail Address:** elsacecchi@hotmail.com

DocuSign Envelope ID: D74520C4-8B1B-44B0-A607-FEEED2AA8B0D

Unit #705 #804

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this 1ST day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

### WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    Purchase and Sale.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    Price.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _____    Buyer _____

DocuSign Envelope ID: D74520C4-8B1B-44B0-A607-FEEED2AA8B0D

2

b.  $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.  $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.  $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.  <u>Term of Contract.</u>   This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.  <u>Deposit.</u>   Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.  <u>Commencement Date.</u> The Commencement Date is the first day on which all of the following have occurred:

a.  The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____   Buyer _____

b.    The Association has executed this Contract and delivered a copy to Buyer; and

c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u>  The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers [__KV__]    Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.
(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.        The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers   Buyer

(f)     All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)     Sellers shall have complied with all of its obligations under this Contract.

(h)     The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)     This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.     Title Commitment.     Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____    Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.   _Title Evidence._      At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.   _Closing Date._ Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "_Closing_"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.   _Closing Costs._ Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.   _Delivery for Closing._ At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers _____    Buyer _____

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    Representations and Warranties of Seller.  Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    Representations and Warranties of Buyer.  Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers [RV]    Buyer [signature]

(b)     There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.     Broker Fee.     Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.     Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.     Possession.     Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.     Governing Law.     This Contract is governed by the laws of Florida.

22.     Default.     If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.     Notices. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:          the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com

Sellers _____     Buyer _____

BUYER:                  KINGFISHER ISLAND, INC.
                        2150 Palomar Airport Road, Suite 205
                        Carlsbad, CA 92011
                        Attn: Todd Mikles

With a copy to:         Inger M. Garcia, Esq.
                        4839 Volunteer Road, Suite 514
                        Davie, Florida 33330
                        Email: attorney@ingergarcia.com
            and
                        Brett Lieberman, Esq.
                        401 East Las Olas Boulevard, Suite 1400
                        Fort Lauderdale, Florida 33301
                        Email: blieberman@messana-law.com
            and
                        Adam T. Kent, Esq.
                        895 Dove Street, Suite 300
                        Newport Beach, CA 92663
                        Email: adam@propartnersgroup.com

24.   Successors.   This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.   Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract.   Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.   Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.   Entire Agreement.   This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.   Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart.  Copies shall be treated as originals.

29.   Radon Gas.   The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

      Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to

Sellers  RV        Buyer

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation



Todd A., Mikles, Managing Member

Date: November ____/____, 2017

SELLERS:

See "Schedule A".

DocuSigned by:
Richard Vasquez
F9DA5123BD894E6...

Richard Vasquez

11/09/2017

Sellers ___DS___ RV    Buyer ___TC___

Schedule A

Unit #  705,804

DocuSigned by:

*Richard Vasquez*

F9DA5123BD894E6...

Owner Signature                              Owner Signature

Address: 3400 Galt ocean Drive.Ft lauderdale FL 33308

E-Mail Address:  djrichardvasquez@gmail.com

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ST** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.     Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.     Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.     The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.     The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.     <u>Purchase and Sale</u>.     Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.   This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.     <u>Price</u>.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.     $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _ACB_     Buyer _____

b.    $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.    $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.    $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.    <u>Term of Contract</u>.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.    <u>Deposit</u>.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.    <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.    The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _ACB_    Buyer

    b.    The Association has executed this Contract and delivered a copy to Buyer; and

    c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u>  The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period.</u>  The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will


Sellers _ACB_    Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    <u>Additional Conditions</u>.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the <u>allowed</u> claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers ACB        Buyer JM

(f)     All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)     Sellers shall have complied with all of its obligations under this Contract.

(h)     The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)     This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.     Title Commitment.     Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid.  If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing.  Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*").  In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _ACB_          Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs.    Each party shall pay its own customary closing costs.   For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing.  At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers __ACB__    Buyer _____

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    <u>Representations and Warranties of Seller</u>.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    <u>Representations and Warranties of Buyer</u>.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _____    Buyer _____

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    _Broker Fee._    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("_Broker_") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "_Broker Fee_"). The Association agrees to pay this Broker Fee at Closing.

19.    _Not Contingent on Building Permits_. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    _Possession._    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    _Governing Law._    This Contract is governed by the laws of Florida.

22.    _Default._    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages.  If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    _Notices._  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:          the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com

Sellers _ACB_    Buyer _[signature]_

BUYER:              KINGFISHER ISLAND, INC.
                    2150 Palomar Airport Road, Suite 205
                    Carlsbad, CA 92011
                    Attn: Todd Mikles

With a copy to:     Inger M. Garcia, Esq.
                    4839 Volunteer Road, Suite 514
                    Davie, Florida 33330
                    Email: attorney@ingergarcia.com
            and
                    Brett Lieberman, Esq.
                    401 East Las Olas Boulevard, Suite 1400
                    Fort Lauderdale, Florida 33301
                    Email: blieberman@messana-law.com
            and
                    Adam T. Kent, Esq.
                    895 Dove Street, Suite 300
                    Newport Beach, CA 92663
                    Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

> Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to

Sellers _ACB_    Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November ____1____, 2017


SELLERS:

See "Schedule A".


DocuSigned by:

Ana Cristina Braathen
F218C473E24F43C...

Ana Cristina Braathen

6060 Indian Creek Drive Unit #805
Miami Beach, FL 33140

11/7/2017


Sellers | ACB      Buyer | TC

# Schedule A

## Unit # 805

DocuSigned by:

*Ana Cristina Braathen*

F218C473E24F43C...

## Owner Signature                           Owner Signature

Ana Cristina Braathen

**Address:** rua gaviao peixoto 323/ 104, icarai, niteroi, rj, brasil

**E-Mail Address:** ananordeste@gmail.com

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1st** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

### WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    <u>Purchase and Sale</u>.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights. This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS. No personal property is included with this sale.

2.    <u>Price</u>.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _____ Buyer _____

b.  $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.  $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.  $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.  <u>Term of Contract.</u>    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.  <u>Deposit.</u>    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.  <u>Commencement Date.</u> The Commencement Date is the first day on which all of the following have occurred:

a.  The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____  Buyer _____

b. The Association has executed this Contract and delivered a copy to Buyer; and

c. The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6. <u>Right of First Refusal.</u> The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7. <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers _____    Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers _____ Buyer _____

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____ Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    <u>Title Evidence.</u>        At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    <u>Closing Date.</u> Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "*Closing*").</u> If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    <u>Closing Costs.</u> Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    <u>Delivery for Closing.</u> At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers _____    Buyer _____

DocuSign Envelope ID: E28CF1B4-AFBD-4237-B986-59174AED1269

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    <u>Representations and Warranties of Seller</u>.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    <u>Representations and Warranties of Buyer</u>.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _____    Buyer _____

DocuSign Envelope ID: E28CF1B4-AFBD-4237-B986-59174AED1269

8

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    _Broker Fee._    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("_Broker_") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "_Broker Fee_"). The Association agrees to pay this Broker Fee at Closing.

19.    _Not Contingent on Building Permits._ This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    _Possession._    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    _Governing Law._    This Contract is governed by the laws of Florida.

22.    _Default._    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    _Notices._  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:          the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com

Sellers _____  Buyer _____

BUYER:                KINGFISHER ISLAND, INC.
                      2150 Palomar Airport Road, Suite 205
                      Carlsbad, CA 92011
                      Attn: Todd Mikles

With a copy to:       Inger M. Garcia, Esq.
                      4839 Volunteer Road, Suite 514
                      Davie, Florida 33330
                      Email: attorney@ingergarcia.com
            and
                      Brett Lieberman, Esq.
                      401 East Las Olas Boulevard, Suite 1400
                      Fort Lauderdale, Florida 33301
                      Email: blieberman@messana-law.com
            and
                      Adam T. Kent, Esq.
                      895 Dove Street, Suite 300
                      Newport Beach, CA 92663
                      Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties
hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the
property. As a result, the purchasing entity at Closing may be different than the Buyer named in
this Contract.   Therefore, Buyer has the right to assign this Contract without Sellers' prior
consent, so long as all conditions remain the same otherwise, and the Court approval is had, if
necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale
of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties
and supersedes any prior agreements between them. Buyer may incorporate additional units into
this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be
treated as originals for all purposes, and all counterparts so executed shall constitute one
agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory
to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the
requirements of the Florida Statutes:

        Radon Gas: Radon is a naturally occurring radioactive gas that, when it has
        accumulated in a building in sufficient quantities, may present health risks to

Sellers [signature] Buyer [signature]

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

Todd A., Mikles, Managing Member

Date: November _____/_____, 2017

SELLERS:

See "Schedule A".

DocuSigned by:

5EFA4468C18447D...

Name: 806

11/8/2017

Sellers _____    Buyer _____

Schedule A

**Unit #** 806

Owner Signature

Owner Signature

Name:Marisol RODRIGUEZ Basulto

Address: 14160 nw 77th court suite 22 Miami Lakes, Florida 33016

E-Mail Address: Mrblaw@basulto.com

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ˢᵗ** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.      Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.      Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.      The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.      The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.      <u>Purchase and Sale</u>.      Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.      <u>Price</u>.  The *"Purchase Price"* for the Condominium Property shall be as follows:

   a.      $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).



Sellers _C Z_    Buyer

b.  $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.  $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.  $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.  <u>Term of Contract.</u>    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.  <u>Deposit.</u>    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.  <u>Commencement Date.</u> The Commencement Date is the first day on which all of the following have occurred:

a.  The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _CZ_    Buyer _____

b.    The Association has executed this Contract and delivered a copy to Buyer; and

c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u>  The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers _CZ_    Buyer _JM_

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8. <u>Additional Conditions</u>.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the <u>allowed</u> claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers _____    Buyer _____

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "Title Company"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("Preliminary Commitment") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment.  Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "Title Review Period"). Buyer, at Buyer's option, may obtain a survey ("Survey") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid.  If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing.  Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "Extended Closing Date").  In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____  Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date.  Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded.  The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs.  Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing.  At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.


Sellers     CZ     Buyer

DocuSign Envelope ID: FE6F77C7-AE1D-48C0-A266-FE6201314EAF

7

(f)     Closing Statement.

(g)     All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.     Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.     Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.     Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)     As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)     Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)     There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.     Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)     Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers C Z   Buyer

DocuSign Envelope ID: FE6F77C7-AE1D-48C0-A266-FE62013314EAF

8

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    <u>Broker Fee</u>.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    <u>Not Contingent on Building Permits</u>. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    <u>Possession</u>.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    <u>Governing Law</u>.    This Contract is governed by the laws of Florida.

22.    <u>Default</u>.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    <u>Notices</u>.  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

> SELLERS:          the Notice Party is:
>
> Inger M. Garcia, Esq.
> 4839 Volunteer Road, Suite 514
> Davie, Florida 33330
> Email: attorney@ingergarcia.com
>
> and
>
> Brett Lieberman, Esq.
> 401 East Las Olas Boulevard, Suite 1400
> Fort Lauderdale, Florida 33301
> Email: blieberman@messana-law.com


Sellers ___  Buyer ___

BUYER:            KINGFISHER ISLAND, INC.
                 2150 Palomar Airport Road, Suite 205
                 Carlsbad, CA 92011
                 Attn: Todd Mikles

With a copy to:  Inger M. Garcia, Esq.
                 4839 Volunteer Road, Suite 514
                 Davie, Florida 33330
                 Email: attorney@ingergarcia.com

        and

                 Brett Lieberman, Esq.
                 401 East Las Olas Boulevard, Suite 1400
                 Fort Lauderdale, Florida 33301
                 Email: blieberman@messana-law.com

        and

                 Adam T. Kent, Esq.
                 895 Dove Street, Suite 300
                 Newport Beach, CA 92663
                 Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability.  It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract.  Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity.  By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts.  This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart.  Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

        Radon Gas: Radon is a naturally occurring radioactive gas that, when it has
        accumulated in a building in sufficient quantities, may present health risks to

Sellers   Buyer

persons who are exposed to it over time.  Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida.  Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    <u>Saturday, Sunday and Legal Holiday</u>. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November _____ 1 _____, 2017


SELLERS:

See "Schedule A".

Cecilia N Zsilavi

6060 Indian Creek Drive Unit #
Miami Beach, FL 33140

11/8/2017


Sellers _____ C Z  Buyer _____

# Schedule A

## Unit # 807

DocuSigned by:

*[signature]*

CAE4012334844F...

## Owner Signature

Cecilia N Zsilavi

## Owner Signature

## Address: 6365 collins av apt1711

## E-Mail Address: Ceciliazsilavi @hotmail.com

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ˢᵗ** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    Purchase and Sale.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    Price.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _FJ/RB_    Buyer _____

b.    $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.    $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.    $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.    <u>Term of Contract</u>.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.    <u>Deposit</u>.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.    <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.    The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _FJRB_    Buyer

b.   The Association has executed this Contract and delivered a copy to Buyer; and

c.   The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.   <u>Right of First Refusal.</u> The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.   <u>Due Diligence Period.</u> The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers _PJ/RB_    Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers FJRB    Buyer 

5

(f)      All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)      Sellers shall have complied with all of its obligations under this Contract.

(h)      The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)      This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.      Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _FJ/RB_      Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs. Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers F JIRB    Buyer

(f)     Closing Statement.

(g)     All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.     <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.     <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.     <u>Representations and Warranties of Seller</u>.     Sellers represent and warrant to Buyer the following:

(a)     As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)     Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)     There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.     <u>Representations and Warranties of Buyer</u>.     Buyer represents and warrants to Sellers the following:

(a)     Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _____    Buyer _____

(b)     There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.     <u>Broker Fee</u>.     Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.     <u>Not Contingent on Building Permits</u>. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.     <u>Possession</u>.     Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.     <u>Governing Law</u>.     This Contract is governed by the laws of Florida.

22.     <u>Default</u>.     If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.     <u>Notices</u>.  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

      SELLERS:          the Notice Party is:

                          Inger M. Garcia, Esq.
                          4839 Volunteer Road, Suite 514
                          Davie, Florida 33330
                          Email: attorney@ingergarcia.com

          and

                          Brett Lieberman, Esq.
                          401 East Las Olas Boulevard, Suite 1400
                          Fort Lauderdale, Florida 33301
                          Email: blieberman@messana-law.com



Sellers _FJRB_    Buyer ____

BUYER:                KINGFISHER ISLAND, INC.
                      2150 Palomar Airport Road, Suite 205
                      Carlsbad, CA 92011
                      Attn: Todd Mikles

With a copy to:       Inger M. Garcia, Esq.
                      4839 Volunteer Road, Suite 514
                      Davie, Florida 33330
                      Email: attorney@ingergarcia.com
              and
                      Brett Lieberman, Esq.
                      401 East Las Olas Boulevard, Suite 1400
                      Fort Lauderdale, Florida 33301
                      Email: blieberman@messana-law.com
              and
                      Adam T. Kent, Esq.
                      895 Dove Street, Suite 300
                      Newport Beach, CA 92663
                      Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract.    Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

       Radon Gas: Radon is a naturally occurring radioactive gas that, when it has
       accumulated in a building in sufficient quantities, may present health risks to



Sellers F JIRB    Buyer

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    <u>Saturday, Sunday and Legal Holiday.</u> If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

_____
Todd A., Mikles, Managing Member

Date: November ____/____, 2017

SELLERS:

See "Schedule A".

DocuSigned by:
*Frank Jordan/Ralf Bauchrowitz*
C777D1F82E184D0...

Frank Jordan/Ralf Bauchrowitz

6060 Indian Creek Drive Unit #902/#1001/#1203
Miami Beach, FL 33140

11/8/2017

Sellers  FJ/RB    Buyer  TC

# Schedule A

## Unit # 902/#1001/#1203

DocuSigned by:

*Frank Jordan/Ralf Bauchrowitz*

C777D1F82E184D0...

## Owner Signature                    Owner Signature

Frank Jordan/Ralf Bauchrowitz

## Address: Bruehlstrasse 34, 65606 Villar, Hessen, Germany

## E-Mail Address: ralfbauchrowitz@aol.com

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this "*Agreement*" or "*Contract*") is made this **1ST** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter "*Buyer*"), and the parties listed on the attached "Schedule A" (collectively referred to as "*Sellers*").

## WHEREAS

A.     Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the "*Condominium Property*").

B.     Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.     The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.     The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the "*Association*") is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.     Purchase and Sale.     Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.     Price.  The "*Purchase Price*" for the Condominium Property shall be as follows:

a.     $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the "*Association's Units*")).

Sellers M†V    Buyer _____

2

    b.    $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

    c.    $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

    d.    $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.    <u>Term of Contract</u>.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.    <u>Deposit</u>.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.    <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

    a.    The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers    Buyer

b.  The Association has executed this Contract and delivered a copy to Buyer; and

c.  The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.  Right of First Refusal. The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.  Due Diligence Period. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers __MᴛV__    Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    <u>Additional Conditions</u>.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the <u>allowed</u> claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers M↑V     Buyer

(f)     All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)     Sellers shall have complied with all of its obligations under this Contract.

(h)     The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)     This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.     Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "Title Company"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("Preliminary Commitment") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "Title Review Period"). Buyer, at Buyer's option, may obtain a survey ("Survey") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "Extended Closing Date"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the

Sellers  Buyer

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    <u>Title Evidence</u>.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    <u>Closing Date</u>. Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "*Closing*")</u>. If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    <u>Closing Costs</u>. Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    <u>Delivery for Closing</u>. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers ___MTV___    Buyer ___

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers M↑V    Buyer

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    _Broker Fee._    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("_Broker_") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "_Broker Fee_"). The Association agrees to pay this Broker Fee at Closing.

19.    _Not Contingent on Building Permits._ This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    _Possession._    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    _Governing Law._    This Contract is governed by the laws of Florida.

22.    _Default._    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    _Notices._ All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:            the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com



BUYER:            KINGFISHER ISLAND, INC.
                  2150 Palomar Airport Road, Suite 205
                  Carlsbad, CA 92011
                  Attn: Todd Mikles

With a copy to:   Inger M. Garcia, Esq.
                  4839 Volunteer Road, Suite 514
                  Davie, Florida 33330
                  Email: attorney@ingergarcia.com
          and
                  Brett Lieberman, Esq.
                  401 East Las Olas Boulevard, Suite 1400
                  Fort Lauderdale, Florida 33301
                  Email: blieberman@messana-law.com
          and
                  Adam T. Kent, Esq.
                  895 Dove Street, Suite 300
                  Newport Beach, CA 92663
                  Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability.    It is anticipated Buyer may enter a partnership for the development of the property.  As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract.  Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity.    By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts.    This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart.  Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

> Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to



Sellers MTV _____    Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation



Todd A., Mikles, Managing Member

Date: November ____/____, 2017

SELLERS:

See "Schedule A".

DocuSigned by:

Maria T Velez
—618E25DD2737453...

Maria T Velez

6060 Indian Creek Drive Unit #903
Miami Beach, FL 33140

11/7/2017

Sellers ___MtV___    Buyer ___HC___

# Schedule A

## Unit # 903

DocuSigned by:

*Maria T Velez*

618E25DD2737453...

## Owner Signature                          Owner Signature

Maria T Velez

## Address: 17301 BISCAYNE BLVD. #2209 NORTH MIAMI BEACH FL 33160

## E-Mail Address: VELEZMARIA@HOTMAIL.COM

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1st** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

### WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    Purchase and Sale.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    Price.  The *"Purchase Price"* for the Condominium Property shall be as follows:

   a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers MtV    Buyer _____

b.  $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.  $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.  $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.  <u>Term of Contract</u>.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.  <u>Deposit</u>.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.  <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.  The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers MTV      Buyer

b.    The Association has executed this Contract and delivered a copy to Buyer; and

c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u> The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period.</u> The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers ___MtV___    Buyer _____

DocuSign Envelope ID: 77829D78-82E7-4350-8155-8B6591B2B40E

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.        The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers MTV    Buyer

(f)     All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)     Sellers shall have complied with all of its obligations under this Contract.

(h)     The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)     This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.     Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers MtV _____    Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    <u>Title Evidence.</u>        At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    <u>Closing Date.</u> Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing")</u>. If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    <u>Closing Costs.</u> Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    <u>Delivery for Closing.</u> At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers ___MTV___    Buyer ___

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers MTV        Buyer

(b)     There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    Broker Fee.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    Possession.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    Governing Law.      This Contract is governed by the laws of Florida.

22.    Default.      If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages.  If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    Notices.  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

> SELLERS:          the Notice Party is:
>
> Inger M. Garcia, Esq.
> 4839 Volunteer Road, Suite 514
> Davie, Florida 33330
> Email: attorney@ingergarcia.com
>
> and
>
> Brett Lieberman, Esq.
> 401 East Las Olas Boulevard, Suite 1400
> Fort Lauderdale, Florida 33301
> Email: blieberman@messana-law.com



BUYER:              KINGFISHER ISLAND, INC.
                    2150 Palomar Airport Road, Suite 205
                    Carlsbad, CA 92011
                    Attn: Todd Mikles

With a copy to:     Inger M. Garcia, Esq.
                    4839 Volunteer Road, Suite 514
                    Davie, Florida 33330
                    Email: attorney@ingergarcia.com

              and

                    Brett Lieberman, Esq.
                    401 East Las Olas Boulevard, Suite 1400
                    Fort Lauderdale, Florida 33301
                    Email: blieberman@messana-law.com

              and

                    Adam T. Kent, Esq.
                    895 Dove Street, Suite 300
                    Newport Beach, CA 92663
                    Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

         Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to

Sellers  Buyer

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    <u>Saturday, Sunday and Legal Holiday</u>. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation



Todd A., Mikles, Managing Member

Date: November ____1____, 2017

SELLERS:

See "Schedule A".

DocuSigned by:

*Maria T Velez*

618E25DD2737453...

Maria T Velez

6060 Indian Creek Drive Unit #903
Miami Beach, FL 33140

11/7/2017

Sellers [ DS MtV ]    Buyer ____

# Schedule A

Unit # 903

DocuSigned by:

*Maria T Velez*

618E25DD2737453...

## Owner Signature                              Owner Signature

Maria T Velez

Address: 17301 BISCAYNE BLVD. #2209 NORTH MIAMI BEACH FL 33160

E-Mail Address: VELEZMARIA@HOTMAIL.COM

DocuSign Envelope ID: 8686A685-DC8F-4E33-ADEA-C85EC25ACE1E

908

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ST** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    <u>Purchase and Sale</u>.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    <u>Price</u>.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _FL_    Buyer _____

b.    $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.    $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.    $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.    <u>Term of Contract</u>.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.    <u>Deposit</u>.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.    <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.    The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____    Buyer _____

b.    The Association has executed this Contract and delivered a copy to Buyer; and

c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u> The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period.</u> The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers _____    Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers  Buyer

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    _Title Commitment._    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the

Sellers  Buyer

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    <u>Title Evidence</u>.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    <u>Closing Date</u>. Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "*Closing*")</u>. If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    <u>Closing Costs</u>. Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    <u>Delivery for Closing</u>. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers _FL_    Buyer _____

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    <u>Representations and Warranties of Seller</u>.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    <u>Representations and Warranties of Buyer</u>.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _____    Buyer _____

(b)      There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    Broker Fee.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    Possession.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    Governing Law.      This Contract is governed by the laws of Florida.

22.    Default.      If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    Notices. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:          the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com

Sellers _____    Buyer _____

BUYER:               KINGFISHER ISLAND, INC.
                     2150 Palomar Airport Road, Suite 205
                     Carlsbad, CA 92011
                     Attn: Todd Mikles

With a copy to:      Inger M. Garcia, Esq.
                     4839 Volunteer Road, Suite 514
                     Davie, Florida 33330
                     Email: attorney@ingergarcia.com
             and
                     Brett Lieberman, Esq.
                     401 East Las Olas Boulevard, Suite 1400
                     Fort Lauderdale, Florida 33301
                     Email: blieberman@messana-law.com
             and
                     Adam T. Kent, Esq.
                     895 Dove Street, Suite 300
                     Newport Beach, CA 92663
                     Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

> Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to



Sellers _FL_____    Buyer _____

10

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.   <u>Invalid Provision.</u>   If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.   <u>Saturday, Sunday and Legal Holiday.</u> If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


_____
Todd A., Mikles, Managing Member

Date: November _____ / _____, 2017


SELLERS:

See "Schedule A".


Flavia Campero
0E2769EB8CF9451...

Flavia Campero

6060 Indian Creek Drive Unit #908
Miami Beach, FL 33140

11/8/2017


Sellers   FC        Buyer   HC

# Schedule A

Unit # 908

DocuSigned by:

*Flavia Campero*

0E2769EB8CF9451...

## Owner Signature                    Owner Signature

Flavia Campero

**Address:** 9341 collins ave 1201, surfside fl 33154


**E-Mail Address:** Flaviaicc@hotmail.com

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this 1st day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

### WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    Purchase and Sale.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.    This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    Price.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _FJ/RB_    Buyer _____

b.  $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.  $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.  $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.  <u>Term of Contract</u>.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.  <u>Deposit</u>.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.  <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.  The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _FJIRB_    Buyer

b.    The Association has executed this Contract and delivered a copy to Buyer; and

c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u> The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers FJ/RB    Buyer

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.   Additional Conditions.        The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)     Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)     A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)     The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)     All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)     Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers  FJRB      Buyer

(f)     All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)     Sellers shall have complied with all of its obligations under this Contract.

(h)     The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)     This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.     Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the

Sellers  Buyer

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    <u>Title Evidence</u>.        At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    <u>Closing Date</u>. Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing")</u>. If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    <u>Closing Costs</u>. Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    <u>Delivery for Closing</u>. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.

Sellers  Buyer

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers FJRB    Buyer JM

(b)     There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    Broker Fee.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    Possession.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    Governing Law.    This Contract is governed by the laws of Florida.

22.    Default.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages.  If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    Notices.  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:          the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com



Sellers _____    Buyer _____

BUYER:                  KINGFISHER ISLAND, INC.
                        2150 Palomar Airport Road, Suite 205
                        Carlsbad, CA 92011
                        Attn: Todd Mikles

With a copy to:         Inger M. Garcia, Esq.
                        4839 Volunteer Road, Suite 514
                        Davie, Florida 33330
                        Email: attorney@ingergarcia.com
              and
                        Brett Lieberman, Esq.
                        401 East Las Olas Boulevard, Suite 1400
                        Fort Lauderdale, Florida 33301
                        Email: blieberman@messana-law.com
              and
                        Adam T. Kent, Esq.
                        895 Dove Street, Suite 300
                        Newport Beach, CA 92663
                        Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract.   Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart.  Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

    Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to

Sellers   Buyer

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

_____
Todd A., Mikles, Managing Member

Date: November ____/____, 2017

SELLERS:

See "Schedule A".

Frank Jordan/Ralf Bauchrowitz
C777D1F82E184D0...

Frank Jordan/Ralf Bauchrowitz

6060 Indian Creek Drive Unit #902/#1001/#1203
Miami Beach, FL 33140

11/8/2017

Sellers  FJ/RB    Buyer _____

# Schedule A

## Unit # 902/#1001/#1203

DocuSigned by:

*Frank Jordan/Ralf Bauchrowitz*

C777D1F82E184D0...

## Owner Signature                                    Owner Signature

Frank Jordan/Ralf Bauchrowitz

## Address: Bruehlstrasse 34, 65606 Villar, Hessen, Germany


## E-Mail Address: ralfbauchrowitz@aol.com

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ST** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.     Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.     Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.     The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.     The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.     Purchase and Sale.     Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.     Price.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.     $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _____  Buyer _____

b.  $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.  $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.  $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.  <u>Term of Contract.</u>   This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.  <u>Deposit.</u>   Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.  <u>Commencement Date.</u> The Commencement Date is the first day on which all of the following have occurred:

a.  The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____   Buyer _____

b.    The Association has executed this Contract and delivered a copy to Buyer; and

c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u>  The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers _____    Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers _____    Buyer _____

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the

Sellers     Buyer

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "*Closing*"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs. Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers _____    Buyer _____

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    <u>Representations and Warranties of Seller</u>.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    <u>Representations and Warranties of Buyer</u>.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _____    Buyer _____

(b)     There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.     _Broker Fee._     Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.     _Not Contingent on Building Permits._ This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.     _Possession._     Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.     _Governing Law._     This Contract is governed by the laws of Florida.

22.     _Default._     If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.     _Notices._  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

     SELLERS:          the Notice Party is:

                              Inger M. Garcia, Esq.
                              4839 Volunteer Road, Suite 514
                              Davie, Florida 33330
                              Email: attorney@ingergarcia.com

         and

                              Brett Lieberman, Esq.
                              401 East Las Olas Boulevard, Suite 1400
                              Fort Lauderdale, Florida 33301
                              Email: blieberman@messana-law.com

Sellers _RL_     Buyer _[signature]_

BUYER:                  KINGFISHER ISLAND, INC.
                        2150 Palomar Airport Road, Suite 205
                        Carlsbad, CA 92011
                        Attn: Todd Mikles

With a copy to:         Inger M. Garcia, Esq.
                        4839 Volunteer Road, Suite 514
                        Davie, Florida 33330
                        Email: attorney@ingergarcia.com
                and
                        Brett Lieberman, Esq.
                        401 East Las Olas Boulevard, Suite 1400
                        Fort Lauderdale, Florida 33301
                        Email: blieberman@messana-law.com
                and
                        Adam T. Kent, Esq.
                        895 Dove Street, Suite 300
                        Newport Beach, CA 92663
                        Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties
hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the
property. As a result, the purchasing entity at Closing may be different than the Buyer named in
this Contract.  Therefore, Buyer has the right to assign this Contract without Sellers' prior
consent, so long as all conditions remain the same otherwise, and the Court approval is had, if
necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale
of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties
and supersedes any prior agreements between them. Buyer may incorporate additional units into
this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be
treated as originals for all purposes, and all counterparts so executed shall constitute one
agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory
to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the
requirements of the Florida Statutes:

        Radon Gas: Radon is a naturally occurring radioactive gas that, when it has
        accumulated in a building in sufficient quantities, may present health risks to


Sellers _____ Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    <u>Saturday, Sunday and Legal Holiday</u>. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

Todd A., Mikles, Managing Member

Date: November _____ **1** , 2017

SELLERS:

See "Schedule A".

DocuSigned by:

268BF63E98684DD...

Roman Luis Malagon

6060 Indian Creek Drive Unit #
Miami Beach, FL 33140

11/7/2017

Sellers _____    Buyer _____

# Schedule A

## Unit # 1002

DocuSigned by:

268BF63E98684DD...

## Owner Signature

Roman Luis Malagon

## Owner Signature

**Address:** 9535 sw 187th st Cutler Bay, Fl 33157

**E-Mail Address:** malagonrl@hotmail.com

DocuSign Envelope ID: 52101670-ACAD-4B58-A035-0DE9575381A6
Unit #

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this "*Agreement*" or "*Contract*") is made this **1st** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter "*Buyer*"), and the parties listed on the attached "Schedule A" (collectively referred to as "*Sellers*").

### WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the "*Condominium Property*").

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the "*Association*") is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    Purchase and Sale.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    Price.  The "*Purchase Price*" for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the "*Association's Units*")).

Sellers _____    Buyer _____

DocuSign Envelope ID: 52101670-ACAD-4B58-A035-0DE9575381A6

2

b.    $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the "*Minimum Participation Requirement*") must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.    $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the "*Schecher Claim Amount*") at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.    $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.    Term of Contract.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.    Deposit.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the "*Initial Deposit*"), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the "*Bankruptcy Court*") approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the "*Escrow Agent*") with proof given to the Seller's attorneys and the title company (the "*Refundable Deposit*"); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the "*Second Non-Refundable Deposit*") The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the "*Deposits*" shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.    Commencement Date. The Commencement Date is the first day on which all of the following have occurred:

a.    The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;

Sellers _____    Buyer _____

DocuSign Envelope ID: 52101670-ACAD-4B58-A035-0DE9575381A6

3

    b.    The Association has executed this Contract and delivered a copy to Buyer; and

    c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u> The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period.</u> The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will

Sellers _____  Buyer _____

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the underlined claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers _____    Buyer _____

DocuSign Envelope ID: 52101670-ACAD-4B58-A035-0DE9575381A6

5

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    _Title Commitment._    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the

Sellers _____    Buyer _____

DocuSign Envelope ID: 52101670-ACAD-4B58-A035-0DE9575381A6

6

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs.    Each party shall pay its own customary closing costs.   For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing.  At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.

Sellers _____   Buyer _____

DocuSign Envelope ID: 52101670-ACAD-4B58-A035-0DE9575381A6

7

(f)     Closing Statement.

(g)     All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.     Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.     Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.     Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)     As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)     Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)     There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.     Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)     Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers _____    Buyer _____

DocuSign Envelope ID: 52101670-ACAD-4B58-A035-0DE9575381A6

8

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    <u>Broker Fee</u>.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    <u>Not Contingent on Building Permits</u>. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    <u>Possession</u>.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    <u>Governing Law</u>.    This Contract is governed by the laws of Florida.

22.    <u>Default</u>.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    <u>Notices</u>.  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

        SELLERS:    the Notice Party is:

                              Inger M. Garcia, Esq.
                              4839 Volunteer Road, Suite 514
                              Davie, Florida 33330
                              Email: attorney@ingergarcia.com

            and

                              Brett Lieberman, Esq.
                              401 East Las Olas Boulevard, Suite 1400
                              Fort Lauderdale, Florida 33301
                              Email: blieberman@messana-law.com

Sellers _____    Buyer _____

DocuSign Envelope ID: 52101670-ACAD-4B58-A035-0DE9575381A6

9

BUYER:                 KINGFISHER ISLAND, INC.
                       2150 Palomar Airport Road, Suite 205
                       Carlsbad, CA 92011
                       Attn: Todd Mikles

With a copy to:        Inger M. Garcia, Esq.
                       4839 Volunteer Road, Suite 514
                       Davie, Florida 33330
                       Email: attorney@ingergarcia.com
            and
                       Brett Lieberman, Esq.
                       401 East Las Olas Boulevard, Suite 1400
                       Fort Lauderdale, Florida 33301
                       Email: blieberman@messana-law.com
            and
                       Adam T. Kent, Esq.
                       895 Dove Street, Suite 300
                       Newport Beach, CA 92663
                       Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties
hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the
property.  As a result, the purchasing entity at Closing may be different than the Buyer named in
this Contract.   Therefore, Buyer has the right to assign this Contract without Sellers' prior
consent, so long as all conditions remain the same otherwise, and the Court approval is had, if
necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity.  By execution of this Contract, Sellers acknowledge their interest in the sale
of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties
and supersedes any prior agreements between them. Buyer may incorporate additional units into
this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be
treated as originals for all purposes, and all counterparts so executed shall constitute one
agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory
to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the
requirements of the Florida Statutes:

        Radon Gas:  Radon is a naturally occurring radioactive gas that, when it has
        accumulated in a building in sufficient quantities, may present health risks to

Sellers _____    Buyer _____

10

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.   Invalid Provision.   If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.   Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November ___/___ , 2017


SELLERS:

See "Schedule A".


Name:


Sellers _____   Buyer _____

DocuSign Envelope ID: 52101670-ACAD-4B58-A035-0DE9575381A6

Schedule A

Unit # _1 0 03_

Owner Signature                    Owner Signature

Name: _Jgdue Agrobae_

Address: _80 Park Ave #1L_
_New York, NY 10016_

E-Mail Address:

_ny SF 80 @ Yahoo. Com_

Unit #

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ST** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    <u>Purchase and Sale</u>.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    <u>Price</u>.  The *"Purchase Price"* for the Condominium Property shall be as follows:

   a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers **MNS**    Buyer

2

b.  $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.  $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.  $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.  <u>Term of Contract.</u>    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.  <u>Deposit.</u>    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.  <u>Commencement Date.</u> The Commencement Date is the first day on which all of the following have occurred:

a.  The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _MNS_____    Buyer _____

DocuSign Envelope ID: B5FF0450-A13E-43D7-8E6B-696DB591DB4E

3

    b.    The Association has executed this Contract and delivered a copy to Buyer; and

    c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u>  The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will


Sellers _MNS_    Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers MNS    Buyer

5

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "Title Company"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("Preliminary Commitment") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "Title Review Period"). Buyer, at Buyer's option, may obtain a survey ("Survey") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "Extended Closing Date"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers MNS    Buyer

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10. <u>Title Evidence.</u>     At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.     <u>Closing Date.</u> Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "*Closing*")</u>. If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.     <u>Closing Costs.</u>  Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.     <u>Delivery for Closing.</u>  At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)     Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)     Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)     Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)     FIRPTA affidavit.

(e)     Association estoppel letter or waiver.



Sellers  MMS     Buyer

DocuSign Envelope ID: B5FF0450-A13E-43D7-8E6B-696DB591DB4E

7

(f)     Closing Statement.

(g)     All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.     Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.     Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.     Representations and Warranties of Seller.     Sellers represent and warrant to Buyer the following:

(a)     As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)     Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)     There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.     Representations and Warranties of Buyer.     Buyer represents and warrants to Sellers the following:

(a)     Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _____MMS_____     Buyer _____JM_____

DocuSign Envelope ID: B5FF0450-A13E-43D7-8E6B-696DB591DB4E

8

(b)     There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    <u>Broker Fee</u>.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    <u>Not Contingent on Building Permits</u>. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    <u>Possession</u>.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    <u>Governing Law</u>.    This Contract is governed by the laws of Florida.

22.    <u>Default</u>.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    <u>Notices</u>.  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

      SELLERS:        the Notice Party is:

                             Inger M. Garcia, Esq.
                             4839 Volunteer Road, Suite 514
                             Davie, Florida 33330
                             Email: attorney@ingergarcia.com

              and

                             Brett Lieberman, Esq.
                             401 East Las Olas Boulevard, Suite 1400
                             Fort Lauderdale, Florida 33301
                             Email: blieberman@messana-law.com



Sellers MMS        Buyer

BUYER:                KINGFISHER ISLAND, INC.
                                2150 Palomar Airport Road, Suite 205
                                Carlsbad, CA 92011
                                Attn: Todd Mikles

With a copy to:      Inger M. Garcia, Esq.
                                4839 Volunteer Road, Suite 514
                                Davie, Florida 33330
                                Email: attorney@ingergarcia.com
            and

                                Brett Lieberman, Esq.
                                401 East Las Olas Boulevard, Suite 1400
                                Fort Lauderdale, Florida 33301
                                Email: blieberman@messana-law.com
            and

                                Adam T. Kent, Esq.
                                895 Dove Street, Suite 300
                                Newport Beach, CA 92663
                                Email: adam@propartnersgroup.com

24.    <u>Successors</u>.   This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    <u>Assignability</u>. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    <u>Exclusivity</u>. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    <u>Entire Agreement</u>.   This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    <u>Counterparts</u>. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.    <u>Radon Gas</u>.   The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

        Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to



Sellers _____    Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    <u>Saturday, Sunday and Legal Holiday</u>. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November _____ *1* _____ , 2017


SELLERS:

See "Schedule A".

Maria N. Schoentag
—1B0C2E41B98147C...

Maria N. Schoentag

6060 Indian Creek Drive Unit #
Miami Beach, FL 33140

11/7/2017


Sellers   MNS      Buyer

# Schedule A

## Unit # 1005

DocuSigned by:

*Maria N. Schoentag*

1B0C2E41B98147C...

## Owner Signature                          Owner Signature

Maria N. Schoentag

## Address: 6060 Indian Creek Apt. 1005, Miami, FL 33140

## E-Mail Address: Mnschoentag@gmail.com

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this "*Agreement*" or "*Contract*") is made this **1ST** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter "*Buyer*"), and the parties listed on the attached "Schedule A" (collectively referred to as "*Sellers*").

## WHEREAS

A.     Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the "*Condominium Property*").

B.     Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.     The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.     The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the "*Association*") is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.     <u>Purchase and Sale</u>.     Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.     <u>Price</u>.  The "*Purchase Price*" for the Condominium Property shall be as follows:

a.     $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the "*Association's Units*")).

Sellers _____    Buyer _____

b. $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c. $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d. $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3. <u>Term of Contract.</u> This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4. <u>Deposit.</u> Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5. <u>Commencement Date.</u> The Commencement Date is the first day on which all of the following have occurred:

a. The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____ Buyer _____

DocuSign Envelope ID: 8D8356BA-4733-4092-A2AB-0EE5C2B46664

3

    b.    The Association has executed this Contract and delivered a copy to Buyer; and

    c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u>  The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will

Sellers     Buyer

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    <u>Additional Conditions</u>.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the <u>allowed</u> claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers  Buyer

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____    Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs. Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers _____    Buyer _____

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    <u>Representations and Warranties of Seller</u>.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    <u>Representations and Warranties of Buyer</u>.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _____    Buyer _____

DocuSign Envelope ID: 8D8356BA-4733-4092-A2AB-0EE5C2B46664

8

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    Broker Fee.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("Broker") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "Broker Fee"). The Association agrees to pay this Broker Fee at Closing.

19.    Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    Possession.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    Governing Law.    This Contract is governed by the laws of Florida.

22.    Default.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages.  If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    Notices.  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

      SELLERS:        the Notice Party is:

                                Inger M. Garcia, Esq.
                                4839 Volunteer Road, Suite 514
                                Davie, Florida 33330
                                Email: attorney@ingergarcia.com

          and

                                Brett Lieberman, Esq.
                                401 East Las Olas Boulevard, Suite 1400
                                Fort Lauderdale, Florida 33301
                                Email: blieberman@messana-law.com

Sellers _____    Buyer _____

BUYER:                  KINGFISHER ISLAND, INC.
                                    2150 Palomar Airport Road, Suite 205
                                    Carlsbad, CA 92011
                                    Attn: Todd Mikles

With a copy to:         Inger M. Garcia, Esq.
                                    4839 Volunteer Road, Suite 514
                                    Davie, Florida 33330
                                    Email: attorney@ingergarcia.com
               and

                                    Brett Lieberman, Esq.
                                    401 East Las Olas Boulevard, Suite 1400
                                    Fort Lauderdale, Florida 33301
                                    Email: blieberman@messana-law.com
               and

                                    Adam T. Kent, Esq.
                                    895 Dove Street, Suite 300
                                    Newport Beach, CA 92663
                                    Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

        Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to

Sellers _____    Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    <u>Saturday, Sunday and Legal Holiday.</u> If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

Todd A., Mikles, Managing Member

Date: November ____/____, 2017

SELLERS:

See "Schedule A".

DocuSigned by:

26A31FE5E7FD41E...

LIONEL GOSSA

6060 Indian Creek Drive Unit #1006
Miami Beach, FL 33140

11/7/2017

Sellers                Buyer

# Schedule A

## Unit # 1006

DocuSigned by:
26A31FE5E7FD41E...

**Owner Signature**                                        **Owner Signature**

LIONEL GOSSA

**Address:** Mialio LLC (C/O Jade Associate) - 990 Biscayne Blvd - office 701 - Miami, FL 33132

**E-Mail Address:** lgossa@yahoo.com

DocuSign Envelope ID: 94C6160D-6077-407B-829A-C3635D7FBB10

Unit 1007

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this "*Agreement*" or "*Contract*") is made this **1st** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter "*Buyer*"), and the parties listed on the attached "Schedule A" (collectively referred to as "*Sellers*").

## WHEREAS

A.      Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the "*Condominium Property*").

B.      Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.      The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.      The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the "*Association*") is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.      Purchase and Sale.      Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.      Price.  The "*Purchase Price*" for the Condominium Property shall be as follows:

a.      $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the "*Association's Units*")).

Sellers _____ Buyer _____

DocuSign Envelope ID: 94C6160D-6077-407B-829A-C3635D7FBB10

2

b.    $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.    $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.    $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.    <u>Term of Contract</u>.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.    <u>Deposit</u>.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.    <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.    The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____   Buyer _____

b.   The Association has executed this Contract and delivered a copy to Buyer; and

c.   The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.   <u>Right of First Refusal.</u> The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.   <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers _____ Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.        The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers _____  Buyer _____

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid.  If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing.  Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*").  In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____ Buyer _____

6

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs. Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.

Sellers  Buyer

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    <u>Representations and Warranties of Seller</u>.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    <u>Representations and Warranties of Buyer</u>.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _Alvarez Crisp_ Buyer _Jim_

DocuSign Envelope ID: 94C6160D-6077-407B-829A-C3635D7FBB10

8

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    _Broker Fee._    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("_Broker_") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "_Broker Fee_"). The Association agrees to pay this Broker Fee at Closing.

19.    _Not Contingent on Building Permits._ This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    _Possession._    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    _Governing Law._    This Contract is governed by the laws of Florida.

22.    _Default._    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    _Notices._ All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

       SELLERS:       the Notice Party is:

                          Inger M. Garcia, Esq.
                          4839 Volunteer Road, Suite 514
                          Davie, Florida 33330
                          Email: attorney@ingergarcia.com

           and

                          Brett Lieberman, Esq.
                          401 East Las Olas Boulevard, Suite 1400
                          Fort Lauderdale, Florida 33301
                          Email: blieberman@messana-law.com



Sellers _Alvarez Crispin_    Buyer

BUYER:                    KINGFISHER ISLAND, INC.
                          2150 Palomar Airport Road, Suite 205
                          Carlsbad, CA 92011
                          Attn: Todd Mikles

With a copy to:           Inger M. Garcia, Esq.
                          4839 Volunteer Road, Suite 514
                          Davie, Florida 33330
                          Email: attorney@ingergarcia.com
              and
                          Brett Lieberman, Esq.
                          401 East Las Olas Boulevard, Suite 1400
                          Fort Lauderdale, Florida 33301
                          Email: blieberman@messana-law.com
              and
                          Adam T. Kent, Esq.
                          895 Dove Street, Suite 300
                          Newport Beach, CA 92663
                          Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

    Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to

Sellers  Buyer

persons who are exposed to it over time.  Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida.  Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday.  If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November _____ 1 _____, 2017


SELLERS:

See "Schedule A".


Maria Luz

6060 Indian Creek Drive Unit #1007
Miami Beach, FL 33140

11/7/2017


Sellers

# Schedule A

## Unit # 1007

DocuSigned by:

*Maria Luz*

125474D73A76437...

## Owner Signature                         Owner Signature

Maria Luz

## Address: 2100 Sans Souci Blas apt 209, North Miami, Florida, 33181

## E-Mail Address: Mmccollege@hotmail.com

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1st** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

### WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    <u>Purchase and Sale</u>.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    <u>Price</u>.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers  Buyer

b.   $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.   $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.   $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.   <u>Term of Contract.</u>   This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.   <u>Deposit.</u>   Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.   <u>Commencement Date.</u> The Commencement Date is the first day on which all of the following have occurred:

a.   The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _SCF_    Buyer

b.  The Association has executed this Contract and delivered a copy to Buyer; and

c.  The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.  <u>Right of First Refusal.</u>  The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.  <u>Due Diligence Period.</u> The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will

Sellers  Buyer

DocuSign Envelope ID: B1936B90-404F-48C2-A4CF-ED1A9E40BDBC

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers  Buyer

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers ___SCF___    Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    <u>Title Evidence</u>.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    <u>Closing Date</u>. Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "*Closing*"</u>). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    <u>Closing Costs</u>. Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    <u>Delivery for Closing</u>. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers _SCF_    Buyer _____

(f)     Closing Statement.

(g)     All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.     <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.     <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.     <u>Representations and Warranties of Seller</u>.     Sellers represent and warrant to Buyer the following:

(a)     As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)     Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)     There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.     <u>Representations and Warranties of Buyer</u>.     Buyer represents and warrants to Sellers the following:

(a)     Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _SCF_   Buyer _Jem_

DocuSign Envelope ID: B1936B90-404F-48C2-A4CF-ED1A9E40BDBC

8

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    Broker Fee.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    Possession.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    Governing Law.    This Contract is governed by the laws of Florida.

22.    Default.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    Notices. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

           SELLERS:           the Notice Party is:

                              Inger M. Garcia, Esq.
                              4839 Volunteer Road, Suite 514
                              Davie, Florida 33330
                              Email: attorney@ingergarcia.com

               and

                              Brett Lieberman, Esq.
                              401 East Las Olas Boulevard, Suite 1400
                              Fort Lauderdale, Florida 33301
                              Email: blieberman@messana-law.com



Sellers _SCF_   Buyer

DocuSign Envelope ID: B1936B90-404F-48C2-A4CF-ED1A9E40BDBC

9

BUYER:            KINGFISHER ISLAND, INC.
                  2150 Palomar Airport Road, Suite 205
                  Carlsbad, CA 92011
                  Attn: Todd Mikles

With a copy to:   Inger M. Garcia, Esq.
                  4839 Volunteer Road, Suite 514
                  Davie, Florida 33330
                  Email: attorney@ingergarcia.com
         and
                  Brett Lieberman, Esq.
                  401 East Las Olas Boulevard, Suite 1400
                  Fort Lauderdale, Florida 33301
                  Email: blieberman@messana-law.com
         and
                  Adam T. Kent, Esq.
                  895 Dove Street, Suite 300
                  Newport Beach, CA 92663
                  Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties
hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the
property. As a result, the purchasing entity at Closing may be different than the Buyer named in
this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior
consent, so long as all conditions remain the same otherwise, and the Court approval is had, if
necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale
of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties
and supersedes any prior agreements between them. Buyer may incorporate additional units into
this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be
treated as originals for all purposes, and all counterparts so executed shall constitute one
agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory
to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the
requirements of the Florida Statutes:

        Radon Gas: Radon is a naturally occurring radioactive gas that, when it has
        accumulated in a building in sufficient quantities, may present health risks to


Sellers SCF  Buyer

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November _____ , 2017


SELLERS:

See "Schedule A".

DocuSigned by:

DCE3102A4BCE4AA...

SUSANA C FIRPO


6060 Indian Creek Drive Unit #1008
Miami Beach, FL 33140

11/7/2017


Sellers ⎣ SCF  Buyer

# Schedule A

## Unit # 1008

DocuSigned by:

DCE3102A4BCE4AA...

## Owner Signature                              Owner Signature

SUSANA C FIRPO

## Address: 6060 Indian Creek Unit #1008

## E-Mail Address: kukyruizdiaz@hotmail.com

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ST** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.      Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.      Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.      The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.      The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.      Purchase and Sale.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.   This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.      Price.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.      $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).



Sellers ___JLV___    Buyer ___

DocuSign Envelope ID: E8BA3BC2-7A2A-41C9-BC14-F68A6E556777

2

b.     $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.     $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.     $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.     <u>Term of Contract</u>.     This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.     <u>Deposit</u>.     Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.     <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.     The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers  JLV          Buyer

b.  The Association has executed this Contract and delivered a copy to Buyer; and

c.  The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.  <u>Right of First Refusal.</u>  The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.  <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers J L V    Buyer

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    <u>Additional Conditions</u>.        The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the <u>allowed</u> claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers JLV    Buyer

(f)      All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)      Sellers shall have complied with all of its obligations under this Contract.

(h)      The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)      This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.     Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers J L V      Buyer

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.   Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.   Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.   Closing Costs. Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.   Delivery for Closing. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers J I V   Buyer

(f)     Closing Statement.

(g)     All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.     Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.     Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.     Representations and Warranties of Seller.     Sellers represent and warrant to Buyer the following:

(a)     As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)     Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)     There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.     Representations and Warranties of Buyer.     Buyer represents and warrants to Sellers the following:

(a)     Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers J L V     Buyer

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    <u>Broker Fee</u>.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    <u>Not Contingent on Building Permits</u>. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    <u>Possession</u>.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    <u>Governing Law</u>.    This Contract is governed by the laws of Florida.

22.    <u>Default</u>.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    <u>Notices</u>.    All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:           the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com



Sellers _JLV_    Buyer

BUYER:          KINGFISHER ISLAND, INC.
                2150 Palomar Airport Road, Suite 205
                Carlsbad, CA 92011
                Attn: Todd Mikles

With a copy to:   Inger M. Garcia, Esq.
                4839 Volunteer Road, Suite 514
                Davie, Florida 33330
                Email: attorney@ingergarcia.com
         and
                Brett Lieberman, Esq.
                401 East Las Olas Boulevard, Suite 1400
                Fort Lauderdale, Florida 33301
                Email: blieberman@messana-law.com
         and
                Adam T. Kent, Esq.
                895 Dove Street, Suite 300
                Newport Beach, CA 92663
                Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties
hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the
property. As a result, the purchasing entity at Closing may be different than the Buyer named in
this Contract.  Therefore, Buyer has the right to assign this Contract without Sellers' prior
consent, so long as all conditions remain the same otherwise, and the Court approval is had, if
necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale
of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties
and supersedes any prior agreements between them. Buyer may incorporate additional units into
this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be
treated as originals for all purposes, and all counterparts so executed shall constitute one
agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory
to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the
requirements of the Florida Statutes:

        Radon Gas: Radon is a naturally occurring radioactive gas that, when it has
        accumulated in a building in sufficient quantities, may present health risks to



Sellers JLV    Buyer

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

Todd A., Mikles, Managing Member

Date: November _____ 1_____ , 2017

SELLERS:

See "Schedule A".

Jose Luis Varela

6060 Indian Creek Drive Unit #
Miami Beach, FL 33140

11/7/2017

Sellers _____    Buyer _____

# Schedule A

## Unit # 1101

DocuSigned by:

5A59EDA583B04B0...

## Owner Signature                                    Owner Signature

Jose Luis Varela

## Address: 7777 NW 169 TERRACE MIAMI LAKES FL 33016

## E-Mail Address: elyammunoz@gmail.com

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this "*Agreement*" or "*Contract*") is made this **1st** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter "*Buyer*"), and the parties listed on the attached "Schedule A" (collectively referred to as "*Sellers*").

## WHEREAS

A.      Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the "*Condominium Property*").

B.      Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.      The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.      The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the "*Association*") is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.      Purchase and Sale.      Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.      Price.  The "*Purchase Price*" for the Condominium Property shall be as follows:

a.      $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the "*Association's Units*")).

Sellers _____  Buyer _____

b.    $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.    $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.    $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.    <u>Term of Contract.</u>    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.    <u>Deposit.</u>    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.    <u>Commencement Date.</u> The Commencement Date is the first day on which all of the following have occurred:

a.    The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____    Buyer _____

b.    The Association has executed this Contract and delivered a copy to Buyer; and

c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u> The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period.</u> The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers _____    Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.   <u>Additional Conditions</u>.   The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)   Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the <u>allowed</u> claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)   A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)   The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)   All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)   Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers  Buyer

(f)     All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)     Sellers shall have complied with all of its obligations under this Contract.

(h)     The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)     This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.     Title Commitment.     Buyer has already obtained a title report for the units from First American Title Insurance Company (the "Title Company"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("Preliminary Commitment") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "Title Review Period"). Buyer, at Buyer's option, may obtain a survey ("Survey") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "Extended Closing Date"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____   Buyer _____

6

option of either:  (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.        At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent.  Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units.  They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date.  Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing").  If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded.  The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs.  Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing.  At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers _____   Buyer _____

(f)     Closing Statement.

(g)     All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.     <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.     <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.     <u>Representations and Warranties of Seller</u>.     Sellers represent and warrant to Buyer the following:

(a)     As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)     Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)     There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.     <u>Representations and Warranties of Buyer</u>.     Buyer represents and warrants to Sellers the following:

(a)     Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _____   Buyer _____

(b)      There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    Broker Fee.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    Possession.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    Governing Law.     This Contract is governed by the laws of Florida.

22.    Default.     If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    Notices. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:          the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com

Sellers _____    Buyer _____

DocuSign Envelope ID: 30784840-FD68-4E1E-8B78-5C74DE3A7FB0

9

BUYER:            KINGFISHER ISLAND, INC.
                  2150 Palomar Airport Road, Suite 205
                  Carlsbad, CA 92011
                  Attn: Todd Mikles

With a copy to:   Inger M. Garcia, Esq.
                  4839 Volunteer Road, Suite 514
                  Davie, Florida 33330
                  Email: attorney@ingergarcia.com
        and
                  Brett Lieberman, Esq.
                  401 East Las Olas Boulevard, Suite 1400
                  Fort Lauderdale, Florida 33301
                  Email: blieberman@messana-law.com
        and
                  Adam T. Kent, Esq.
                  895 Dove Street, Suite 300
                  Newport Beach, CA 92663
                  Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties
hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the
property. As a result, the purchasing entity at Closing may be different than the Buyer named in
this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior
consent, so long as all conditions remain the same otherwise, and the Court approval is had, if
necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale
of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties
and supersedes any prior agreements between them. Buyer may incorporate additional units into
this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be
treated as originals for all purposes, and all counterparts so executed shall constitute one
agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory
to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the
requirements of the Florida Statutes:

      Radon Gas: Radon is a naturally occurring radioactive gas that, when it has
      accumulated in a building in sufficient quantities, may present health risks to

Sellers   Buyer

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

_____
Todd A., Mikles, Managing Member

Date: November ____ / ____, 2017

SELLERS:

See "Schedule A".

DocuSigned by:

47A685299CF64D0...

ELAINE L ROBINSON

6060 Indian Creek Drive Unit # 1103 Pariano Llc
Miami Beach, FL 33140

11/7/2017

Sellers [ DS ____ ]    Buyer ____

# Schedule A

**Unit #** 1103 Pariano Llc

DocuSigned by:

*[signature]*

47A6B5299CF64D0...

## Owner Signature                    Owner Signature

ELAINE L ROBINSON

**Address:** 3340 NE 190th St Apt. 1104 Miami Fl 33180

**E-Mail Address:** robinsonelaine@yahoo.com

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ˢᵗ** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.      Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.      Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.      The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.      The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.      <u>Purchase and Sale</u>.      Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.      <u>Price</u>.  The *"Purchase Price"* for the Condominium Property shall be as follows:

   a.      $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _EDP_   Buyer _____

b.      $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.      $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.      $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.      <u>Term of Contract</u>.      This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.      <u>Deposit</u>.      Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.      <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.      The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers                    Buyer

b.    The Association has executed this Contract and delivered a copy to Buyer; and

c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u> The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will


Sellers _____    Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.
(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    <u>Additional Conditions</u>.      The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)      Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the <u>allowed</u> claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)      A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)      The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)      All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)      Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers _____    Buyer _____

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____    Buyer _____

option of either:  (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent.  Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units.  They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date.  Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing").  If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded.  The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs.  Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing.  At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers _____    Buyer _____

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    <u>Representations and Warranties of Seller</u>.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    <u>Representations and Warranties of Buyer</u>.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _____    Buyer _____

(b)     There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.     _Broker Fee._     Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.     _Not Contingent on Building Permits_. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.     _Possession._     Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.     _Governing Law._     This Contract is governed by the laws of Florida.

22.     _Default._     If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.     _Notices._  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

      SELLERS:          the Notice Party is:

                                 Inger M. Garcia, Esq.
                                 4839 Volunteer Road, Suite 514
                                 Davie, Florida 33330
                                 Email: attorney@ingergarcia.com

          and

                                 Brett Lieberman, Esq.
                                 401 East Las Olas Boulevard, Suite 1400
                                 Fort Lauderdale, Florida 33301
                                 Email: blieberman@messana-law.com

Sellers _EDP_     Buyer _[signature]_

BUYER:            KINGFISHER ISLAND, INC.
2150 Palomar Airport Road, Suite 205
Carlsbad, CA 92011
Attn: Todd Mikles

With a copy to:     Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com

and

Adam T. Kent, Esq.
895 Dove Street, Suite 300
Newport Beach, CA 92663
Email: adam@propartnersgroup.com

24.   Successors.   This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.   Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.   Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.   Entire Agreement.   This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.   Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.   Radon Gas.   The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to

Sellers  Buyer

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    <u>Saturday, Sunday and Legal Holiday</u>. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November _____ *1* _____, 2017


SELLERS:

See "Schedule A".


DocuSigned by:

*Elsa Depablos Bermudez*

F774A22594DE44A...

Name: ELSA J. DEPABLOS BERMUDEZ

11/8/2017


Sellers: EDB    Buyer: TC

# Schedule A

Unit # 1104

DocuSigned by:

*Elsa Depablos Bermudez*

F774A22594DE44A...

Owner Signature                                   Owner Signature

ELSA J. DEPABLOS BERMUDEZ

Address: 201-3263 Alder St. Victoria BC ZP V8X 1P3 Canada

E-Mail Address: edepablos.21@gmail.com

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1st** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    <u>Purchase and Sale</u>.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    <u>Price</u>.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _____   Buyer _____

b. $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c. $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d. $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3. <u>Term of Contract</u>.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4. <u>Deposit</u>.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5. <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a. The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____    Buyer _____

DocuSign Envelope ID: 44040165-4F29-42F9-8799-CB2F0E647AC4

3

b.   The Association has executed this Contract and delivered a copy to Buyer; and

c.   The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.   <u>Right of First Refusal.</u>  The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.   <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers _____   Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.        The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers _____    Buyer _____

5

(f)     All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)     Sellers shall have complied with all of its obligations under this Contract.

(h)     The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)     This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.     Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment.  Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid.  If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing.  Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*").  In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____    Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs. Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers _DS_____    Buyer _____

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    <u>Risk of Loss</u>. Risk of loss or damage to the Condominium Property shall be borne by Sellers. In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    <u>Insurance Proceeds</u>. Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers. Buyer has no interest in the insurance proceeds.

16.    <u>Representations and Warranties of Seller</u>. Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    <u>Representations and Warranties of Buyer</u>. Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers  Buyer

8

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    <u>Broker Fee</u>.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    <u>Not Contingent on Building Permits</u>. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    <u>Possession</u>.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    <u>Governing Law</u>.    This Contract is governed by the laws of Florida.

22.    <u>Default</u>.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    <u>Notices</u>.    All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:            the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com

Sellers _____    Buyer _____

BUYER:              KINGFISHER ISLAND, INC.
                    2150 Palomar Airport Road, Suite 205
                    Carlsbad, CA 92011
                    Attn: Todd Mikles

With a copy to:     Inger M. Garcia, Esq.
                    4839 Volunteer Road, Suite 514
                    Davie, Florida 33330
                    Email: attorney@ingergarcia.com
              and
                    Brett Lieberman, Esq.
                    401 East Las Olas Boulevard, Suite 1400
                    Fort Lauderdale, Florida 33301
                    Email: blieberman@messana-law.com
              and
                    Adam T. Kent, Esq.
                    895 Dove Street, Suite 300
                    Newport Beach, CA 92663
                    Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract.   Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart.  Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

        Radon Gas: Radon is a naturally occurring radioactive gas that, when it has
        accumulated in a building in sufficient quantities, may present health risks to



Sellers _____    Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.   Invalid Provision.   If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.   Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November _____ *1* _____ , 2017


SELLERS:

See "Schedule A".


DocuSigned by:

*Dominique Sauvetre*

1A9B541A9ED8403...

Name: Dominique SAUVETRE

11/8/2017


Sellers DS          Buyer

Schedule A

Unit #  1105

*Dominique Sauvetre*

1A9B541A9ED8403...

Owner Signature                                        Owner Signature

Name: Dominique SAUVETRE

Address:  20 rue de Coeuilly, 94350 VILLIERS SUR MARNE,   FRANCE

E-Mail Address:  tropicaldom@outlook.com

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

Unit #  **1106**

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this "*Agreement*" or "*Contract*") is made this **1 5t** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter "*Buyer*"), and the parties listed on the attached "Schedule A" (collectively referred to as "*Sellers*").

### WHEREAS

A.     Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the "*Condominium Property*").

B.     Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.     The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.     The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the "*Association*") is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.     Purchase and Sale.     Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.   This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.     Price.  The "*Purchase Price*" for the Condominium Property shall be as follows:

a.     $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the "*Association's Units*")).

Sellers _KC_     Buyer _JM_

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

2

b.    $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the "*Minimum Participation Requirement*") must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.    $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the "*Schecher Claim Amount*") at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.    $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.    Term of Contract.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.    Deposit.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the "*Initial Deposit*"), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the "*Bankruptcy Court*") approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the "*Escrow Agent*") with proof given to the Seller's attorneys and the title company (the "*Refundable Deposit*"); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the "*Second Non-Refundable Deposit*") The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the "*Deposits*" shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.    Commencement Date. The Commencement Date is the first day on which all of the following have occurred:

a.    The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;

Sellers *HC*    Buyer

Electronically Signed using eSignOnline™[ Session ID : 414166ad-6a71-4ece-80f4-9fc9f1c5cf10 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

3

b.    The Association has executed this Contract and delivered a copy to Buyer; and

c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u>  The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will

Sellers _HC_____    Buyer _____

Electronically Signed using eSignOnline™[ Session ID : 414166ad-6a71-4ece-80f4-9fc9f1c5cf10 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the underlined claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers _KC_    Buyer _JM_

Electronically Signed using eSignOnline™[ Session ID : 414166ad-6a71-4ece-80f4-9fc9f1c5cf10 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

5

(f)      All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)      Sellers shall have complied with all of its obligations under this Contract.

(h)      The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)      This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.      Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment.  Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid.  If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing.  Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*").  In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the

Sellers  *KC*      Buyer  _____

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

6

option of either:  (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.        At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent.  Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "*Closing*"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs.  Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing.  At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.

Sellers *KC*        Buyer ___

Electronically Signed using eSignOnline™[ Session ID : 414166ad-6a71-4ece-80f4-9fc9f1c5cf10 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

7

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers _HC_    Buyer _Jim_

Electronically Signed using eSignOnline™[ Session ID : 414166ad-6a71-4ece-80f4-9fc9f1c5cf10 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

8

(b)     There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.     Broker Fee.     Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.     Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.     Possession.     Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.     Governing Law.     This Contract is governed by the laws of Florida.

22.     Default.     If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.     Notices. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:          the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com

Sellers *KC*          Buyer

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

9

BUYER:          KINGFISHER ISLAND, INC.
                      2150 Palomar Airport Road, Suite 205
                      Carlsbad, CA 92011
                      Attn: Todd Mikles

With a copy to:    Inger M. Garcia, Esq.
                      4839 Volunteer Road, Suite 514
                      Davie, Florida 33330
                      Email: attorney@ingergarcia.com

        and

                      Brett Lieberman, Esq.
                      401 East Las Olas Boulevard, Suite 1400
                      Fort Lauderdale, Florida 33301
                      Email: blieberman@messana-law.com

        and

                      Adam T. Kent, Esq.
                      895 Dove Street, Suite 300
                      Newport Beach, CA 92663
                      Email: adam@propartnersgroup.com

24.   Successors.  This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.   Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.   Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.   Entire Agreement.  This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.   Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.   Radon Gas.  The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

      Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to

Sellers _KC_    Buyer _____

Electronically Signed using eSignOnline™[ Session ID : 414166ad-6a71-4ece-80f4-9fc9f1c5cf10 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

10

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.   Invalid Provision.   If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.   Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

Todd A., Mikles, Managing Member

Date: November ____/____, 2017

SELLERS:

See "Schedule A".

Name: **Wells Fargo Bank, N.A. as Trustee for The Certificateholders of Banc of America Mortgage Securities, Inc. Alternative Loantrust 2006-7.  Mortgage Passthrough Certificates, Series 2006-7**

Sellers _____   Buyer _____

Electronically Signed using eSignOnline™[ Session ID : 414166ad-6a71-4ece-80f4-9fc9f1c5cf10 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

Schedule A

Unit #  1106

*Kristie Cotham*
Owner Signature                                    Owner Signature

Name **Kristie Cotham, Assistant**
     **Secretary, Nationstar**
     **Mortgage LLC as Attorney in**
     **Fact**
Address:
     **8950 Cypress Waters Blvd**
     **Dallas, TX 75019**
E-Mail Address:

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E
Unit # **1107**

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this "*Agreement*" or "*Contract*") is made this **1ˢᵗ** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter "*Buyer*"), and the parties listed on the attached "Schedule A" (collectively referred to as "*Sellers*").

### WHEREAS

A.     Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the "*Condominium Property*").

B.     Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.     The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.     The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the "*Association*") is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.     Purchase and Sale.     Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.   This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS. No personal property is included with this sale.

2.     Price.  The "*Purchase Price*" for the Condominium Property shall be as follows:

a.     $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the "*Association's Units*")).

Sellers _AC_     Buyer _JM_

Electronically Signed using eSignOnline™[ Session ID : ad1b85bd-179a-4dd7-a7ad-a9ab037d5963 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

2

b.      $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.      $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.      $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.      Term of Contract.      This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.      Deposit.      Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.      Commencement Date. The Commencement Date is the first day on which all of the following have occurred:

a.      The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;

Sellers _AC_ ___      Buyer _[signature]_ ___

Electronically Signed using eSignOnline™ [ Session ID : ad1b85bd-179a-4dd7-a7ad-a9ab037d5963 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

3

b.    The Association has executed this Contract and delivered a copy to Buyer; and

c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal</u>.  The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will

Sellers _AC_____    Buyer _____

Electronically Signed using eSignOnline™[ Session ID : ad1b85bd-179a-4dd7-a7ad-a9ab037d5963 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    <u>Additional Conditions</u>.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the <u>allowed</u> claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers _KC_      Buyer _JM_

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

5

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the

Sellers _KC_    Buyer _JM_

Electronically Signed using eSignOnline™[ Session ID : ad1b85bd-179a-4dd7-a7ad-a9ab037d5963 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

6

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.     Title Evidence.     At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.     Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.     Closing Costs.  Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.     Delivery for Closing.  At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)     Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)     Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)     Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)     FIRPTA affidavit.

(e)     Association estoppel letter or waiver.

Sellers _KC_____  Buyer _____

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

7

(f)     Closing Statement.

(g)     All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.     Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.     Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.     Representations and Warranties of Seller.     Sellers represent and warrant to Buyer the following:

(a)     As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)     Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)     There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.     Representations and Warranties of Buyer.     Buyer represents and warrants to Sellers the following:

(a)     Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers _KC_____   Buyer _JM____

Electronically Signed using eSignOnline™[ Session ID : ad1b85bd-179a-4dd7-a7ad-a9ab037d5963 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

8

(b)     There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.     Broker Fee.     Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.     Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.     Possession.     Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.     Governing Law.     This Contract is governed by the laws of Florida.

22.     Default.     If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.     Notices. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

      SELLERS:           the Notice Party is:

                              Inger M. Garcia, Esq.
                              4839 Volunteer Road, Suite 514
                              Davie, Florida 33330
                              Email: attorney@ingergarcia.com
           and

                              Brett Lieberman, Esq.
                              401 East Las Olas Boulevard, Suite 1400
                              Fort Lauderdale, Florida 33301
                              Email: blieberman@messana-law.com

Sellers _AC_     Buyer _____

Electronically Signed using eSignOnline™[ Session ID : ad1b85bd-179a-4dd7-a7ad-a9ab037d5963 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

9

BUYER:          KINGFISHER ISLAND, INC.
2150 Palomar Airport Road, Suite 205
Carlsbad, CA 92011
Attn: Todd Mikles

With a copy to:    Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com
and
Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com
and
Adam T. Kent, Esq.
895 Dove Street, Suite 300
Newport Beach, CA 92663
Email: adam@propartnersgroup.com

24.    Successors.   This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.   This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.   The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

      Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to

Sellers _KC_ _____ Buyer _____

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

10

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    <u>Saturday, Sunday and Legal Holiday</u>. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November _____/_____, 2017


SELLERS:

See "Schedule A".




Name: **Wells Fargo Bank, National Association, as Trustee for Banc of America Alternative Loan Trust 2006-7 Mortgage Pass Through Certificates. Series 2006-7**



Sellers _____    Buyer _____

Electronically Signed using eSignOnline™[ Session ID : ad1b85bd-179a-4dd7-a7ad-a9ab037d5963 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

Schedule A

Unit # 1107

*Kristie Cotham*

Owner Signature                                    Owner Signature

Name: **Kristie Cotham, Assistant**
**Secretary Nationstar**
**Mortgage LLC, As Attorney in**

Address:
**8950 Cypres Waters Blvd**
**Dallas, TX 75019**

E-Mail Address:

Electronically Signed using eSignOnline™ [ Session ID : ad1b85bd-179a-4dd7-a7ad-a9ab037d5963 ]

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1st** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

### WHEREAS

A.      Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.      Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.      The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.      The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.      Purchase and Sale.      Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.      Price.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.      $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _MP_      Buyer _JM_

b.   $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.   $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.   $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.   <u>Term of Contract.</u>   This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.   <u>Deposit.</u>   Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.   <u>Commencement Date.</u> The Commencement Date is the first day on which all of the following have occurred:

a.   The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers ___MP___   Buyer ___

b.     The Association has executed this Contract and delivered a copy to Buyer; and

c.     The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.     <u>Right of First Refusal.</u> The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.     <u>Due Diligence Period.</u> The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers _MP_     Buyer _____

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    <u>Additional Conditions</u>.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the <u>allowed</u> claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers  Buyer

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the *"Title Company"*). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment (*"Preliminary Commitment"*) for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the *"Title Review Period"*). Buyer, at Buyer's option, may obtain a survey (*"Survey"*) of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the *"Extended Closing Date"*). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _MP_____    Buyer _____

option of either:  (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    <u>Title Evidence.</u>      At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent.  Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units.  They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    <u>Closing Date.</u>  Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "<i>Closing</i>")</u>. If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded.  The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    <u>Closing Costs.</u>  Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    <u>Delivery for Closing.</u>  At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)      Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)      Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)      Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)      FIRPTA affidavit.

(e)      Association estoppel letter or waiver.



Sellers MP _____  Buyer _____

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    <u>Representations and Warranties of Seller</u>.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    <u>Representations and Warranties of Buyer</u>.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _____    Buyer _____

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    Broker Fee.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    Possession.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    Governing Law.    This Contract is governed by the laws of Florida.

22.    Default.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    Notices. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:            the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com

Sellers _MP_____    Buyer _____

BUYER:             KINGFISHER ISLAND, INC.
                            2150 Palomar Airport Road, Suite 205
                            Carlsbad, CA 92011
                            Attn: Todd Mikles

With a copy to:      Inger M. Garcia, Esq.
                            4839 Volunteer Road, Suite 514
                            Davie, Florida 33330
                            Email: attorney@ingergarcia.com
            and
                            Brett Lieberman, Esq.
                            401 East Las Olas Boulevard, Suite 1400
                            Fort Lauderdale, Florida 33301
                            Email: blieberman@messana-law.com
            and
                            Adam T. Kent, Esq.
                            895 Dove Street, Suite 300
                            Newport Beach, CA 92663
                            Email: adam@propartnersgroup.com

24.    Successors.   This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.   This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.   The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

        Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to



Sellers MP      Buyer

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.  <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.  <u>Saturday, Sunday and Legal Holiday</u>. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November _____ / _____, 2017


SELLERS:

See "Schedule A".


DocuSigned by:

*Mario Puig by Vintage*

F924DA73B821439...

Mario Puig by Vintage

6060 Indian Creek Drive Unit #1108
Miami Beach, FL 33140

11/7/2017


Sellers  MP    Buyer

# Schedule A

## Unit # 1108

DocuSigned by:

*Mario Puig by Vintage*

F924DA73B821439...

## Owner Signature                                    Owner Signature

Mario Puig by Vintage

## Address: 5306 White Oak Lane TAmarac Fl 33319

## E-Mail Address: nora@aurixmiami.com

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this "*Agreement*" or "*Contract*") is made this **1ST** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter "*Buyer*"), and the parties listed on the attached "Schedule A" (collectively referred to as "*Sellers*").

## WHEREAS

A.     Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the "*Condominium Property*").

B.     Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.     The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.     The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the "*Association*") is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.     Purchase and Sale.     Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.     Price.  The "*Purchase Price*" for the Condominium Property shall be as follows:

a.     $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the "*Association's Units*")).

Sellers  JS        Buyer

b.  $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.  $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.  $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.  <u>Term of Contract.</u>  This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.  <u>Deposit.</u>  Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.  <u>Commencement Date.</u>  The Commencement Date is the first day on which all of the following have occurred:

a.  The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers JS_____  Buyer _____

b.    The Association has executed this Contract and delivered a copy to Buyer; and

c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u> The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period.</u> The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers JS_____    Buyer _____

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.      The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers JS____    Buyer____

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers JS          Buyer

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    <u>Title Evidence</u>.       At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    <u>Closing Date</u>. Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "*Closing*")</u>. If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    <u>Closing Costs</u>. Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    <u>Delivery for Closing</u>. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers JS       Buyer

7

(f)     Closing Statement.

(g)     All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.     Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.     Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.     Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)     As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)     Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)     There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.     Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)     Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers JS _____     Buyer _____

(b)     There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    Broker Fee.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    Possession.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    Governing Law.    This Contract is governed by the laws of Florida.

22.    Default.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    Notices. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:            the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com

Sellers JS _____    Buyer _____

BUYER:              KINGFISHER ISLAND, INC.
                   2150 Palomar Airport Road, Suite 205
                   Carlsbad, CA 92011
                   Attn: Todd Mikles

With a copy to:    Inger M. Garcia, Esq.
                   4839 Volunteer Road, Suite 514
                   Davie, Florida 33330
                   Email: attorney@ingergarcia.com
            and
                   Brett Lieberman, Esq.
                   401 East Las Olas Boulevard, Suite 1400
                   Fort Lauderdale, Florida 33301
                   Email: blieberman@messana-law.com
            and
                   Adam T. Kent, Esq.
                   895 Dove Street, Suite 300
                   Newport Beach, CA 92663
                   Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties
hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the
property. As a result, the purchasing entity at Closing may be different than the Buyer named in
this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior
consent, so long as all conditions remain the same otherwise, and the Court approval is had, if
necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale
of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties
and supersedes any prior agreements between them. Buyer may incorporate additional units into
this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be
treated as originals for all purposes, and all counterparts so executed shall constitute one
agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory
to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the
requirements of the Florida Statutes:

       Radon Gas: Radon is a naturally occurring radioactive gas that, when it has
       accumulated in a building in sufficient quantities, may present health risks to



Sellers JS _____    Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    <u>Saturday, Sunday and Legal Holiday</u>. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

Todd A., Mikles, Managing Member

Date: November _____ /_____ , 2017

SELLERS:

See "Schedule A".

DocuSigned by:

SCARAMUZZINO JAVIER
7B488FAD1D7B4EF...

SCARAMUZZINO JAVIER

6060 Indian Creek Drive Unit #1202
Miami Beach, FL 33140

11/8/2017

Sellers   JS     Buyer

# Schedule A

**Unit #** 1202

DocuSigned by:

SCARAMUZZINO JAVIER

7B488FAD1D7B4EF...

## Owner Signature                    Owner Signature

SCARAMUZZINO JAVIER

**Address:** 2370 ne 184 terrace N Miami Beach FL 33160

**E-Mail Address:** ja_abr@hotmail.com

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1st** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    Purchase and Sale.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    Price.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _FJ/RB_    Buyer _____

b.  $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.  $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.  $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.  <u>Term of Contract</u>.   This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.  <u>Deposit</u>.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.  <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.  The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _FJRB_    Buyer

b.  The Association has executed this Contract and delivered a copy to Buyer; and

c.  The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.  <u>Right of First Refusal.</u>  The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.  <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers RJ/RB    Buyer

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.
(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers  FJRB    Buyer

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _FJIRB_    Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    <u>Title Evidence.</u>    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    <u>Closing Date.</u> Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing")</u>. If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    <u>Closing Costs.</u> Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    <u>Delivery for Closing.</u> At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers F JNRB    Buyer

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _FJRB_    Buyer _Jem_

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    Broker Fee.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    Possession.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    Governing Law.    This Contract is governed by the laws of Florida.

22.    Default.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    Notices. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

> SELLERS:            the Notice Party is:
>
> Inger M. Garcia, Esq.
> 4839 Volunteer Road, Suite 514
> Davie, Florida 33330
> Email: attorney@ingergarcia.com
>
> and
>
> Brett Lieberman, Esq.
> 401 East Las Olas Boulevard, Suite 1400
> Fort Lauderdale, Florida 33301
> Email: blieberman@messana-law.com



Sellers _FJRB_    Buyer _____

BUYER:            KINGFISHER ISLAND, INC.
                  2150 Palomar Airport Road, Suite 205
                  Carlsbad, CA 92011
                  Attn: Todd Mikles

With a copy to:   Inger M. Garcia, Esq.
                  4839 Volunteer Road, Suite 514
                  Davie, Florida 33330
                  Email: attorney@ingergarcia.com
            and
                  Brett Lieberman, Esq.
                  401 East Las Olas Boulevard, Suite 1400
                  Fort Lauderdale, Florida 33301
                  Email: blieberman@messana-law.com
            and
                  Adam T. Kent, Esq.
                  895 Dove Street, Suite 300
                  Newport Beach, CA 92663
                  Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the property.  As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract.  Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity.  By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart.  Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

    Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to



Sellers _____   Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30. <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31. <u>Saturday, Sunday and Legal Holiday.</u> If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


_____
Todd A., Mikles, Managing Member

Date: November _____, 2017


SELLERS:

See "Schedule A".


DocuSigned by:

*Frank Jordan/Ralf Bauchrowitz*
C777D1F82E184D0...

Frank Jordan/Ralf Bauchrowitz

6060 Indian Creek Drive Unit #902/#1001/#1203
Miami Beach, FL 33140

11/8/2017


Sellers  FJ/RB    Buyer

# Schedule A

## Unit # 902/#1001/#1203

DocuSigned by:

*Frank Jordan/Ralf Bauchrowitz*

C777D1F82E184D0...

## Owner Signature                    Owner Signature

Frank Jordan/Ralf Bauchrowitz

## Address: Bruehlstrasse 34, 65606 Villar, Hessen, Germany

## E-Mail Address: ralfbauchrowitz@aol.com

Unit # 1401

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ST** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

### WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    <u>Purchase and Sale</u>.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.   This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    <u>Price</u>.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers **HK**    Buyer _____

DocuSign Envelope ID: AB4197E0-56C2-4011-AE3F-B0C33FD7FFZ6

2

b.   $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.   $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.   $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.   <u>Term of Contract.</u>   This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.   <u>Deposit.</u>   Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.   <u>Commencement Date.</u> The Commencement Date is the first day on which all of the following have occurred:

a.   The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers  HK      Buyer

DocuSign Envelope ID: AB4197F0-56C2-4011-AE3F-B0C33FD7FF76

3

b.  The Association has executed this Contract and delivered a copy to Buyer; and

c.  The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.  <u>Right of First Refusal.</u> The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.  <u>Due Diligence Period.</u> The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will

Sellers  HK _____  Buyer _____

DocuSign Envelope ID: AB4197F0-56C2-4011-AE3E-B0C33FD7FF76

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers _HK_    Buyer _JM_

5

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment.  Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid.  If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing.  Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*").  In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers *HK*    Buyer

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    <u>Title Evidence</u>.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    <u>Closing Date</u>. Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "*Closing*"</u>). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    <u>Closing Costs</u>.  Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    <u>Delivery for Closing</u>.  At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers _HK_    Buyer _____

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers  HK    Buyer  

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    _Broker Fee._    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    _Not Contingent on Building Permits._ This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    _Possession._    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    _Governing Law._    This Contract is governed by the laws of Florida.

22.    _Default._    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages.  If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    _Notices._  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

      SELLERS:      the Notice Party is:

                          Inger M. Garcia, Esq.
                          4839 Volunteer Road, Suite 514
                          Davie, Florida 33330
                          Email: attorney@ingergarcia.com

          and

                          Brett Lieberman, Esq.
                          401 East Las Olas Boulevard, Suite 1400
                          Fort Lauderdale, Florida 33301
                          Email: blieberman@messana-law.com

Sellers  HK          Buyer

BUYER:            KINGFISHER ISLAND, INC.
                  2150 Palomar Airport Road, Suite 205
                  Carlsbad, CA 92011
                  Attn: Todd Mikles

With a copy to:   Inger M. Garcia, Esq.
                  4839 Volunteer Road, Suite 514
                  Davie, Florida 33330
                  Email: attorney@ingergarcia.com
         and
                  Brett Lieberman, Esq.
                  401 East Las Olas Boulevard, Suite 1400
                  Fort Lauderdale, Florida 33301
                  Email: blieberman@messana-law.com
         and
                  Adam T. Kent, Esq.
                  895 Dove Street, Suite 300
                  Newport Beach, CA 92663
                  Email: adam@propartnersgroup.com

24.   <u>Successors</u>.   This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.   <u>Assignability</u>. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract.   Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.   <u>Exclusivity</u>. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.   <u>Entire Agreement</u>.   This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.   <u>Counterparts</u>. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.   <u>Radon Gas</u>.   The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

   Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to



Sellers HK _____    Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November ___/___, 2017


SELLERS:

See "Schedule A".


DocuSigned by:

*Henryk Kwiatkowski*
F61E88CD5799473...

Name: Henryk Kwiatkowski

11/10/2017


Sellers  HK          Buyer

Schedule A

Unit # 1401

DocuSigned by:

*Henryk Kwiatkowski*

F61E88CD5799473...

Owner Signature                                Owner Signature

Name: Henryk Kwiatkowski

Address: 59-05 70th Ave. Ridgewood, NY 11385

E-Mail Address: henrykk@att.net

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

Unit # 1402

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this "*Agreement*" or "*Contract*") is made this *1st* day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter "*Buyer*"), and the parties listed on the attached "Schedule A" (collectively referred to as "*Sellers*").

## WHEREAS

A.      Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the "*Condominium Property*").

B.      Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.      The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.      The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the "*Association*") is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.      Purchase and Sale.      Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.   This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS. No personal property is included with this sale.

2.      Price.  The "*Purchase Price*" for the Condominium Property shall be as follows:

a.      $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the "*Association's Units*")).

Sellers _KC_      Buyer _JM_

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

2

b.  $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.  $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.  $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.  <u>Term of Contract</u>.   This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.  <u>Deposit</u>.   Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.  <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.  The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;

Sellers _AC_ __    Buyer _____

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

3

b.    The Association has executed this Contract and delivered a copy to Buyer; and

c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u>  The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period.</u> The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will

Sellers _____    Buyer _____

Electronically Signed using eSignOnline™[ Session ID : f586f35f-c236-4866-94f1-886b5d38fe87 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers _____    Buyer _____

Electronically Signed using eSignOnline™ [ Session ID : f586f35f-c236-4866-94f1-886b5d38fe87 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

5

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the

Sellers _AC_    Buyer _JM_

Electronically Signed using eSignOnline™[ Session ID : f586f35f-c236-4866-94f1-886b5d38fe87 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

6

option of either:  (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.     Title Evidence.     At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.     Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.     Closing Costs.  Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.     Delivery for Closing.  At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)     Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)     Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)     Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)     FIRPTA affidavit.

(e)     Association estoppel letter or waiver.

Sellers _AC_____     Buyer _____

Electronically Signed using eSignOnline™[ Session ID : f586f35f-c236-4866-94f1-886b5d38fe87 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

7

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers _HC_    Buyer _Jen_

Electronically Signed using eSignOnline™[ Session ID : f586f35f-c236-4866-94f1-886b5d38fe87 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

8

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    Broker Fee.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    Possession.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    Governing Law.    This Contract is governed by the laws of Florida.

22.    Default.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    Notices. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:    the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com

Sellers _AC_    Buyer _____

Electronically Signed using eSignOnline™ [ Session ID : f586f35f-c236-4866-94f1-886b5d38fe87 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

9

BUYER:                KINGFISHER ISLAND, INC.
                      2150 Palomar Airport Road, Suite 205
                      Carlsbad, CA 92011
                      Attn: Todd Mikles

With a copy to:       Inger M. Garcia, Esq.
                      4839 Volunteer Road, Suite 514
                      Davie, Florida 33330
                      Email: attorney@ingergarcia.com
             and
                      Brett Lieberman, Esq.
                      401 East Las Olas Boulevard, Suite 1400
                      Fort Lauderdale, Florida 33301
                      Email: blieberman@messana-law.com
             and
                      Adam T. Kent, Esq.
                      895 Dove Street, Suite 300
                      Newport Beach, CA 92663
                      Email: adam@propartnersgroup.com

24.    Successors.   This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.   This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.   The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

     Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to

Sellers _AC_ _____   Buyer _____

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

10

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30. <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31. <u>Saturday, Sunday and Legal Holiday.</u> If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November ___/___, 2017


SELLERS:

See "Schedule A".




Name:

**Wells Fargo Bank National
Association As Trustee fo
Band of America Alternative
Loan Trust 2006-8**



Sellers _//C_____    Buyer _//C_____

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

Schedule A

Unit # 1402

*Kristie Cotham*

Owner Signature                                             Owner Signature

Name : **Kristie Cotham, Assistant**
       **Secretary, Nationstar**
       **Mortgage as Attorney in Fact**

Address:
       **8950 Cypress Waters Blvd**
       **Dallas, TX 75019**

E-Mail Address:

Electronically Signed using eSignOnline™[ Session ID : f586f35f-c236-4866-94f1-886b5d38fe87 ]

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ˢᵗ** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.      Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.      Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.      The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.      The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.      Purchase and Sale.      Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.      Price.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.      $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers  Buyer

b. $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c. $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d. $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.  <u>Term of Contract.</u>    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.  <u>Deposit.</u>    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.  <u>Commencement Date.</u> The Commencement Date is the first day on which all of the following have occurred:

a.  The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____    Buyer _____

   b.    The Association has executed this Contract and delivered a copy to Buyer; and

   c.    The Bankruptcy Court described herein has approved the sale of the
         Condominium Property.

6.    Right of First Refusal.  The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    Due Diligence Period.  The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will

Sellers    Buyer

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.      The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers  Buyer

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "Title Company"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("Preliminary Commitment") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "Title Review Period"). Buyer, at Buyer's option, may obtain a survey ("Survey") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "Extended Closing Date"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____    Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs.    Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing.  At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers _____  Buyer _____

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _____    Buyer _____

(b)     There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    Broker Fee.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    Possession.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    Governing Law.    This Contract is governed by the laws of Florida.

22.    Default.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    Notices. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

     SELLERS:     the Notice Party is:

                         Inger M. Garcia, Esq.
                         4839 Volunteer Road, Suite 514
                         Davie, Florida 33330
                         Email: attorney@ingergarcia.com

        and

                         Brett Lieberman, Esq.
                         401 East Las Olas Boulevard, Suite 1400
                         Fort Lauderdale, Florida 33301
                         Email: blieberman@messana-law.com



Sellers _____    Buyer _____

BUYER:                    KINGFISHER ISLAND, INC.
                          2150 Palomar Airport Road, Suite 205
                          Carlsbad, CA 92011
                          Attn: Todd Mikles

With a copy to:           Inger M. Garcia, Esq.
                          4839 Volunteer Road, Suite 514
                          Davie, Florida 33330
                          Email: attorney@ingergarcia.com
                  and
                          Brett Lieberman, Esq.
                          401 East Las Olas Boulevard, Suite 1400
                          Fort Lauderdale, Florida 33301
                          Email: blieberman@messana-law.com
                  and
                          Adam T. Kent, Esq.
                          895 Dove Street, Suite 300
                          Newport Beach, CA 92663
                          Email: adam@propartnersgroup.com

24.   Successors.   This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.   Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.   Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.   Entire Agreement.   This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.   Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.   Radon Gas.   The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

      Radon Gas: Radon is a naturally occurring radioactive gas that, when it has
      accumulated in a building in sufficient quantities, may present health risks to



Sellers _____   Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    <u>Saturday, Sunday and Legal Holiday</u>. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

Todd A., Mikles, Managing Member

Date: November _____ **1** _____, 2017

SELLERS:

See "Schedule A".

DocuSigned by:

E31DF24E96A542E...

Tony Rodriguez

6060 Indian Creek Drive Unit #
Miami Beach, FL 33140

11/7/2017

Sellers _____    Buyer _____

# Schedule A

## Unit # 1405


Tony Rodriguez

## Owner Signature                    Owner Signature

**Address:** 19966 collins ave Sunny Isles Beach 33160

**E-Mail Address:** caseroluis@gmail.com

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1st** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

### WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    Purchase and Sale.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    Price.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _____    Buyer _____

b.  $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.  $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.  $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.  <u>Term of Contract.</u>    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.  <u>Deposit.</u>    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.  <u>Commencement Date.</u> The Commencement Date is the first day on which all of the following have occurred:

a.  The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____    Buyer _____

DocuSign Envelope ID: 6956F139-B76D-45E5-B658-85757F86A49E

3

b.   The Association has executed this Contract and delivered a copy to Buyer; and

c.   The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.   <u>Right of First Refusal.</u>  The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.   <u>Due Diligence Period.</u> The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will

Sellers    Buyer

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers  Buyer

DocuSign Envelope ID: 6956F139-B76D-45E5-B658-85757F86A49E

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____    Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.   <u>Title Evidence.</u>      At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.   <u>Closing Date.</u> Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "*Closing*").</u> If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.   <u>Closing Costs.</u> Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.   <u>Delivery for Closing.</u> At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)   Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)   Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)   Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)   FIRPTA affidavit.

(e)   Association estoppel letter or waiver.



Sellers _____   Buyer _____

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers  Buyer

DocuSign Envelope ID: 6956F139-B76D-45E5-B658-85757F86A49F

8

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    Broker Fee.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    Possession.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    Governing Law.    This Contract is governed by the laws of Florida.

22.    Default.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    Notices. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:        the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com

Sellers _____    Buyer _____

BUYER:               KINGFISHER ISLAND, INC.
                     2150 Palomar Airport Road, Suite 205
                     Carlsbad, CA 92011
                     Attn: Todd Mikles

With a copy to:      Inger M. Garcia, Esq.
                     4839 Volunteer Road, Suite 514
                     Davie, Florida 33330
                     Email: attorney@ingergarcia.com
          and
                     Brett Lieberman, Esq.
                     401 East Las Olas Boulevard, Suite 1400
                     Fort Lauderdale, Florida 33301
                     Email: blieberman@messana-law.com
          and
                     Adam T. Kent, Esq.
                     895 Dove Street, Suite 300
                     Newport Beach, CA 92663
                     Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties
hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the
property. As a result, the purchasing entity at Closing may be different than the Buyer named in
this Contract.  Therefore, Buyer has the right to assign this Contract without Sellers' prior
consent, so long as all conditions remain the same otherwise, and the Court approval is had, if
necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale
of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties
and supersedes any prior agreements between them. Buyer may incorporate additional units into
this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be
treated as originals for all purposes, and all counterparts so executed shall constitute one
agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory
to the original or to the same counterpart.  Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the
requirements of the Florida Statutes:

     Radon Gas: Radon is a naturally occurring radioactive gas that, when it has
     accumulated in a building in sufficient quantities, may present health risks to

Sellers _____    Buyer _____

persons who are exposed to it over time.  Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida.  Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday.  If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November _____ / _____, 2017


SELLERS:

See "Schedule A".


DocuSigned by:
Christopher Petrosino
E3970D04A0C44E5...

Christopher PetrosinoName:

11/8/2017


Sellers ____      Buyer ____

Schedule A

Unit #  1407

*Christopher Petrosino*
DocuSigned by:
E3970D04A0C44E5...

Owner Signature                                    Owner Signature

Christopher PetrosinoName:

Address:  8487 Utica Drive Los Angeles, CA 90046

E-Mail Address:  chris.petrosino@gmail.com

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ST** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.      Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.      Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.      The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.      The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.      <u>Purchase and Sale</u>.      Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.   This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.      <u>Price</u>.  The *"Purchase Price"* for the Condominium Property shall be as follows:

   a.      $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _____   Buyer _____

b.    $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.    $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.    $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.    <u>Term of Contract</u>.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.    <u>Deposit</u>.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.    <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a.    The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____    Buyer _____

    b.    The Association has executed this Contract and delivered a copy to Buyer; and

    c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal.</u>  The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers _____    Buyer _____

DocuSign Envelope ID: EF04ED5B-E0BD-42D2-A15E-9ABF7E4D6901

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers    Buyer

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "Title Company"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("Preliminary Commitment") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "Title Review Period"). Buyer, at Buyer's option, may obtain a survey ("Survey") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "Extended Closing Date"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____    Buyer _____

DocuSign Envelope ID: EF04ED5B-F0BD-42D2-A15E-9ABF7E4D6901

6

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.   _Title Evidence._     At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.   _Closing Date_. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "_Closing_"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.   _Closing Costs_. Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.   _Delivery for Closing_. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)   Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)   Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)   Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)   FIRPTA affidavit.

(e)   Association estoppel letter or waiver.

Sellers    Buyer

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    <u>Representations and Warranties of Seller</u>.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    <u>Representations and Warranties of Buyer</u>.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _____    Buyer _____

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    <u>Broker Fee</u>.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    <u>Not Contingent on Building Permits</u>. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    <u>Possession</u>.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    <u>Governing Law</u>.    This Contract is governed by the laws of Florida.

22.    <u>Default</u>.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    <u>Notices</u>. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:              the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com

Sellers _____    Buyer _____

DocuSign Envelope ID: EF04ED5B-F0BD-42D2-A15E-9ABF7E4D6901

9

BUYER:                    KINGFISHER ISLAND, INC.
                          2150 Palomar Airport Road, Suite 205
                          Carlsbad, CA 92011
                          Attn: Todd Mikles

With a copy to:           Inger M. Garcia, Esq.
                          4839 Volunteer Road, Suite 514
                          Davie, Florida 33330
                          Email: attorney@ingergarcia.com
              and
                          Brett Lieberman, Esq.
                          401 East Las Olas Boulevard, Suite 1400
                          Fort Lauderdale, Florida 33301
                          Email: blieberman@messana-law.com
              and
                          Adam T. Kent, Esq.
                          895 Dove Street, Suite 300
                          Newport Beach, CA 92663
                          Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

    Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to


Sellers _____    Buyer _____

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    <u>Saturday, Sunday and Legal Holiday</u>. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November _____ *1*_____, 2017


SELLERS:

See "Schedule A".


Carlos Rezett
ACB9036F263C403...

Name: Carlos Rezett

11/8/2017


Sellers _____    Buyer _____

# Schedule A

Unit #  1408

DocuSigned by:

*Carlos Rezett*

ACB9036F263C403...

Owner Signature                                    Owner Signature

Name: Carlos Rezett

Address:  Dorrego 3158 Santa FE (3000) Argentina

E-Mail Address:  carlosrezett@yahoo.com.ar

DocuSign Envelope ID: 06299141-3C4A-4565-A740-EEDAC1AE02E9

Unit # 1501

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this *1st* day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    Purchase and Sale.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    Price.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers MB    Buyer ___

b.  $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.  $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.  $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.  <u>Term of Contract.</u>    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.  <u>Deposit.</u>    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.  <u>Commencement Date.</u> The Commencement Date is the first day on which all of the following have occurred:

a.  The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _MJB_    Buyer _____

3

b.      The Association has executed this Contract and delivered a copy to Buyer; and

c.      The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.      <u>Right of First Refusal.</u> The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.      <u>Due Diligence Period.</u> The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will

Sellers MJB       Buyer

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.
(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    <u>Additional Conditions</u>.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the <u>allowed</u> claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers MJB    Buyer

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _MB_    Buyer _____

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.   <u>Title Evidence</u>.      At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.   <u>Closing Date</u>. Subject to Section 9, above, this transaction shall be closed on or before the later of <u>January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "*Closing*")</u>. If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.   <u>Closing Costs</u>. Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.   <u>Delivery for Closing</u>. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers _MB_      Buyer _____

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    <u>Representations and Warranties of Seller</u>.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    <u>Representations and Warranties of Buyer</u>.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers _MB_      Buyer _Jem_

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    Broker Fee.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    Not Contingent on Building Permits. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    Possession.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    Governing Law.    This Contract is governed by the laws of Florida.

22.    Default.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    Notices.  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:          the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com

Sellers MB    Buyer

BUYER:              KINGFISHER ISLAND, INC.
                   2150 Palomar Airport Road, Suite 205
                   Carlsbad, CA 92011
                   Attn: Todd Mikles

With a copy to:    Inger M. Garcia, Esq.
                   4839 Volunteer Road, Suite 514
                   Davie, Florida 33330
                   Email: attorney@ingergarcia.com
          and
                   Brett Lieberman, Esq.
                   401 East Las Olas Boulevard, Suite 1400
                   Fort Lauderdale, Florida 33301
                   Email: blieberman@messana-law.com
          and
                   Adam T. Kent, Esq.
                   895 Dove Street, Suite 300
                   Newport Beach, CA 92663
                   Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability.  It is anticipated Buyer may enter a partnership for the development of the property.  As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract.  Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity.  By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart.  Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

    Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to



Sellers ___MB___    Buyer ___

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30. <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31. <u>Saturday, Sunday and Legal Holiday</u>. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November _____ / _____, 2017


SELLERS:

See "Schedule A".


DocuSigned by:

Nestor Daniel Bujaldon

8AD964EFA0F048A...

Nestor Daniel Bujaldon

6060 Indian Creek Drive Unit #
Miami Beach, FL 33140

11/7/2017


Sellers  MB    Buyer

# Schedule A

## Unit # 1501

DocuSigned by:

*Nestor Daniel Bujaldon*

8AD964EFA0F048A...

## Owner Signature                              Owner Signature

Nestor Daniel Bujaldon

**Address:** Barrio Davian Manzana 48 casa 27, Capital Mendoza, Argentina.

**E-Mail Address:** danielbuja@hotmail.com

DocuSign Envelope ID: 30DBECA6-4DCA-43CF-9D09-9DC6B64B2EF8

Unit #1507

# CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1st** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

## WHEREAS

A.    Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.    Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.    The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.    The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.    Purchase and Sale.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.    This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.    Price.  The *"Purchase Price"* for the Condominium Property shall be as follows:

a.    $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _____    Buyer _____

b. $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c. $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d. $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.    <u>Term of Contract</u>.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.    <u>Deposit</u>.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.    <u>Commencement Date</u>. The Commencement Date is the first day on which all of the following have occurred:

a. The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____    Buyer _____

b.      The Association has executed this Contract and delivered a copy to Buyer; and

c.      The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.      <u>Right of First Refusal.</u>  The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.      <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will



Sellers _____    Buyer _____

DocuSign Envelope ID: 30DBECA6-4DCA-43CF-9D09-9DC6B64B2EF8

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers _____   Buyer _____

(f)     All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)     Sellers shall have complied with all of its obligations under this Contract.

(h)     The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)     This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.     Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____    Buyer _____

option of either:  (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent.  Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date.  Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "*Closing*").  If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded.  The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs.  Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing.  At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers _____   Buyer _____

(f)     Closing Statement.

(g)     All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.     Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.     Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.     Representations and Warranties of Seller.     Sellers represent and warrant to Buyer the following:

(a)     As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)     Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)     There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.     Representations and Warranties of Buyer.     Buyer represents and warrants to Sellers the following:

(a)     Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers _____    Buyer _____

DocuSign Envelope ID: 30DBECA6-4DCA-43CF-9D09-9DC6B64B2EF8

8

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    _Broker Fee._    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("_Broker_") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "_Broker Fee_"). The Association agrees to pay this Broker Fee at Closing.

19.    _Not Contingent on Building Permits_. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    _Possession._    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    _Governing Law._    This Contract is governed by the laws of Florida.

22.    _Default._    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    _Notices._  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:        the Notice Party is:

Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com

and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com

Sellers _____    Buyer _____

BUYER:                  KINGFISHER ISLAND, INC.
                        2150 Palomar Airport Road, Suite 205
                        Carlsbad, CA 92011
                        Attn: Todd Mikles

With a copy to:         Inger M. Garcia, Esq.
                        4839 Volunteer Road, Suite 514
                        Davie, Florida 33330
                        Email: attorney@ingergarcia.com
            and
                        Brett Lieberman, Esq.
                        401 East Las Olas Boulevard, Suite 1400
                        Fort Lauderdale, Florida 33301
                        Email: blieberman@messana-law.com
            and
                        Adam T. Kent, Esq.
                        895 Dove Street, Suite 300
                        Newport Beach, CA 92663
                        Email: adam@propartnersgroup.com

24.    Successors.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    Assignability. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract.   Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    Exclusivity. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart.  Copies shall be treated as originals.

29.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

        Radon Gas: Radon is a naturally occurring radioactive gas that, when it has
        accumulated in a building in sufficient quantities, may present health risks to

Sellers _____    Buyer _____

DocuSign Envelope ID: 30DBECA6-4DCA-43CE-9D09-9DC6B64B2EF8

10

persons who are exposed to it over time.  Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida.  Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation


Todd A., Mikles, Managing Member

Date: November ____ / ____, 2017


SELLERS:

See "Schedule A".


Leonardo da Cunha Antunes

Leonardo da Cunha Antunes

6060 Indian Creek Drive Unit #
Miami Beach, FL 33140

11/9/2017


Sellers _____    Buyer _____

# Schedule A

**Unit #** 1507

Leonardo da Cunha Antunes
28F8B58208534ED...

**Owner Signature**                          **Owner Signature**
Leonardo da Cunha Antunes

**Address:** 19370 Collins Avenue,Suit CU6,Sunny Isles,FL 33160

**E-Mail Address:** leonardocantunes@hotmail.com

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this *"Agreement"* or *"Contract"*) is made this **1ST** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter *"Buyer"*), and the parties listed on the attached "Schedule A" (collectively referred to as *"Sellers"*).

### WHEREAS

A.      Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the *"Condominium Property"*).

B.      Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.      The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.      The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the *"Association"*) is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.      Purchase and Sale.      Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.      Price.  The *"Purchase Price"* for the Condominium Property shall be as follows:

    a.      $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the *"Association's Units"*)).

Sellers _____    Buyer _____

2

b.   $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.   $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.   $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.   <u>Term of Contract.</u>   This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.   <u>Deposit.</u>   Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.   <u>Commencement Date.</u> The Commencement Date is the first day on which all of the following have occurred:

a.   The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;



Sellers _____   Buyer _____

b.  The Association has executed this Contract and delivered a copy to Buyer; and

c.  The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.  <u>Right of First Refusal.</u> The package of residential units subject to the right of first refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.  <u>Due Diligence Period.</u> The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will


Sellers _____    Buyer _____

DocuSign Envelope ID: E9E9655C-ADC0-4794-ABE9-EEA73F600601

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    <u>Additional Conditions</u>.    The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the <u>allowed</u> claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.



Sellers _____    Buyer _____

5

(f)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)    Sellers shall have complied with all of its obligations under this Contract.

(h)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)    This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the



Sellers _____    Buyer _____

6

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs. Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.



Sellers _____    Buyer _____

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    <u>Representations and Warranties of Seller</u>.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances. Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    <u>Representations and Warranties of Buyer</u>.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.



Sellers _____    Buyer _____

DocuSign Envelope ID: E9E9655C-ADC0-4794-ABE9-EEA73F600601

8

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.    <u>Broker Fee</u>.    Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.    <u>Not Contingent on Building Permits</u>. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.    <u>Possession</u>.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.    <u>Governing Law</u>.    This Contract is governed by the laws of Florida.

22.    <u>Default</u>.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages. If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.    <u>Notices</u>.  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

     SELLERS:     the Notice Party is:

          Inger M. Garcia, Esq.
          4839 Volunteer Road, Suite 514
          Davie, Florida 33330
          Email: attorney@ingergarcia.com

     and

          Brett Lieberman, Esq.
          401 East Las Olas Boulevard, Suite 1400
          Fort Lauderdale, Florida 33301
          Email: blieberman@messana-law.com

Sellers _____    Buyer _____

BUYER:          KINGFISHER ISLAND, INC.
                         2150 Palomar Airport Road, Suite 205
                         Carlsbad, CA 92011
                         Attn: Todd Mikles

With a copy to:     Inger M. Garcia, Esq.
                         4839 Volunteer Road, Suite 514
                         Davie, Florida 33330
                         Email: attorney@ingergarcia.com
              and

                         Brett Lieberman, Esq.
                         401 East Las Olas Boulevard, Suite 1400
                         Fort Lauderdale, Florida 33301
                         Email: blieberman@messana-law.com
              and

                         Adam T. Kent, Esq.
                         895 Dove Street, Suite 300
                         Newport Beach, CA 92663
                         Email: adam@propartnersgroup.com

24.   <u>Successors</u>.   This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.   <u>Assignability</u>. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.   <u>Exclusivity</u>. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.   <u>Entire Agreement</u>.   This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.   <u>Counterparts</u>. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.   <u>Radon Gas</u>.   The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

     Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to



Sellers _____    Buyer _____

10

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    <u>Saturday, Sunday and Legal Holiday</u>. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

Todd A., Mikles, Managing Member

Date: November _____ 1 _____, 2017

SELLERS:

See "Schedule A".

DocuSigned by:

Lombardo Alexandre

B368C3F59C32481...

Lombardo Alexandre

6060 Indian Creek Drive Unit # 1508
Miami Beach, FL 33140

11/7/2017

Sellers _____    Buyer _____

# Schedule A

## Unit # 1508

DocuSigned by:

*Lombardo Alexandre*

B368C3F59C32481...

## Owner Signature                    Owner Signature

Lombardo Alexandre

**Address:** lombardo alexandre 32 rue thionville 59000 LILLE FRANCE

**E-Mail Address:** lombardo.alexandre@gmail.com

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E
Unit # **1608**

## CONTRACT FOR PURCHASE AND SALE

THIS CONTRACT FOR PURCHSSE AND SALE (this "*Agreement*" or "*Contract*") is made this **1ST** day of November 2017, by and between KINGFISHER ISLAND, INC., a Delaware corporation, or its assigns (hereinafter "*Buyer*"), and the parties listed on the attached "Schedule A" (collectively referred to as "*Sellers*").

## WHEREAS

A.      Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek, Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the "*Condominium Property*").

B.      Buyer presented an offer to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.      The parties have prepared this Contract based upon Buyer's recent offer and, upon the acceptance of the offer through this Contract, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

D.      The 6060 Condominium Association, Inc., a Florida not-for-profit corporation (the "*Association*") is one of the Sellers.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.      Purchase and Sale.    Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.   This Contract is effective upon mutual execution by the parties. The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.      Price.  The "*Purchase Price*" for the Condominium Property shall be as follows:

   a.      $1,090,000.00 for the Association's units ((i) CU-1, $250,000; (ii) CU-2, $250,000; (iii) CU-3, $250,000; (iv) CU-4, $250,000; and (iv) Association unit 505, $90,000) (the "*Association's Units*")).

Sellers _KC_____    Buyer_____

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

2

b.    $90,000.00 for each residential unit which executes the Contract and closes on the sale. At least 50 residential units (the *"Minimum Participation Requirement"*) must execute the Contract within 25 days of the Commencement Date (defined herein) and close, otherwise the Buyer may terminate the Contract.

c.    $4,100,000.00 or less paid to the Schecher Group, Inc. d/b/a SG Shared Components (the *"Schecher Claim Amount"*) at Closing, in full and final satisfaction of its claims asserted against all units subject to sale under this Agreement, including any and all claims asserted in Case No. 16-26187-RAM, in the United Stated Bankruptcy Court, Southern District of Florida, Miami Division.

d.    $90,000.00 paid toward non-debtor Sellers' legal fees and costs, at Closing.

3.    Term of Contract.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.    Deposit.    Buyer will deposit $30,000.00 (Thirty Thousand Dollars) (the *"Initial Deposit"*), which amount shall be non-refundable in favor of the Association, towards the purchase of the Association's Units within three (3) business days of the United States Bankruptcy Court, Southern District of Florida, Miami Division (Case No. 16-26187-RAM) (the *"Bankruptcy Court"*) approving the Agreement; the Deposit to be held by the law firm of Messana, P.A.

On the thirtieth (30th) day following the Commencement Date, unless extend pursuant to Section 7(b) Buyer shall deposit (i) an additional $200,000.00 (Two Hundred Thousand Dollars) with Costal Title of Ft. Lauderdale, Florida, unless otherwise agreed, in writing, by Buyer and Seller, (the *"Escrow Agent"*) with proof given to the Seller's attorneys and the title company (the *"Refundable Deposit"*); and (ii) an additional $70,000.00 (Seventy Thousand Dollars) which shall be non-refundable and allocated to the Association's Units to be held by the law firm of Messana, P.A. (the *"Second Non-Refundable Deposit"*) The Refundable Deposit, together with the Initial Deposit and Second Non-Refundable Deposit, the *"Deposits"* shall be applied to the Purchase Price in the event of a Closing. Where a Closing does not occur, the Refundable Deposit shall be returned to Buyer.

All interest accrued or earned on the Refundable Deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the Deposits, as liquidated damages in accordance with the default provisions below. Damages to any party shall be limited to those set forth herein.

5.    Commencement Date. The Commencement Date is the first day on which all of the following have occurred:

a.    The number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement have executed this Contract and delivered a copy to Buyer;

Sellers *AC*      Buyer _____

Electronically Signed using eSignOnline™ [ Session ID : 6c8ef38c-bf66-490d-b5b1-ff60b4777e62 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

3

    b.    The Association has executed this Contract and delivered a copy to Buyer; and

    c.    The Bankruptcy Court described herein has approved the sale of the Condominium Property.

6.    <u>Right of First Refusal</u>.  The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc., is subject to the right of first refusal under the Declaration. Upon the expiration of the Due Diligence Period (defined herein), if the Buyer has not elected to terminate the Contract, this Contract shall be presented to the Schecher Group, Inc., for its consideration to give the Schecher Group, Inc., an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration. The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group, Inc., exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this Contract shall terminate and Buyer's Refundable Deposit will be immediately returned to Buyer.

7.    <u>Due Diligence Period</u>. The due diligence period shall be as follows:

(a) For a period of thirty (30) calendar days, beginning one day after the Commencement Date (the "*Initial Due Diligence Period*"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such non-invasive investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, and (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

(b) Upon request of Buyer, and subject to the agreement of Sellers, memorialized in writing, the Initial Due Diligence Period may be extended by fifteen (15) calendar days (the "*Extended Due Diligence Period*").

(c) During the Initial Due Diligence Period, Sellers shall deliver (or cause the Association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

(d) Subject to Section 8(c) and Section 7(e), below, Buyer may terminate this Contract before the end of the Initial Due Diligence Period or Extended Due Diligence Period, if applicable, by delivering written notice of its decision to terminate ("*Notice of Termination*") to the Notice Party as set forth in Paragraph 25. Buyer's timely delivery of a Notice of Termination will

Sellers _AC_    Buyer _JM_

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

4

relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

(e) The Schecher Group, Inc., currently operates a hotel within the Condominium Property (the "*Hotel Unit*"). Buyer may not terminate this agreement solely because, as of the expiration of the Initial Due Diligence Period, or any extension thereof, it has not entered into an agreement with the Schecher Group, Inc. regarding the sale, cooperation or otherwise, relative to the Hotel Unit.

(f) Where the interests owned by any Seller are subject to a foreclosure proceeding or any other action which actually or potentially clouds title to the Seller's interest, as of the Closing, Buyer may terminate this Agreement.

(g) If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    Additional Conditions.      The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    Sellers shall have paid, or shall have entered into an agreement to pay from its portion of the Purchase Price, the allowed claim of Florida Building Supply, Inc. (the "*FBS Claim*") at the Closing. Sellers shall agree to pay the FBS Claim direct from escrow at Closing or shall have otherwise paid the FBS Claim prior to Closing.

(b)    A minimum of fifty (50) residential units shall have agreed to enter into the Agreement.

(c)    The Association commenced Case No. 16-26187-RAM, in the Bankruptcy Court. The Bankruptcy Court shall have entered an Order or otherwise confirmed that the aggregate claims asserted by the Schecher Group, Inc. d/b/a SG Shared Components ("*Schecher Group*") against the units subject to this Agreement are equal to or less than the Shecker Claim Amount and that payment of the Schecher Claim Amount to Schecher Group at Closing would satisfy in full any and all claims and liens of Schecher Group against such units through Closing and that upon making the payment of the Schecher Claim Amount to Schecher Group at Closing such units would be transferred to Buyer from the Sellers free and clear of any and all claims and liens of Schecher Group. If the Bankruptcy court determines that the Schecher Claim Amount exceeds $4,100,000, Buyer may terminate this agreement within fifteen (15) days of such court determination and receive a full refund of its Refundable Deposit.

(d)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(e)    Sellers shall have delivered to Buyer an estoppel letter from the Sixty Sixty Condominium Association, Inc. (the "*Association*") for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

Sellers _*KC*_      Buyer _*JM*_

Electronically Signed using eSignOnline™[ Session ID : 6c8ef38c-bf66-490d-b5b1-ff60b4777e62 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

5

(f)      All directors and officers of the Association shall tender their resignations effective as of the Closing.

(g)      Sellers shall have complied with all of its obligations under this Contract.

(h)      The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(i)      This Contract is not contingent upon purchasing the Hotel Unit, or units in addition to the 50+ units herein, subject to allowing additional units or otherwise.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.      Title Commitment.    Buyer has already obtained a title report for the units from First American Title Insurance Company (the "*Title Company*"). Therefore, within Twenty-Five (25) calendar days after the Commencement Date, the Title Company, will provide Buyer with a preliminary title insurance commitment ("*Preliminary Commitment*") for the Condominium Property, to the extent one has not already been provided and Buyer shall be reimbursed for the title reports that it has already obtained to the extent the Title Company would charge for producing the same reports in the Preliminary Commitment. Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment. Buyer shall have until the expiration of the Initial Due Diligence Period or the Extended Due Diligence Period, if applicable, to review title (the "*Title Review Period*"). Buyer, at Buyer's option, may obtain a survey ("*Survey*") of the land and improvements comprising the entire Condominium Property within the time period to examine title as aforesaid. If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the Title Review Period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the Title Review Period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer. If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing. Sellers agree at or prior to Closing to satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, and (ii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

At either party's option, the date of Closing, as defined below, may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects (the "*Extended Closing Date*"). In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the

Sellers _KC_      Buyer _JM_

Electronically Signed using eSignOnline™| Session ID : 6c8ef38c-bf66-490d-b5b1-ff60b4777e62 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

6

option of either: (i) closing and accepting the title "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    Title Evidence.    At least fifteen (15) business days before Closing a title insurance commitment with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense. Buyer shall select the Title Company and closing agent. Sellers shall convey marketable title to the Condominium Property at the Closing with respect to the debtor's units. They shall be conveyed pursuant to a bankruptcy court approving the sale.

11.    Closing Date. Subject to Section 9, above, this transaction shall be closed on or before the later of January 31, 2018; or within thirty (30) days of the final adjudication of the Schecher Claim Amount (the "Closing"). If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Buyer, at its sole discretion may extend the Closing Date under this Contract until the court proceeding is concluded. The Closing shall take place at the offices of the Escrow Agent or at such other location which is mutually agreeable to the parties. The purchase and sale of all Condominium Property shall be simultaneously closed at the Closing. Debtor's units may only be closed upon entry of an order confirming a chapter 11 plan.

12.    Closing Costs.  Each party shall pay its own customary closing costs.  For example, Buyer is responsible for paying for title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' reasonable closing agent's fees – e.g., document preparation and processing fee.

13.    Delivery for Closing.  At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.

Sellers _HC____    Buyer _____

Electronically Signed using eSignOnline™[ Session ID : 6c8ef38c-bf66-490d-b5b1-ff60b4777e62 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

7

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

14.    Risk of Loss.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

15.    Insurance Proceeds.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

16.    Representations and Warranties of Seller.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances.  Sellers shall be current on their Association dues as calculated in the 2017 Association Budget.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract.

These representations and warranties will survive Closing for a period of one (1) year.

17.    Representations and Warranties of Buyer.    Buyer represents and warrants to Sellers the following:

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be. Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

Sellers _HC_       Buyer _JM_

Electronically Signed using eSignOnline™[ Session ID : 6c8ef38c-bf66-490d-b5b1-ff60b4777e62 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

8

(b)     There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

18.     <u>Broker Fee</u>.     Sellers and Buyer are aware that the Association engaged Jason Welt and Trustee Realty, Inc. ("*Broker*") and the Broker shall be paid a fee of $50,000.00 (Fifty Thousand Dollars) (the "*Broker Fee*"). The Association agrees to pay this Broker Fee at Closing.

19.     <u>Not Contingent on Building Permits</u>. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

20.     <u>Possession</u>.     Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

21.     <u>Governing Law</u>.     This Contract is governed by the laws of Florida.

22.     <u>Default</u>.     If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the non-refundable Deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers. The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the non-refundable Deposit shall be forfeited as liquidated damages.  If Sellers fail to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's Deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs.

23.     <u>Notices</u>. All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

SELLERS:           the Notice Party is:

                   Inger M. Garcia, Esq.
                   4839 Volunteer Road, Suite 514
                   Davie, Florida 33330
                   Email: attorney@ingergarcia.com

        and

                   Brett Lieberman, Esq.
                   401 East Las Olas Boulevard, Suite 1400
                   Fort Lauderdale, Florida 33301
                   Email: blieberman@messana-law.com

Sellers _AC_           Buyer _____

Electronically Signed using eSignOnline™ [ Session ID : 6c8ef38c-bf66-490d-b5b1-ff60b4777e62 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

9

BUYER:            KINGFISHER ISLAND, INC.
2150 Palomar Airport Road, Suite 205
Carlsbad, CA 92011
Attn: Todd Mikles

With a copy to:     Inger M. Garcia, Esq.
4839 Volunteer Road, Suite 514
Davie, Florida 33330
Email: attorney@ingergarcia.com
         and

Brett Lieberman, Esq.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Email: blieberman@messana-law.com
         and

Adam T. Kent, Esq.
895 Dove Street, Suite 300
Newport Beach, CA 92663
Email: adam@propartnersgroup.com

24.    <u>Successors</u>.   This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

25.    <u>Assignability</u>. It is anticipated Buyer may enter a partnership for the development of the property. As a result, the purchasing entity at Closing may be different than the Buyer named in this Contract. Therefore, Buyer has the right to assign this Contract without Sellers' prior consent, so long as all conditions remain the same otherwise, and the Court approval is had, if necessary, and the Buyer is an affiliate or insider of the assignee of the contract.

26.    <u>Exclusivity</u>. By execution of this Contract, Sellers acknowledge their interest in the sale of the Condominium Property to Buyer.

27.    <u>Entire Agreement</u>.   This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

28.    <u>Counterparts</u>. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart. Copies shall be treated as originals.

29.    <u>Radon Gas</u>.   The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

        Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to

Sellers _____  Buyer _____

Electronically Signed using eSignOnline™[ Session ID : 6c8ef38c-bf66-490d-b5b1-ff60b4777e62 ]

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

10

persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

30.    Invalid Provision.    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

31.    Saturday, Sunday and Legal Holiday. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have executed this Contract for Purchase and Sale as indicated below.

BUYER:

**KINGFISHER ISLAND, INC.**
a Delaware corporation

Todd A., Mikles, Managing Member

Date: November ___1___, 2017

SELLERS:

See "Schedule A".

Name:    **Wells Fargo Bank N.A. as Trustees for The Holders of the Banc of America Alternative Loan Trust 2006-9 Mortgage Pass Through Certificates Series 2006-9**

Sellers __AC__    Buyer __AC__

DocuSign Envelope ID: EDBF6D9B-96A6-4D19-84BA-AA53B218F28E

# Schedule A

Unit # **1608**

*Kristie Cotham*
Owner Signature                                    Owner Signature

Name: **Kristie Cotham, Assistant**
**Secretary, Nationstar**
**Mortgage LLC as Attorney in**
**Fact**

Address:
**8950 Cypress Waters Blvd**
**Dallas, TX 75019**

E-Mail Address:

Electronically Signed using eSignOnline™ [ Session ID : 6c8ef38c-bf66-490d-b5b1-ff60b4777e62 ]

# EXHIBIT B

THE SECURITIES DESCRIBED HEREIN HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 NOR APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION NOR BY THE SECURITIES REGULATORY AUTHORITY OF ANY STATE, NOR HAS ANY COMMISSION OR AUTHORITY PASSED UPON OR ENDORSED THE MERITS OF THE SECURITIES HEREIN DESCRIBED.  ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.  THE SECURITIES DESCRIBED HEREIN MAY NOT BE RESOLD WITHOUT REGISTRATION UNDER THE SECURITIES ACT OF 1933 AND APPLICABLE STATE SECURITIES LAWS OR EXEMPTION THEREFROM.

## LIMITED LIABILITY COMPANY AGREEMENT OF
### Sixty-One Sixty, LLC

This LIMITED LIABILITY COMPANY AGREEMENT ("**Operating Agreement**") is entered into this 3rd day of November, 2017 (the "**Effective Date**") by and among **ZULU BRAVO, LLC**, a Delaware limited liability company, as the "**Manager**", and the Persons who have executed a counterpart signature page hereto and who are named on **Exhibit A** to this Agreement and who constitute all the **Members** of Sixty-One Sixty, LLC (the "**Company**") as of such date, pursuant to the Delaware Limited Liability Company Act, as the same may be amended from time to time (the "**Act**").

WHEREAS, the owners listed on **Exhibit A** (individually, a "**Member**" and collectively, the "**Members**") are the fee simple owners of certain condominium units located within that certain property located at 6060 Indian Creek, Miami Beach, Florida 33140 (those certain units collectively referred herein as the "**Property**"); and

WHEREAS, the Members and the Manager have agreed to enter into this Limited Liability Company Agreement to set forth the rights and obligations of the Company and the Members and to appoint the Manager as the manager of the Company.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises, covenants, and conditions contained herein, the receipt and sufficiency of which are hereby acknowledged, the undersigned parties hereby covenant and agree as follows:

## ARTICLE I
### THE COMPANY

Section 1.  Principal Office. The principal office of Company shall be located at 6750 N. Andrews Avenue, Suite 200, Fort Lauderdale, FL 33309.

Section 2.  Additional Offices. The Company may have such additional offices at such other place within or outside the State of its organization as the Member(s) may from time to

time determine or as the business of the Company may require.

Section 3. <u>Purpose</u>. The sole business and purpose of the Company is to acquire, own, hold, sell, dispose of, and manage the Property, together with such other activities as may be necessary, incidental, or appropriate in connection therewith.

Section 4. <u>Initial Resident Agent</u>. The Company's initial Agent for service of process shall be Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

ARTICLE II
MEMBER CONTRIBUTIONS AND DUTIES

Section 1. <u>Contribution.</u> Each Member has contributed their interest in the Property ("**Condominium Unit**") to the Company and through their interest in the Company, each Member retains ownership of their interest in the Property. The Membership interests of the Company are allocated to the Member(s) in **Exhibit A** to this Agreement, as set forth therein. All rights and obligations of Members provided for herein shall be binding upon the Members and their successors and assigns.

Section 2. <u>Duties of Members</u>. Except as provided for herein as those duties allocated to the Manager, each Member shall be responsible for all duties and obligations provided for in the Declaration of Sixty Sixty Condominium, attached hereto as **Exhibit B** and incorporated herein by reference (the "**Declaration**").

Section 3. <u>Right to Sell</u>. Subject to the terms provided herein, each Member has the right to sell its Membership interest, and thereby the Condominium Unit associated with its Membership interest in the Company.

Section 4. <u>Right to Withdraw from the Company</u>. One (1) year after contribution, if the Manager does not exercise the Purchase Option provided in Article III, Section 3 hereof, each Member shall have the right to withdraw their contribution from the Company. Upon receipt of written notice from the Member of their intent to withdraw pursuant to this right, the Manager shall execute all necessary documents for withdrawal of the Member's contribution, including but not limited to a Quitclaim Deed transferring ownership of the Member's Condominium Unit associated with the Member's interest, back to the Member, within sixty (60) days of written notice from the Member. This right shall survive any amendments of this Agreement.

ARTICLE III
MANAGEMENT

Section 1. <u>Appointment of Manager.</u> Members hereby appoint Zulu Bravo, LLC, a Delaware limited liability company ("**Manager**") as Manager of Company.

Page 2 of 7

Section 2. <u>Authority of Manager</u>. The Manager shall have broad authority to pursue all claims and take any actions on behalf of the Company that it deems appropriate, including initiating legal proceedings, on behalf of the Company and its Members. The Manager shall have no obligation to manage the Property or otherwise perform the responsibilities of the Members as provided in the Declaration. The Members shall not be liable for any attorneys' fees and costs incurred by the Manager on behalf of the Members.

Section 3. <u>Manager's Unilateral Purchase Option</u>. The Members hereby grant the Manager the unilateral right to effectuate the purchase of each of their individual Membership Interests (constituting the Condominium Unit contributed by each Member) pursuant to the terms provided in that certain Contract for Purchase and Sale, attached hereto as **Exhibit C** and incorporated herein by this reference. Manager shall have no obligation to exercise the Purchase Option except pursuant to the terms set forth in **Exhibit C**.

ARTICLE IV
ADMISSION OF ADDITIONAL MEMBERS

<u>Admission</u>. The Company may, from time to time, admit additional Members.

ARTICLE V
OFFICERS

Section 1. <u>Executive Officers</u> - The initial officers of the Company shall be Todd A. Mikles who shall serve as President, Vice President, Secretary, and Treasurer. The same person may hold any two or more offices.

Section 2. <u>Election</u> - The Manager shall choose other officers, and officers shall hold office for one (1) year, the term for which they are elected, or until their successors have been elected and qualified. The Manager may from time to time appoint all such other officers as they determine and such officers shall hold office from the time of their appointment and qualifications until the time at which their successors are appointed and qualified. The Manager may fill a vacancy in any office arising from any cause for the unexpired portion of the term.

Section 3. <u>Removal</u> - Any officer may be removed from office by the Manager.

ARTICLE VI
RESIGNATIONS

Any officer of the Company may resign at any time by giving written notice to the Manager. Any such resignation shall take effect at the time specified therein or, if the time is not specified therein, upon the receipt thereof, irrespective of whether any such resignations shall have been accepted.

Page 3 of 7

## ARTICLE VII
## CERTIFICATES REPRESENTING MEMBERSHIP

Section 1.   Form of Certificates - Each Member shall be entitled to a certificate or certificates ("**Certificate**") in such form as prescribed by the Manager and by any applicable statutes, which Certificate shall certify the interest of the Member in the Company. Each Certificate shall be numbered and registered in the order in which it is issued and upon issuance the name in which each Certificate has been issued together with the interest in the Company represented thereby and the date of issuance shall be entered in the Membership book of the Company by the Secretary or by the transfer agent of the Company. The signatures of the officers upon a Certificate may also be facsimiles, if the Certificate is countersigned by a transfer agent or registered by a registrar other than the Company itself. In case any officer who has signed or whose facsimile signature has been placed upon a Certificate shall have ceased to be such officer before the Certificate is issued, such Certificate may be issued by the Company with the same effect as if the officer had not ceased to be such at the time of its issue.

Section 3.   Members of Record - The Company shall be entitled to treat the holder of record of any Membership Certificate as the holder in fact thereof and, accordingly, shall not be bound to recognize any equitable or other claim to or interest in such membership interest on the part of any other person whether or not it shall have express or other notice thereof, except as otherwise provided by the laws of the State of its organization.

## ARTICLE VIII
## STATUTORY NOTICES

The Manager may appoint any officer of the Company to cause to be prepared and furnished to Member(s) entitled thereto any special financial notice and/or statement, which may be required by any applicable statute.

## ARTICLE IX
## FISCAL YEAR

The end of the fiscal year of the Company shall be December 31st, but may be altered, from time to time, by resolution duly adopted by the Manager.

## ARTICLE X
## COMPANY SEAL

The Company seal, if any, shall have inscribed thereon the name of the Company, the year and state of its creation and the words "A Limited Liability Company" and shall be in such form and contain such other words and/or figures, as the Member(s) shall determine. The Company seal may be used by printing, engraving, lithographing, stamping or otherwise making, placing or affixing, or causing to be printed, engraved, lithographed, stamped or otherwise made,

placed or affixed, upon any paper or document, by any process whatsoever, an impression, facsimile or other reproduction of said Company seal.

## ARTICLE XI
## BOOKS AND RECORDS

To the extend necessary, the Manager shall maintain the Company's books of account of all the Company's business and transactions, which books may be maintained at the Company's principal office or by the Manager.

## ARTICLE XII
## INDEMNIFICATION OF OFFICERS,
## EMPLOYEE AND AGENTS

Any person made or threatened to be made a party to an action or proceeding, whether civil or criminal, by reason of the fact that he, his testator or intestate, then, is, or was a manager, member, employee or agent of the Company, or then serves or has served on behalf of the company in any capacity at the request of the Company, shall be indemnified by the Company against reasonable expenses, judgments, fines and amounts actually and necessarily incurred in connection with the defense of such action or proceeding or in connection with an appeal therein, to the fullest extent permissible by the laws of the State of Florida. Such right of indemnification shall not be deemed exclusive of any other rights to which such person may be entitled.

## ARTICLE XIII
## AMENDMENTS

The Manager, shall have the sole right and authority to amend or repeal this Operating Agreement, and to adopt a new Operating Agreement. The Manager shall not have the ability to remove or amend each Member's right to withdraw provided in Article II, Section 4.

## ARTICLE XIV
## DISSOLUTION

The Manager shall have sole authority to dissolve the Company.

## ARTICLE XV
## NUMBER AND GENDER

Where the context in which words are used in this Agreement indicates that such is the intent, the words in the singular number shall include the plural and vice versa, and the words in the masculine gender shall include the feminine and neuter genders and vice versa.

IN WITNESS WHEREOF, the parties hereto have executed this Operating Agreement of, Sixty-One Sixty, LLC effective as of the _____ day of November, 2017.

MANAGER:

Zulu Bravo, LLC, a Delaware limited liability company

By: _____
Name:    Todd A. Mikles
Title:     President

**<u>Exhibit A</u>**

| Unit | MEMBER |
|------|--------|
| 503 | Ruben Lamothe |
| 507 | Miguel A. Fava Le |
| 508 | Jorge Correa & Rosa J Correa |
| 602 | Loremar Corp. c/o LORENA VARALES |
| 605 | David D. Georg & Deborah Lynn |
| 606 | Importadora Interwheels S.A. |
| 607 | Waterstone Investments LLC c/o Richard Wasertein PA |
| 608 | Teran San Miguel Inc. |
| 701 | Jean Francois Filion |
| 702 | Richard Monsees & Alisa |
| 703 | Zakhia Oueis |
| 705 | Richard Vasquez |
| 707 | Ivan Mahana |
| 708 | Elssitta, LLC c/o Marina Galla |
| 801 | Gerard Mafale & Laura |
| 802 | Numero 991, LLC |
| 803 | Maria R Giraldo de Velez Trs. |
| 804 | Richard Vasquez |
| 805 | Ana Cristina Braathen & N Dora E Iudica |
| 806 | Rene I. Basulto & Marisol R. Basulto |
| 807 | Cecilia N. Zsilavi |
| 902 | Ralf Bauchrowitz JTRS & Frank Jordan JTRS |
| 903 | Maria T. Velez |
| 904 | Luis Armando Lancheros & Roselia De las M Velasquez |
| 908 | International Consulting Corp. |
| 1001 | Frank Jordan JTRS & Ralf Bauchrowitz JTRS |
| 1002 | Roman Luis Malagon |
| 1003 | Lydia Apodaca |
| 1005 | Maria N. Schoentag |
| 1006 | Mialo, LLC |
| 1007 | Villita, LLC |
| 1008 | BambaMiami Inc |
| 1101 | Jose Luis Varela & Elyam Munoz |
| 1103 | Pariano, LLC |
| 1104 | Elsa Depablos Bermudez |
| 1105 | Dominique Sauvetre |
| 1108 | Vintage Classics, LLC c/o Mario Puig & Nora Diaz |
| 1202 | Valentin Investment, LLC |

1

| 1203 | Ralf Bauchrowitz & Frank Jordan |
|------|--------------------------------|
| 1204 | Alicia M Ortega |
| 1207 | Penthouse 68, LLC |
| 1401 | Henryk Kwiatkowski |
| 1403 | LC Geraci, LCC |
| 1405 | Alfer Investment Corp. |
| 1407 | Aspire Higher, LLC |
| 1408 | Boston Rv Corporation |
| 1501 | Dagraju |
| 1507 | Leonardo Da Cunha Antunes |
| 1508 | Lombardo, Alexandre |